Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd., Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

Don Bivens (*pro hac vice* forthcoming)
don@donbivens.com
**DON BIVENS PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: 602.708.1450

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JACQUELINE JACKSON, individually and on behalf of all others similarly situated, | Case No. 5:24-cv-00812 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| LINKEDIN CORPORATION, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

1.      This case confirms and exemplifies that one of "the world's most valuable resources is no longer oil, but data."[1] Plaintiff Jacqueline Jackson brings this proposed class action on behalf of all LinkedIn members who visited the California Department of Motor Vehicles ("DMV") website to apply for, renew, or check the status of a disability placard. Unbeknownst to Plaintiff and Class Members, when they visited the DMV website for this purpose, Defendant LinkedIn ("LinkedIn") used the LinkedIn Insight Tag (the "LinkedIn Pixel") to unlawfully obtain their personal disability information and to learn the contents of their communications with the DMV about their disability, and then used that information for unlawful purposes. LinkedIn's conduct does not fall within any permitted purpose under the law, and it occurred without Plaintiff's or Class Members' consent.

2.      At no time did LinkedIn or the DMV disclose to Plaintiff or Class Members that LinkedIn was tracking the activities of its members on the DMV website, obtaining their personal information, or learning the contents of their communications with the DMV.

3.      As alleged below, the LinkedIn Pixel has allowed LinkedIn to secretly amass massive amounts of personal information and data about Plaintiff and Class Members and then use that information and data to generate substantial revenue from advertising and marketing services.

4.      LinkedIn's actions and activities violate the Driver's Privacy Protection Act, 18 U.S.C. 2721, *et seq.* ("DPPA"), because it has obtained personal information from a motor vehicle driving record and used it for a purpose not permitted under the law. LinkedIn's actions and activities also violate the California Invasion of Privacy Act, California Penal Code § 630, *et seq.*, ("CIPA"), because it learned the contents of Plaintiff's and Class Members' communications with the DMV and used them without Plaintiff's and Class Members' consent.

5.      Plaintiff's class action complaint seeks to recover all available remedies, including statutory penalties, and to redress the wrongs imposed by LinkedIn on Plaintiff and Class Members.

---

[1] The Economist, *The World's Most Valuable Resource Is No Longer Oil, But Data*, THE ECONOMIST (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longer-oil-but-data.

2

1

**PARTIES**

2      6.      Plaintiff Jacqueline Jackson ("Plaintiff") is a citizen and resident of the State of

3  California. Plaintiff has been a registered LinkedIn user for at least the last ten years. Plaintiff

4  regularly accesses LinkedIn, approximately once or twice a week. Since approximately 2009,

5  Plaintiff has had a disability placard issued to her by the California DMV. Plaintiff renewed her

6  disability placard online in 2023 through the DMV website using her Samsung Galaxy 21 phone

7  and, in doing so, provided the DMV with her first and last name, date of birth, disability

8  information, email address, and URL information about each portion of the DMV site that she

9  visited.

10     7.      In January 2024, Plaintiff first discovered that LinkedIn secretly used the LinkedIn

11  Pixel to obtain personal information from her motor vehicle record, learn the contents of her

12  communications with the DMV, and use the personal information and data it obtained from her

13  motor vehicle driving record and communications with the DMV. This information was obtained

14  by the DMV after Plaintiff provided it to the DMV in connection with her disability placard

15  application and renewal.

16     8.      Defendant LinkedIn Corporation ("LinkedIn") is a Delaware Corporation. LinkedIn

17  is licensed to do business in California and maintains its principal place of business and corporate

18  headquarters at 1000 West Maude Avenue, Sunnyvale, CA 94085.

19              **JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT**

20     9.      This Court has personal jurisdiction over LinkedIn because it has its principal place

21  of business in California.

22     10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

23  1331 because it arises from violations of the DPPA. This Court also has subject matter jurisdiction

24  under 28 U.S.C. § 1332(d)(2) because it is a class action with more than $5,000,000 in controversy

25  where at least one Class Member is a citizen of a state of which LinkedIn is not a citizen.

26     11.     This Court may also exercise supplemental jurisdiction over Plaintiff's CIPA claim

27  pursuant to 28 U.S.C. § 1367(a) because it is so related to the DPPA claim (within the Court's

28  original jurisdiction) that it forms part of the same case or controversy under Article III of the

**CLASS ACTION COMPLAINT**

United States Constitution. This case does not present novel or complex issues of state law that predominate over claims for which this Court has original jurisdiction, and there are no compelling reasons for declining supplemental jurisdiction over those of Plaintiff's claims that do not arise under the DPPA.

12.    Venue is appropriate in this Court because LinkedIn resides in this District.

13.    This action is properly assigned to the San Jose Division, pursuant to N.D. Cal. Civil Local Rule 3-2(c), (e) and the Court's Assignment Plan (General Order No. 44), because this action arises in Santa Clara County.

## COMMON FACTUAL ALLEGATIONS

### A.  Background of the DPPA

14.    Congress enacted the DPPA in 1994 in response to state DMVs' practice of selling or freely disclosing drivers' personal information acquired through the states' coercive power. In addition to inherent safety risks resulting from the use of such information by criminals, the DPPA also addressed the invasion of privacy associated with unconsented disclosure of such personal information to direct marketers for commercial purposes. As Congressman James P. Moran, the sponsor of the bill in the United States House of Representatives, noted:

> Computers have enabled individuals, with the click of a button, to pull up a person's DMV record. While the immediate accessibility to such personal data makes it even more valuable, it also makes it more important that safeguards are in place to protect personal information. . . . the release of this information to direct marketers . . . present[s], to some people, an invasion of privacy. If you review the way in which people are classified by direct marketers based on DMV information you can see why some individuals might object to their personal information being sold.[2]

15.    The DPPA protects "personal information" and provides a civil cause of action against anyone who "knowingly obtains, discloses, or uses personal information" from a motor vehicle record for purposes not permitted under the law. 18 U.S.C. § 2724(a). Upon finding a violation of the statute, a plaintiff may be awarded: (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4)

---

[2] Protecting Driver Privacy: Hearing on H.R. 3365 Before the Subcomm. on Civil & Constitutional Rights, 1994 WL 212698 (Feb. 3, 1994) (statement of Rep. Moran).

4

such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C. §
2724(b).

16.     The DPPA defines "personal information" as "information that identifies an
individual, including an individual's photograph, social security number, driver identification
number, name, address (but not the 5-digit zip code), telephone number, and medical or disability
information." 18 U.S.C. § 2725(3).

17.     The DPPA defines "motor vehicle record" to include "any record that pertains to a
motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification
card issued by a department of motor vehicles[.]" *Id.* at § 2725(1).  A disabled parking placard
"pertains to a motor vehicle operator's permit."

**B.  Background of CIPA**

18.     When CIPA was passed, the California legislature recognized "that advances in
science and technology have led to the development of new devices and techniques for the
purpose of eavesdropping upon private communications and that the invasion of privacy resulting
from the continual and increasing use of such devices and techniques has created a serious threat
to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."
Cal. Penal Code § 630.

19.     Specifically, with limited exceptions, CIPA prohibits "any person" from "willfully
and without the consent of all parties to the communication … read[ing], or attempt[ing] to read,
or to learn the contents or meaning of any message, report, or communication while the same is in
transit or passing over any wire, line, or cable, or is being sent from, or received at any place
within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to
communicate in any way, any information so obtained, or who aids, agrees with, employs, or
conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the
acts or things mentioned[.]" *Id.* at § 631(a). Section 631(a) of the Penal Code prescribes three
distinct and mutually independent patterns of conduct: intentional wiretapping, willfully
attempting to learn the contents or meaning of a communication in transit over a wire, and

attempting to use or communicate information obtained as a result of engaging in either of the previous two activities.

### C.  LinkedIn and the LinkedIn Pixel

20.     **The LinkedIn Platform.** LinkedIn markets itself as "the world's largest professional network on the internet[.]"[3] But LinkedIn is no longer just a tool to help users "find the right job or internship, connect and strengthen professional relationships, and learn the skills [they] need to succeed in [their] career[.]"[4] LinkedIn has moved into the marketing and advertising space, and boasts of its ability to allow potential advertisers to "[r]each 1 billion+ professionals around the world" via its Marketing Solutions services.[5] Recently, LinkedIn was projected as being responsible for "roughly 0.9 percent of the global ad revenue" which included approximately $5.91 billion in advertising revenue in 2022.[6]

21.     According to LinkedIn, "[t]argeting is a foundational element of running a successful advertising campaign — getting your targeting right leads to higher engagement, and ultimately, higher conversion rates."[7] Targeting refers to ensuring that advertisements are targeted to, and appear in front of, the target demographic for an advertisement. To that end, LinkedIn's Marketing Solutions services allows potential advertisers to "[b]uild strategic campaigns" targeting specific users.[8] LinkedIn's "marketing solutions allow advertisers to select specific

---

[3] LinkedIn, *What is LinkedIn and how can I use it?*, LINKEDIN.COM, https://www.linkedin.com/help/linkedin/answer/a548441 (last visited Jan. 25, 2024).
[4] *See id.*
[5] LinkedIn, Describing LinkedIn Marketing Solutions, LINKEDIN.COM, https://business.linkedin.com/marketing-solutions (last visited Jan. 25, 2024).
[6] Valentina Dencheva, *LinkedIn's advertising revenue worldwide from 2017 to 2027*, STATISTA.COM (Dec. 12, 2023), https://www.statista.com/statistics/275933/linkedins-advertising-revenue/#:~:text=In%202022%2C%20LinkedIn%20generated%205.91,of%20the%20global%20ad%20revenue.
[7] LinkedIn, *Research your audience, Mastering Targeting on LinkedIn*, p.3, LINKEDIN.COM, https://business.linkedin.com/content/dam/me/business/en-us/marketing-solutions/cx/2020/namer-pdfs/linkedin-marketing-solutions-updated-targeting-playbook-2020.pdf (last visited Jan. 25, 2024).
[8] LinkedIn, *supra* note 5.

characteristics to help them reach their ideal audience. The ads [users] see on LinkedIn are then targeted to provide content relevant to [the users].'"[9]

22.     As a result of its activities and operation of the LinkedIn Pixel, LinkedIn is able to make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more.[10]

23.     The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Lookalike Targeting, Audience Expansion, Matched Audiences, LinkedIn Audience Network, and Meet the LinkedIn Member.[11]

24.     Such information is extremely valuable to marketers and advertisers because the inferences derived from users' personal information and communications allows marketers and advertisers, including healthcare providers and insurance companies, to target potential customers.[12]

---

[9] LinkedIn, *LinkedIn Ads and marketing solutions*, LINKEDIN.COM, https://www.linkedin.com/help/lms/answer/a421454#:~:text=Our%20marketing%20solutions%20 allow%20advertisers,provide%20content%20relevant%20to%20you (last visited Jan. 25, 2024).

[10] LinkedIn, Describing Ways to Advertise to LinkedIn's Audience of Professionals, LINKEDIN.COM, https://business.linkedin.com/marketing-solutions/audience (last visited Jan. 25, 2024) ("Precisely target professional audiences through demographic marketing," "Zero in on intent, behavior, engagement, interests and more," and "Reach the LinkedIn audience involved in the buying decision").

[11] *Id.*

[12] LinkedIn, *Privacy Policy*, LINKEDIN.COM, https://www.linkedin.com/legal/privacy-policy (last visited Jan. 25, 2024) ("We serve you tailored ads both on and off our Services. We offer you choices regarding personalized ads, but you cannot opt-out of seeing other ads."); LinkedIn, *Account Targeting*, LINKEDIN.COM, https://business.linkedin.com/marketing-solutions/ad-targeting (last visited Jan. 25, 2024) ("Target your ideal customer based on traits like their job title, company name or industry, and by professional or personal interests"); LinkedIn, *Examples of Trending and Best-in-Class Healthcare Campaigns and Content*, p.6, LINKEDIN.COM, https://business.linkedin.com/content/dam/me/business/en-us/marketing-solutions/healthcare-microsite/resources/lkin-lms-sales-healthcare-campaigns-trending-content-Jan2023.pdf (last visited Jan. 25, 2024) ("BD zeroed in on the end-benefit with a 30 second video introducing their PIVO needle-free blood collection device to potential customers."); LinkedIn, *Healthcare social media strategies for 2023*, p.1, LINKEDIN.COM, https://business.linkedin.com/content/dam/me/business/en-us/marketing-solutions/healthcare-microsite/resources/hc-social-media-trends.pdf (last visited Jan. 25, 2024) (listing "potential customers" as "Common audiences" for insurance sector).

**CLASS ACTION COMPLAINT**

25.     For example, through the use of LinkedIn's Audience Network, marketers and advertisers are able expand their reach and advertise on sites other than LinkedIn to "reach millions of professionals across multiple touchpoints."[13] According to Broc Munro of Microsoft, "[w]e gravitate towards social platforms like LinkedIn to achieve more targeted marketing engagement. However, we know that our audiences don't spend all their time on social media. LinkedIn Audience Network enables us to expand our reach to trusted sites while still respecting our audience targeting. This increases the impact of our advertising."[14]

26.     In July 2022, "LinkedIn Marketing Solutions surpassed $5 billion in annual revenue[.]"[15] That figure is "expected to further grow to reach 10.35 billion U.S. dollars by 2027."[16]

27.     **The LinkedIn Pixel.** According to LinkedIn, the LinkedIn Pixel, also called Insight Tag or Image Pixel, is "[a] simple code snippet added to [a] website [that] can help you optimize your campaigns, retarget your website visitors, and learn more about your audiences."[17] LinkedIn emphasizes that the Pixel is "simple and easy" to install.[18] LinkedIn further represents that the Pixel "enable[s] in-depth campaign reporting" and can "unlock valuable insights about your website visitors."[19] This was undoubtedly true of LinkedIn's use of the Pixel on the DMV website—it unlocked valuable insights about the DMV's website visitors.

28.     LinkedIn's current iteration of the Pixel is a JavaScript-based code which allows for installation of its Insight Tag or Image Pixel. A critical new feature allows the LinkedIn Pixel

---

[13] Introducing LinkedIn Audience Network, https://youtu.be/sutazvLV3n8.

[14] LinkedIn, *LinkedIn Audience Network*, LINKEDIN.COM, https://business.linkedin.com/marketing-solutions/native-advertising/linkedin-audience-network (last visited Jan. 25, 2024).

[15] Alexandra Rynne, *Now Is the Time to Make LinkedIn a Strategic Priority. Here's Why.*, LINKEDIN.COM (July 6, 2023), https://www.linkedin.com/business/marketing/blog/linkedin-ads/why-you-should-be-marketing-on-linkedin-right-now.

[16] Dencheva, *supra* note 6.

[17] LinkedIn, *Insight Tag*, LINKEDIN.COM, https://business.linkedin.com/marketing-solutions/insight-tag (last visited Jan. 25, 2024).

[18] *Id.*

[19] LinkedIn, *LinkedIn Insight Tag FAQs*, LinkedIn.com, https://www.linkedin.com/help/lms/answer/a421782/linkedin-insight-faq?lang=en-us&intendedLocale=ms#:~:text=The%20LinkedIn%20Insight%20Tag%20is,insights%20about%20your%20website%20visitors (last visited Feb. 9, 2024).

**CLASS ACTION COMPLAINT**

to avoid privacy settings in website visitors' browsers that block third-party cookies. LinkedIn "recommend[s] using the JavaScript-based Insight Tag or Conversions API" because third-party cookie settings are being deprecated across the industry. Embedding the JavaScript as a first party cookie, rather than a third-party cookie, causes users' browsers to treat the Pixel as though it is offered by the website being visited, rather than by LinkedIn. Doing so, ensures that the third-party cookie-blocking functions of modern web browsers do not prevent LinkedIn from collecting data through its Pixel. Instead, the Pixel is shielded with the same privacy exemptions offered to first-party cookies.

29.    If, before signing into LinkedIn, a user is browsing a website where the LinkedIn Pixel has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website (see image below). As an example, the following HTTP request is sent by LinkedIn when a visitor accesses the DMV's website before signing into LinkedIn.



30.    Once the user has signed into LinkedIn (even if the user subsequently logs out), a new HTTP request is generated containing additional cookies. These cookies include data that differentiate users from one another and can be used to link the data collected to the user's LinkedIn profile (see image below).

**CLASS ACTION COMPLAINT**

31.     As displayed in the above screenshot, the HTTP request about an individual who has previously signed into LinkedIn includes requests from "lms_ads" and "lms_analytics." Each of these are used by LinkedIn "to identify LinkedIn Members off LinkedIn" for analytics or advertising purposes:[20]

| lms_ads | .linkedin.com | Used to identify LinkedIn Members off LinkedIn for advertising | 30 days | LinkedIn |
| lms_analytics | .linkedin.com | Used to identify LinkedIn Members off LinkedIn for analytics | 30 days | LinkedIn |

32.     It is important to note that LinkedIn is then able to use the identifier to locate, access, and view its members' corresponding LinkedIn profiles.

33.     A LinkedIn profile generally contains information including an individual's first and last name, place of work, contact information, and other personal details. Through the

_____

[20] LinkedIn, *LinkedIn Cookie Table*, LINKEDIN.COM, https://www.linkedin.com/legal/l/cookie-table (last visited Jan. 25, 2024) ("Cookies LinkedIn drops on third party sites").

**CLASS ACTION COMPLAINT**

information that LinkedIn obtains from the DMV, LinkedIn is able to combine disability status with a LinkedIn member's profile, and then target them for advertising.

### D.  LinkedIn's Use of Data Obtained Through the LinkedIn Pixel

34.    LinkedIn feeds the vast quantities of personal data obtained from the LinkedIn Pixel into its Marketing Solutions advertising systems to identify, characterize, and categorize users' for targeted advertising purposes.

35.    LinkedIn's Marketing Solutions services monetizes the collected data through the sale of adds.[21] Marketers are able to target potential customers on LinkedIn through Ad Targeting, Lookalike Targeting, Audience Expansion, Matched Audiences, LinkedIn Audience Network, and Meet the LinkedIn Member.[22]

36.    LinkedIn boasts that its Ad Targeting service will help marketers "[r]each the right audience" by targeting specific "matched audiences" derived from +950 million LinkedIn members, 180 million Senior-level influencers, 63 million decision makers, and 10 million C-level executives in the LinkedIn Audience Network.[23] It further states that "[l]ookalike audiences help you expand your Matched Audience segments by finding people with similar characteristics."[24] Similarly, LinkedIn provides that "[y]ou can use Audience Expansion to increase the reach of your campaign by showing your ads to audiences with similar attributes to your target audience."[25]

---

[21] LinkedIn, *How much do LinkedIn ads cost*, LINKEDIN.COM
https://business.linkedin.com/marketing-solutions/ads/pricing?trk=lms-36b (last visited Jan. 25, 2024).
[22] LinkedIn, *supra* note 10 (Describing Ways to Advertise to LinkedIn's Audience of Professionals).
[23] LinkedIn, *Account Targeting*, LINKEDIN.COM, https://business.linkedin.com/marketing-solutions/ad-targeting (last visited Jan. 25, 2024).
[24] LinkedIn, *Targeting with LinkedIn lookalike audiences*, LINKEDIN.COM,
https://www.linkedin.com/help/lms/answer/a423698/targeting-with-linkedin-lookalike-audiences-overview?src=or-search&veh=www.google.com%7Cor-search&trk=sem-ga_campid.20065362147_asid.148056420385_crid.657161018051_kw.linkedin%20insight%20tag_d.c_tid.kwd-397786907754_n.g_mt.e_geo.1026339&mcid=7059959449221829914&gclid=EAIaIQobChMIxOP5hP2ZgwMV6l1_AB3UPQpiEAAYASAAEgJh3vD_BwE.
[25] LinkedIn, *Audience Expansion*, LINKEDIN.COM,
https://www.linkedin.com/help/lms/answer/a418929?src=or-search&veh=www.google.com%7Cor-search&trk=sem-

37.     LinkedIn Marketing Solutions allows marketers to utilize various types of ads to reach their target audience. These ads include Carousel Ads, Conversation Ads, Event Ads, Follower Ads, Lead Gen Forms, Message Ads, Single Image Ads, Single Job Ads, Spotlight Ads, Text Ads, and Video Ads.[26] The type of ad format is generally based on the objective of the marketer. For instance, Message Ads are used to "[s]end direct messages to . . . prospects to spark immediate action and website traffic."[27] In comparison, Text Ads are used to "[d]rive new customers to your business[.]"[28]

38.     LinkedIn also promotes testimonials from marketers that utilize its Marketing Solutions services. For instance, one marketer emphasized that it was able to generate 150% new customers in one month.[29] Another marketer emphasized a "30% [r]eduction in cost per lead" attributable to LinkedIn's ability to allow the marketer to "target exactly who we want."[30]

39.     At bottom, LinkedIn uses and advertises its Pixel as a way to collect information that will be used to create targeted advertising campaigns.

**E.  LinkedIn Obtains Protected Information from Motor Vehicle Records and Learns the Contents of Communications with the DMV**

40.     The DMV operates www.dmv.ca.gov, which enables users to upload and manage their data and documents, book appointments, renew registration, and order disability placards.[31] The DMV encourages users to use its website rather than visiting one of the DMV's physical

---

ga_campid.20065362147_asid.148056420385_crid.657161018051_kw.linkedin%20insight%20tag_d.c_tid.kwd-397786907754_n.g_mt.e_geo.1026339&mcid=7059959449221829914&gclid=EAIaIQobChMIxOP5hP2ZgwMV6l1_AB3UPQpiEAAYASAAEgJh3vD_BwE (last visited Jan. 25, 2024).

[26] LinkedIn, *Advertising made easier*, LINKEDIN.COM, https://business.linkedin.com/marketing-solutions/success/objective-based-advertising?trk=lms-25&selectedFilter=all-objectives#all-objectives (last visited Jan. 25, 2024).

[27] *Id.*

[28] *Id.*

[29] LinkedIn, *supra* note 5.

[30] *Id.*

[31] California Department of Motor Vehicles, *Online Services*, DMV.CA.GOV https://www.dmv.ca.gov/portal/dmv-online/ (last visited Jan. 25, 2024); California Department of Motor Vehicles, *Virtual Office*, DMV.CA.GOV, https://www.dmv.ca.gov/portal/dmv-virtual-office (last visited Jan. 25, 2024).

locations.[32] In 2020, the DMV reported over 23 million online transactions, the most in DMV history.[33] In 2023, the DMV reported that 40% of the 1.6 million disability placard renewals occurred online.[34]

41.    LinkedIn's Pixel is currently embedded throughout the DMV website and is secretly transmitting personal information from the driving records maintained by the DMV to LinkedIn and allowing LinkedIn to learn the contents of a user's private communications with the DMV.

42.    LinkedIn assigns a unique numerical identifier to each LinkedIn Pixel and maintains records associating each Pixel with the data it transmits and the website where it is embedded.[35] The numerical identifier associated with the LinkedIn Pixel currently operating on the DMV website is 1457876, as indicated below.

---

[32] California Department of Motor Vehicles, *DMV Unveils New Feature to Help Californians with New Requirement to Renew Disabled Person Parking Placard* (Dec. 14, 2022), DMV.CA.GOV, https://www.dmv.ca.gov/portal/news-and-media/dmv-unveils-online-feature-to-help-californians-with-new-requirement-to-renew-disabled-person-parking-placard/.

[33] California Department of Motor Vehicles, Millions of Californians Taking Advantage of DMV *Services Without Visiting Office* (May 3, 2021), DMV.CA.GOV, https://www.dmv.ca.gov/portal/news-and-media/ millions-of-californians-taking-advantage-of-dmv-services-without-visiting-office/.

[34] California Department of Motor Vehicles, *Californians Can Still Renew Disabled Person Parking Placards After June 30 Deadline* (July 20, 2023), DMV.CA.GOV, https://www.dmv.ca.gov/portal/news-and-media/californians-can-still-renew-disabled-person-parking-placards-after-june-30-deadline/.

[35] LinkedIn, *Troubleshooting the LinkedIn Insight Tag*, LINKEDIN.COM, https://www.linkedin.com/help/lms/answer/a425696 (last visited Jan. 25, 2024) (instructing to "[c]onfirm that you've used the correct Partner ID").

**CLASS ACTION COMPLAINT**



43.     Accordingly, LinkedIn knows that the LinkedIn Pixel is operating on the DMV website and knows all the information and communications exchanged between users and the DMV.

**F.  LinkedIn Transfers and Obtains URL Information**

44.     LinkedIn's Pixel is embedded throughout the DMV's website, thus allowing LinkedIn to gather information about the various URLs that users visit within the DMV website. Many of these URLs reveal information, including personal and disability information, about the website users and the contents of their communications with the DMV.

45.     Users' searches on the California DMV website's search bar are clearly indicated within the URL information obtained by LinkedIn, through the "lms_ads" and "lms_analytics" code, which LinkedIn uses to uniquely identify its members. For example, LinkedIn obtains personal information about users and learns the contents of their communications with the DMV when they run searches for "teens" on the DMV's website:

**CLASS ACTION COMPLAINT**



46.     Similarly, information is obtained by LinkedIn if a user searches for "disabled drivers" on the California DMV's website:



47.     Users' activity within specific sections on the website are also obtained by

LinkedIn. For instance, LinkedIn obtains information when users take a driving self-assessment:



48.     LinkedIn also obtains information when users acquire information regarding

disabilities:



### G. LinkedIn Transfers and Obtains Personal Information Including Disability Information

49.     LinkedIn also uses LinkedIn Pixel to obtain information from and about individuals' application for disability placards. Upon entering the California DMV's homepage, users can select "Vehicle Registration" to view the drop-down option of "Disabled Person Parking Placards and Plates."





50.     LinkedIn's Pixel sends URL information to LinkedIn revealing that such an action has been taken:



51.     Users can then click a link to submit a disabled person placard ("DPP") application, and proceed by clicking the "Start Application" button.



1
2
3
4
5
6
7
8
9
10
11
12
13



14      52.   LinkedIn obtains URLs including information regarding each of these steps in the

15   DPP application process, thereby revealing an individual's disability information.

16
17
18
19
20
21
22
23
24
25
26
27
28



53.     In order to complete the process and submit the application, users must input their personal information into a succession of online forms.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





**CLASS ACTION COMPLAINT**

54.     Similar information is collected from individuals who are renewing DPPs, including, at a minimum, first and last name, and date of birth.

55.     After submitting the form, the user receives an e-mail from the DMV regarding the DPP application. In order to review their application, users can click the "Status Checker" button. After clicking the button, users are prompted to enter the "case number" and "email address" associated with their application:





56.     Users are then redirected to the DMV website, and LinkedIn obtains a URL with users' email addresses directly from the DMV's website:

**CLASS ACTION COMPLAINT**

57.     As is clear from the foregoing images, using the LinkedIn Pixel, LinkedIn permits the DMV to transmit users' email addresses, disability placard information, and other identifying information about users' activity on the DMV website. LinkedIn is also learning the contents of communications between website users and the DMV. This enables advertisers to target users with relevant content or advertisement using the personal information and data that LinkedIn harvested from the driving records maintained by the DMV and from the contents of website users' communications with the DMV.

58.     Moreover, such personal information was obtained "knowingly" under the DPPA because LinkedIn knows that information and communication exchanged between users and the DMV are transmitted to LinkedIn by the Pixel specifically assigned to the DMV's website. For the same reasons, the information was obtained "intentionally" under CIPA.

59.     LinkedIn obtains users' personal information including, but not limited to, disability information, from the motor vehicle record and learns of the contents of the communications between users and the DMV.

**CLASS ACTION COMPLAINT**

**H. LinkedIn Does Not Obtain Data from the DMV For An Authorized Purpose and Does Not Obtain User Consent**

60.    By using the LinkedIn Pixel, LinkedIn obtains personal information including, but not limited to, disability information from individuals' motor vehicle records and, also, learns of the contents of their communications with the DMV.

61.    Plaintiff and Class Members did not authorize LinkedIn to obtain their personal information or learn the contents of their communications with the DMV for any purposes, let alone for marketing and advertising.

62.    LinkedIn's Privacy Policy states in pertinent part that "LinkedIn's mission is to connect the world's professionals to allow them to be more productive and successful. Central to this mission is our commitment to be transparent about the data we collect about you, how it is used and with whom it is shared."[36] However, nowhere does LinkedIn disclose that it collects personal information or disability information from the DMV website through its use of the LinkedIn Pixel, or that it uses the LinkedIn Pixel to surveil and learn the contents of communications between users and the DMV. Similarly, LinkedIn falsely represents to users that it has "lawful bases to collect, use and share data about you."[37]

63.    LinkedIn's acquisition and use of the personal information are impermissible. The DPPA does not permit anyone to acquire or use personal or highly restricted personal information for marketing or advertising.

64.    As LinkedIn has its principal place of business in California, on information and belief, decisions about its LinkedIn Pixel, including, but not limited to, designing, marketing, advertising, promotional activities, and literature about its LinkedIn Pixel, User Agreement with a California choice of law provision, and other policies, were coordinated at, emanated from, and were developed, conceived, approved and otherwise controlled, at its California headquarters, and that all critical decisions regarding its LinkedIn Pixel, were made in California and via LinkedIn's

---

[36] LinkedIn, *Privacy Policy*, LINKEDIN.COM, https://www.linkedin.com/legal/privacy-policy (last visited Jan. 25, 2024) ("Your Privacy Matters").
[37] *Id.* ("Lawful Bases for Processing").

California-based executives and leadership personnel. Many of LinkedIn's executives and leadership personnel—including its Senior Vice President and Head of Engineering, Senior Vice President and Chief Product Officer, Senior Vice President and General Counsel, Senior Vice President and Chief Marketing and Communications Officer, and Chief Executive Officer—are located in California. Thus, LinkedIn's scheme to obtain users' data, to learn the contents of their communications with the DMV, and to use what was obtained and learned for unlawful purposes via its LinkedIn Pixel as alleged herein was designed, conceived, reviewed, approved and otherwise controlled and effectuated from LinkedIn's global headquarters and principal place of business in California.

65.     Neither LinkedIn nor the DMV received written consent from Plaintiff and Class Members to allow LinkedIn to obtain personal information or to learn the contents of their communications with the DMV. The DMV's website specifically advises users that "[i]t is the policy of the DMV to limit the collection of personal information and to safeguard the privacy of personal information collected or maintained by DMV."[38]

66.     That Plaintiff and Class Members would not have consented to LinkedIn obtaining their personal information or learning the contents of their communications with the DMV is not surprising. Plaintiff and Class Members have a reasonable expectation of privacy in the data LinkedIn collected.

67.     Several studies examining the collection and disclosure of personal data have concluded such collection is a violation of privacy expectations that have been established as general social norms.

68.     Privacy polls and studies are nearly uniform in showing that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before data is collected and shared.

---

[38] California Department of Motor Vehicles, *Privacy and Security*, DMV.CA.GOV, https://www.dmv.ca.gov/portal/privacy-and-security/ (last visited Jan. 25, 2024).

**CLASS ACTION COMPLAINT**

69.     For example, a recent study by Consumer Reports confirmed Americans' shrinking confidence that their "online information is private and secure."[39] Consumers across political party lines—92% of Americans—confirmed their belief that internet companies and websites should be required to obtain consent before selling or sharing their data with other companies.[40] The same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data collected about them.

70.     According to a study by *Pew Research Center*, a majority of Americans—roughly six in ten U.S. adults—say that they do not think it is possible to go through daily life without having data collected about them by companies.[41] However, the holding of this belief has not eroded people's expectation that their data remain private. Approximately 79% of Americans report being concerned about the way their data is being used by companies.[42]

71.     LinkedIn surreptitiously obtained and used Plaintiff's and Class Members' personal information without a permissible purpose. Additionally, LinkedIn surreptitiously learned the contents of Plaintiff's and Class Members' communications with the DMV and used that information, all without Plaintiff's or Class Members' consent and in violation of their reasonable expectations of privacy.

## TOLLING, CONCEALMENT, AND ESTOPPEL

72.     Plaintiff incorporates and realleges the foregoing factual allegations by reference.

73.     Plaintiff did not know, and could not have known, when she accessed the DMV's website for the purpose of renewing her disability placard that a LinkedIn Pixel was installed on

---

[39] Consumer Reports, *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907/.
[40] *Id*.
[41] Pew Research Center, *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information* ("Americans and Privacy"), PEW RESEARCH CENTER, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.
[42] *Id*.

**CLASS ACTION COMPLAINT**

1  the DMV's website and was obtaining her personal information and learning the contents of her

2  communications with the DMV.

3        74.    Plaintiff did not have the means to discover LinkedIn's unlawful conduct until

4  January 2024.

5        75.    Plaintiff could not have discovered, through the exercise of reasonable diligence,

6  the full scope of LinkedIn's unlawful conduct. LinkedIn designed the LinkedIn Pixel to

7  seamlessly operate on websites, to collect personal information and to learn the contents of

8  communications with the DMV. LinkedIn designed the Pixel to operate so as to be undetectable

9  during the ordinary use of a website. Simultaneously, LinkedIn failed to disclose to Plaintiff or

10  Class Members that a LinkedIn Pixel was installed on the DMV website, or that it was obtaining

11  personal information and learning the contents of users' communications with the DMV.

12        76.    All applicable statutes of limitations have been tolled by operation of the delayed

13  discovery rule.

14        77.    LinkedIn affirmatively hid its true actions and knowingly permitted the DMV to

15  make statements that were misleading and concealed the true nature of LinkedIn's conduct and

16  operation. The circumstances of LinkedIn's conduct on, and with respect to, the DMV website

17  would lead a reasonable user to believe that LinkedIn was not collecting and obtaining personal

18  information or learning the contents of communications with the DMV.

19        78.    Plaintiff was ignorant of the information essential to pursue her claims, without any

20  fault or lack of diligence on her own part.

21        79.    LinkedIn was under a duty to disclose its conduct, and the character, quality and

22  nature of its activities with the LinkedIn Pixel and the DMV website to Plaintiff and Class

23  Members. LinkedIn had superior knowledge regarding the LinkedIn Pixel and its function on the

24  DMV website, made partial representations in its Privacy Policy and Cookie Policy regarding its

25  use of pixels, and actively concealed the true nature of the LinkedIn Pixel and its function on the

26  DMV website.

27        80.    Therefore, all applicable statutes of limitations have also been tolled by LinkedIn's

28  knowing and active fraudulent concealment.

**CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

81.     Plaintiff brings this action, pursuant to Federal Rule of Civil Procedure 23, individually and on behalf all LinkedIn members who visited the California Department of Motor Vehicles ("DMV") website to apply for, renew, or check the status of a disability placard (the "Class"). Each LinkedIn member in the Class is a "Class Member."

82.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) LinkedIn, its subsidiaries, affiliates, parents, successors, predecessors, and any entity in which LinkedIn or its parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

83.     **Numerosity**: The exact number of Class Members is unknown and unavailable to Plaintiff at this time. Based on the number of online transactions reported by the DMV, Plaintiff believes that the Class includes millions of individuals.

84.     **Predominant Common Questions**: The claims asserted by Plaintiff and Class Members present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. Common questions applicable to the Class include, but are not limited to, the following:

a.     Whether LinkedIn's conduct violates the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq.*;

b.     Whether LinkedIn obtained Plaintiff's and Class Members' personal information from the DMV website;

c.     Whether LinkedIn obtained personal information from a "motor vehicle record;"

d.     Whether LinkedIn obtained personal information and used it for an "improper purpose;"

e.     Whether LinkedIn knowingly obtained personal information;

f.     Whether LinkedIn's conduct violates the California Invasion of Privacy Act, Cal. Penal Code § 630, *et seq.*;

**CLASS ACTION COMPLAINT**

g.     Whether LinkedIn learned the contents of Plaintiff's and Class Members'

communications with the DMV; and

h.     Whether LinkedIn used the information it learned from the contents of Plaintiff's

and Class Members' communications with the DMV.

85.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the

Class. The claims of Plaintiff and Class Members arise from the same conduct by LinkedIn and

are based on the same legal theories.

86.     **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interests of the Class. Plaintiff has retained counsel competent and experienced in

complex litigation and class actions. Plaintiff has no interest that is antagonistic to the interests of

the Class, and LinkedIn has no defense unique to any Plaintiff or Class Member. Plaintiff and

Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class, and

they have the resources to do so. Neither Plaintiff, nor Plaintiff's counsel, have any interest

adverse to the interests of any other Class Member.

87.     **Superiority**: This class action is appropriate for certification because class

proceedings are superior to other available methods for the fair and efficient adjudication of this

controversy and joinder of all members of the class is impracticable. This proposed class action

presents fewer management difficulties than individual litigation, and provides the benefits of

single adjudication, economies of scale, and comprehensive supervision by a single court. Class

treatment will create economies of time, effort, and expense, and promote uniform decision-

making. Class-wide damages are essential to compel LinkedIn to comply with state and federal

law. Moreover, because the amount of each individual Class Member's claim is small relative to

the complexity of the litigation, and because of LinkedIn's financial resources, Class Members are

unlikely to pursue legal redress individually for the violations detailed in this complaint. A class

action will allow these claims to be heard where they would otherwise go unheard because of the

expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of

scale, and comprehensive supervision by a single court.

88.     **Injunctive Relief**: Plaintiff also satisfies the requirements for maintaining a class under Rule 23(b)(2). LinkedIn acted on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

89.     **Particular Issues**: Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims are common to all Class Members and are capable of class-wide resolution that will significantly advance the litigation.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT**

**18 U.S.C. §§ 2721, *ET SEQ.***

90.     Plaintiff incorporates and realleges the foregoing factual allegations by reference.

91.     Plaintiff brings this cause of action individually and on behalf of Class Members.

92.     The DPPA provides a civil cause of action against any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under section 2721(b). 18 U.S.C. § 2724(a).

93.     LinkedIn knew that it was obtaining personal information from motor vehicle records maintained by the DMV via the LinkedIn Pixel installed on the DMV's website. As alleged above, LinkedIn assigns unique identifiers to each LinkedIn Pixel, including the LinkedIn Pixel operating on the DMV website. These unique identifiers are used by LinkedIn to associate the data obtained from each Pixel with the website where it is embedded. Thus, LinkedIn knows that the Pixel installed on the DMV website is obtaining personal information from the DMV and the motor vehicle records it maintains.

94.     The LinkedIn Pixel installed on the DMV website allowed (and continues to allow) LinkedIn to obtain personal information including, but not limited to, disability information.

95.     Disability information is included within the definition of "personal information" under the DPPA.

96.     The personal information LinkedIn obtains from the DMV comes from motor vehicle records. LinkedIn obtains information from its LinkedIn Pixel when individuals use the

30

DMV website to apply for, renew, provide information about, and/or check on the status of, among other things, disability placards which pertain to motor vehicle operators' permits. Thus, the information obtained by LinkedIn comes from information that the DMV requests and maintains about individuals' motor vehicle records.

97.     LinkedIn does not obtain or use personal information for any permissible purpose under 18 U.S.C. § 2721(b). Based on LinkedIn's marketing and advertising business, and on the facts alleged above, LinkedIn uses the personal information it obtains from motor vehicle records to create profiles, categorize individuals, and derive information about them in order to sell its customers the ability to create targeted marketing and advertising.

98.     LinkedIn's use of the LinkedIn Pixel to obtain personal information from motor vehicle records was willful or in reckless disregard of the law. LinkedIn is a sophisticated social media and online marketing company that knows it cannot collect individual's private and personal information without obtaining consent, or for improper purposes. Despite knowing that its practice of obtaining and using personal information is subject to restrictions, LinkedIn willfully and/or recklessly violated the DPPA.

99.     As a proximate result of LinkedIn's violation of the DPPA, Plaintiff and Class Members are entitled to recover: (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate.

100.     Furthermore, Plaintiffs and Class Members seek an injunction prohibiting LinkedIn from continuing to obtain and using personal information from motor vehicle records maintained by the DMV using LinkedIn Pixel.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**CAL. PENAL. CODE §§ 630, *ET SEQ.***

101.     Plaintiff incorporates and realleges the foregoing factual allegations by reference.

102.     Plaintiff brings this cause of action individually and on behalf of Class Members.

103.    In the California Invasion of Privacy Act ("CIPA"), the California Legislature explained that it was their intent "to protect the right of privacy of the people of this state." Cal. Penal Code § 630. The Legislature also declared that such protection was necessary given "that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id*.

104.    It is illegal under CIPA for any person to use "any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, or attempt to read, or to learn the contents or meaning of any message, report or communication while the same is in transit or passing over any wire, line, or cable or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned in [section 631.]" Cal. Penal. Code § 631(a).

105.    LinkedIn willfully attempted to and did learn the contents or meaning of Plaintiff's and Class Members' communications with the DMV. The LinkedIn Pixel is embedded on and throughout the DMV website and transmits the URL of each page visited on the website to LinkedIn. The LinkedIn Pixel also provides LinkedIn with information showing that Plaintiff and Class Members communicated with the DMV in order to apply for or renew driver's permits and/or licenses, vehicle title and/or registration, disability information for disability placards, and identification cards and/or to check on the status of those items. As alleged in more detail above, the LinkedIn Pixel also provides LinkedIn with the contents of Plaintiff's and Class Members' searches of the DMV website.

106.    LinkedIn also attempted to and did use the information it learned from the contents of Plaintiff's and Class Members' communications with the DMV. Based on LinkedIn's

marketing and advertising business, and on the facts alleged above, LinkedIn uses the information it obtains and collects from the DMV in order to create profiles, categorize individuals, and derive information about them in order to sell its customers the ability to create targeted marketing and advertising.

107.   The information obtained by LinkedIn through the LinkedIn Pixel is not mere "record information." Rather, the information obtained through the LinkedIn Pixel is substantive and personal; revealing, for example, that Plaintiff has a disability (or believes that they have a disability) and requires a disability parking placard.

108.   The LinkedIn Pixel is active at all times on nearly every page of the DMV website and broadly transmits other information from the DMV to LinkedIn that identifies websites users.

109.   Through the foregoing practices, LinkedIn intended to learn, and did learn, the meaning of the contents of Plaintiff's and Class Members' communications with the DMV including, but not limited to, URLs, search queries, submissions made to the DMV, and content and/or messages exchanged between the DMV and Plaintiff and Class Members.

110.   The LinkedIn Pixel satisfies CIPA's requirement that a person use means such as a "machine, instrument, or contrivance, or in any other manner." Cal. Penal Code § 631(a). Moreover, LinkedIn satisfies the requirements of section 631 because the LinkedIn Pixel is programmed and intended to cause other machines, instruments, contrivances and in any other manner cause LinkedIn to obtain and learn the contents of Plaintiff's and Class Members' communications with the DMV. These include:

a.   Plaintiff's and Class Members' internet browsers;

b.   Plaintiff's and Class Members' computers, tablets, and/or mobile devices;

c.   LinkedIn's website, marketing and ad servers;

d.   The website and ad servers from which LinkedIn obtained Plaintiff's and Class Members' communications while they were using an internet browser to access or navigate the DMV website; and

e.   The JavaScript and/or computer code and programs that LinkedIn used to obtain and learn the contents of Plaintiff's and Class Members' communications.

111.    LinkedIn conceived of and carried out its plan—to learn the contents of Plaintiff's and Class Members' communications while they were using a web browser or mobile application to visit and/or communicate with the DMV through its website—originated and was executed in California.

112.    Plaintiff and Class Members suffered loss by reason of LinkedIn's violations, including, but not limited to, violations of their right of privacy, loss of value in their personally-identifiable information, and the inequity of LinkedIn's enrichment by means of obtaining and identifying and private information pertaining to Plaintiff and Class Members and learning the contents of their communications with the DMV.

113.    LinkedIn did not obtain authorization or consent to learn the contents of Plaintiff's and Class Members' communications with the DMV or to use that information.

114.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by LinkedIn's violation of Cal. Penal Code § 631 and each seek damages for the greater of $5,000 or three times the actual amount of damages they suffered.

115.    Furthermore, Plaintiff and Class Members seek an injunction prohibiting LinkedIn from continuing to obtain and learn the contents of their communications with the DMV using LinkedIn Pixel, or from using any of that information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

a.    Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

b.    Enter judgment in favor of Plaintiff and the Class;

c.    Enjoin LinkedIn from obtaining personal information from motor vehicle records maintained by the DMV and from using it;

d.    Enjoin LinkedIn from learning the contents of Plaintiff's and Class Members' communications with the DMV and from using it;

**CLASS ACTION COMPLAINT**

e.      Award Plaintiff and Class Members actual and/or statutory damages pursuant to the DPPA;

f.      Award Plaintiff and Class Members actual and/or statutory damages pursuant to CIPA;

g.      Award Plaintiff and Class Members pre- and post-judgment interested as provided by law;

h.      Award Plaintiff and Class Members reasonable litigation expenses and attorneys' fees as permitted by law; and

i.      Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right.

Dated: February 9, 2024          Respectfully submitted,

                               */s/ Roland Tellis*
                               Roland Tellis (SBN 186269)
                               rtellis@baronbudd.com
                               Sterling L. Cluff (SBN 267142)
                               scluff@baronbudd.com
                               Michael J. Pacelli (SBN 338042)
                               mpacelli@baronbudd.com
                               **BARON & BUDD, P.C.**
                               15910 Ventura Blvd., Suite 1600
                               Encino, CA 91436
                               Telephone: 818.839.2333

                               Don Bivens (*pro hac vice* forthcoming)
                               **DON BIVENS PLLC**
                               don@donbivens.com
                               15169 N. Scottsdale Road
                               Scottsdale, AZ 85254
                               Telephone: 602.708.1450

                               *Attorneys for Plaintiff and the Putative Class*

**CLASS ACTION COMPLAINT**