COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
MORGAN E. LEWIS (322205)
(melewis@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JACQUELINE JACKSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:24-cv-00812-PCP

**DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Hearing Date: June 6, 2024
Time: 10:00 a.m.
Dept: Courtroom 8, 4th Floor
Judge: P. Casey Pitts
Trial Date: TBD
Date Action Filed: February 9, 2024

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT,** on June 6, 2024 at 10:00 am in Courtroom 8 of the above-captioned Court, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move this Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7), for an order dismissing Plaintiff Jacqueline Jackson's Class Action Complaint with prejudice. The Motion is based upon the below Memorandum and Points and Authorities; the accompanying Declarations of Edward Castaño and Aarti Reddy; the Request for Judicial Notice; all papers on file; and such further argument that the Court may consider.

## ISSUES TO BE DECIDED

Whether Plaintiff's Complaint should be dismissed because she has failed to join the California Department of Motor Vehicles ("DMV") as a required party under Rule 12(b)(7), and whether Plaintiff's Complaint should be dismissed because she has failed to state a claim for each of her two causes of action under Rule 12(b)(6).

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. The Parties ..... 2
B. LinkedIn's Insight Tag ..... 3
C. The DMV's Use of the LinkedIn Insight Tag ..... 4
III. ARGUMENT ..... 5
A. Rule 12(b)(7) – Plaintiff Failed to Join a Required Party In This Action. ..... 5
1. The DMV is a Required Party. ..... 5
a. The Court cannot award "complete" relief without the DMV. ..... 6
b. Proceeding without the DMV would impair the DMV's interests. ..... 8
c. The DMV's absence puts LinkedIn in an untenable position. ..... 10
2. The DMV Cannot be Joined. ..... 10
3. Due to the DMV's Absence, The Court Should Dismiss the Action. ..... 10
B. Rule 12(b)(6) – Plaintiff Fails to State a Claim under the DPPA. ..... 12
1. Plaintiff Fails to Plausibly Allege that LinkedIn Knowingly Obtained or Used Her Personal Information. ..... 12
2. Plaintiff Fails to Allege that the Alleged Personal Information Was from a Motor Vehicle Record. ..... 15
3. The Challenged Conduct Here Falls Within the "Permitted Purposes" Exceptions, Which Precludes DPPA Liability. ..... 17
4. *Gershzon v. Meta* is Distinguishable and Its Analyses Are Flawed. ..... 18
C. Rule 12(b)(6) – Plaintiff Fails to State a Claim under Section 631 of CIPA. ..... 20
1. LinkedIn Is Not Liable Under CIPA Because It Was a Party to The Alleged Communications, Not a Third-Party Eavesdropper. ..... 20
2. Plaintiff's Claim Under CIPA's Second Clause Has Additional Defects. ..... 23
3. Plaintiff's Claims Under CIPA's Third Clause Have Further Flaws. ..... 25
IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) .... 13

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) .... 9, 12

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) .... *passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .... 14, 23, 24

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal . 2023) .... 21

*Cal. v. Azuma Corp.*,
2023 WL 5835794 (E.D. Cal. Sept. 8, 2023) .... 8

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .... 24

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) .... 9, 10, 11

*Downing v. Globe Direct LLC.*,
806 F. Supp. 2d 461 (D. Mass. 2011), .... *passim*

*E.E.O.C. v. Peabody W. Coal Co.*,
400 F.3d 774 (9th Cir. 2005) .... 6

*E.E.O.C. v. Peabody W. Coal Co.*,
610 F.3d 1070 (9th Cir. 2010) .... 7, 9

*Enslin v. The Coca-Cola Company*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) .... 13

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .... 24

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 21

*Friends of Mat-Su v. Usibelli Coal Mine, Inc.*,
2012 WL 12871623 (D. Alaska Sept. 13, 2012) .... 10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) .......... 12

*Gershzon v. Meta Platforms Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......... 7, 18, 19

*In re Google Assistant Privacy Lit.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 25

*Graham v. Noom*,
533 F. Supp. 3d 832 (N.D. Cal. 2021) .......... 21, 22

*Heiting v. Taro Pharm s. USA, Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) .......... 25

*Hibbs v. Dep't of Hum. Res.*,
273 F.3d 844 (9th Cir. 2001) .......... 10

*Iconlab Inc. v. Bausch Health Companies Inc.*,
2019 WL 12521292 (C.D. Cal. May 15, 2019) .......... 6, 8

*James v. Allstate Insurance Company*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 23, 25

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 22

*Joffe v. Google, Inc.*,
746 F.3d 920 (9th Cir. 2013) .......... 20

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 21

*Keogh v. Meta Platforms, Inc.*,
2023 WL 9657924 (D.S.C. Feb. 14, 2023) .......... *passim*

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 21

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......... 21

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 23, 25

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Paiute-Shoshone Indians of Bishop Comm. of the Bishop Colony, Cal. v. City of Los Angeles*,
637 F.3d 993 (9th Cir. 2011) ........ 6

*Pit River Home & Argic. Coop. Ass'n v. United States*,
30 F.3d 1088 (9th Cir. 1994) ........ 6

*Rand v. Travelers Indem. Co.*,
637 F. Supp. 3d 55 (S.D.N.Y. 2022) ........ 13

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008) ........ 5, 11

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........ 24

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,
672 F.3d 1176 (9th Cir. 2012) ........ 5, 10

*Senne v. Village of Palatine, Illinois*,
695 F.3d 597 (7th Cir. 2012) ........ 12

*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992) ........ 8

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ........ 22, 23

*United States v. Bowen*,
172 F.3d 682 (9th Cir. 1999) ........ 8

*United States v. Carr*,
513 F.3d 1164 (9th Cir. 2008) ........ 20

*In re USAA Data Sec. Litig.*,
621 F. Supp. 3d 454 (S.D.N.Y. 2022) ........ 12

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........ 22

*In re Vizio Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 24

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ........ 21

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Webb v. City of Tempe*,
2017 WL 1233827 (D. Ariz. Apr. 4, 2017) ........ 11

*White v. Univ. of Cal.*,
2012 WL 12335354 (N.D. Cal. Oct. 9, 2012) ........ 3

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 21, 22

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. April 15, 2021) ........ 21

*Yockey v. Salesforce, Inc.*,
2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ........ 22

**Statutes**

18 U.S.C.
§ 2721(b)(1) ........ 17
§ 2724 ........ 12
§ 2724(a) ........ 13
§ 2725(1) ........ 15

Cal. Penal Code § 631(a) ........ 20, 23

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ........ 15

## I. INTRODUCTION

Plaintiff Jacqueline Jackson ("Plaintiff") claims that, when she and class members visited certain webpages of the California Department of Motor Vehicles (the "DMV"), their private disability status was disclosed to LinkedIn Corporation ("LinkedIn") in violation of the Driver's Privacy Protection Act ("DPPA") and the California Invasion of Privacy Act ("CIPA"). LinkedIn offers its advertisers the option to install a web pixel or "Insight Tag" (in LinkedIn parlance) to aid their advertising efforts. According to Plaintiff, because ***the DMV*** allegedly installed the Insight Tag on disability-related webpages that ***the DMV*** set up with web addresses, or URLs, that allegedly revealed class members' private information, ***LinkedIn*** should be held liable. This is not the law.

Plaintiff's Complaint has fundamental and fatal defects that no amendment can fix. She sues only LinkedIn, which did not cause and has no legal responsibility for her alleged injuries. Conversely, she does not (and cannot here) sue the entity that controlled every variable allegedly triggering the disclosure of her information—the DMV. The Court should dismiss this case because Plaintiff sues the wrong party and cannot adequately plead the elements of her claims.

As an initial matter, the Court should dismiss the Complaint with prejudice because the DMV is a required party that cannot be joined. The DMV is required for multiple reasons, including that the Court cannot grant Plaintiff complete relief without the DMV, a decision here could adversely affect the DMV's practices, and LinkedIn could never assure its compliance with any injunction against receiving the challenged information when the DMV is not also before this Court. Plaintiff cannot surmount this obstacle through amendment, as the Eleventh Amendment precludes joining the DMV. Given this, the Court cannot proceed without the DMV "in equity and good conscience," as Rule 19 requires. Indeed, another District Court dismissed a highly analogous DPPA case for this very reason in *Downing v. Globe Direct LLC*. This Court should do the same.

Plaintiff's DPPA claim is untenable in any event. A party is liable under the DPPA only where it (1) knowingly obtains, discloses, or uses personal information, (2) from a motor vehicle record, (3) for an impermissible purpose. Here, Plaintiff alleges no facts plausibly showing that LinkedIn "knowingly" obtained personal information from the DMV and her conclusory assertions

that LinkedIn must have known because it offered the Insight Tag are inadequate. Likewise, the challenged information here does not come from a "motor vehicle record." That term definitionally excludes the ***parking*** placards at issue here and binding Ninth Circuit authority also limits these records to information "maintained by an agency," which this challenged information was not. Moreover, even if LinkedIn knowingly obtained this information from a motor vehicle record, it would have done so for the permitted purpose of helping the DMV advertise its services.

Plaintiff's CIPA claim under Section 631 fares no better. Plaintiff alleges that LinkedIn violated the second and third clauses of the statute, because LinkedIn willfully intercepted Plaintiff's communications with the DMV and read, attempted to read, or learned their contents (clause two) and used their contents (clause three). The claim fails at the outset because, as a vendor of advertising services that received information for the DMV's benefit, LinkedIn is a party to the communication that has no liability. Plaintiff also failed to make any factually-supported allegation or, in some cases any allegation at all, of several elements of her clause-two claim. Plaintiff did not sufficiently allege that LinkedIn read or attempted to read these alleged DMV communications, that it intercepted them "in transit," or that LinkedIn acted willfully. Plaintiff's clause-three claim also fails because it rests on the flawed clause-two claim and Plaintiff's allegations of use are conclusory and premised on generalities about LinkedIn's business.

For all these reasons, the Complaint is legally baseless. LinkedIn has no liability for Plaintiff's alleged injuries and her claims should be dismissed.

## II. Background

### A. The Parties

LinkedIn is a Delaware corporation headquartered in Sunnyvale, California. The company has created "the world's largest professional network on the internet," which provides a valuable "tool to help users 'find the right job or internship, connect and strengthen professional relationships, and learn the skills [they] need to succeed in [their] career.'" (Compl. ¶ 20.)

Plaintiff Jacqueline Jackson resides in California and claims to have been a registered LinkedIn member for at least ten years. (Compl. ¶ 6.) Plaintiff alleges that she "regularly accesses LinkedIn, approximately once or twice a week" and that "[s]ince approximately 2009, she has had

a disability placard issued to her by the California DMV," which she renewed online in 2023 through the DMV's website. (*Id.*)

**B. LinkedIn's Insight Tag**

LinkedIn enables advertisers to run advertising campaigns through its Marketing Solutions services. (Compl. ¶¶ 21, 34.) Using these services, advertisers can target their advertisements to particular audiences based on certain audience characteristics. (*Id.* ¶ 21.) LinkedIn's Insight Tag is a piece of JavaScript code that advertisers can install on their websites to enable features like campaign reporting and website targeting to facilitate their advertising and marketing campaigns through LinkedIn. (*Id.* ¶¶ 27-28; *see also* Declaration of Aarti Reddy Supp. Def. LinkedIn Corp.'s Mot. Dismiss Pl.'s Class Action Compl. ("Reddy Decl."), Ex. C, cited and quoted in Plaintiff's Complaint and explaining how advertisers install the Insight Tag.)

After an advertiser installs the Insight Tag on its website and a LinkedIn member visits that website, the member's browser sends certain information about that visit to LinkedIn. (Compl. ¶¶ 29-32.) Some of that information is then allegedly sent to LinkedIn's Marketing Solutions advertising systems, where it is characterized or categorized to enable advertisers to optimize their advertising campaigns, facilitate advertising retargeting, or learn more about their audiences. (*Id.* ¶¶ 27-29, 34.) By helping advertisers analyze their website visitor information, LinkedIn enables advertisers to target their advertisements to the most receptive LinkedIn members. (*Id.* ¶¶ 35-36.) Notably, while Plaintiff contends that LinkedIn "collect[s]," "characterizes," and "categorizes" data to assist "[m]arketers" in "target[ing] potential customers on LinkedIn" (*id.* ¶¶ 34-36), nowhere does she allege that LinkedIn uses any such data for its own independent purposes.

Before advertising with LinkedIn, an advertiser must agree to the LinkedIn Ads Agreement—the primary contract governing LinkedIn's relationship with its advertisers. (Decl. Edward Castaño Supp. Def. LinkedIn Corp.'s Mot. Dismiss Pl.'s Class Action Compl. ("Castaño Decl.") ¶ 3).[1] The Ads Agreement explicitly warns advertisers not to send personal or sensitive

[1] The Court is permitted to consider matters outside the Complaint in connection with LinkedIn's argument under Federal Rule 12(b)(7) and Rule 19. "In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings." *White v. Univ. of Cal.*, 2012 WL 12335354, at *5 (N.D. Cal. Oct. 9, 2012), *aff'd*, 765 F.3d 1010 (9th Cir. 2014).

information to LinkedIn via the Insight Tag and that advertisers will have to indemnify LinkedIn if their breach of that provision causes LinkedIn to incur liability or expenses in connection with a third-party lawsuit.

> You will [] not transfer to LinkedIn any data that you know or reasonably should know . . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or identifiable individuals.
>
> [Y]ou agree to indemnify LinkedIn and hold LinkedIn harmless from any damages, losses and costs (including, reasonable attorneys' fees) related to third party claims or proceedings, arising out of or related to your . . . breach of this Ads Agreement.

(Castaño Decl., Ex. B (the "Ads Agreement") at §§ 5, 7.)[2]

### C. The DMV's Use of the LinkedIn Insight Tag

Plaintiff alleges that, at some point prior to 2024, the DMV installed the LinkedIn Insight Tag on various unspecified pages of its website. (*See* Compl. ¶¶ 6, 40-41, 73, 108.) Plaintiff further alleges that as a LinkedIn member browses the DMV's website, the Insight Tag on its pages sends various information to LinkedIn, including the specific URLs visited and a cookie identifier for the member. (*Id.* ¶¶ 44-45, 56.) Some of these URLs allegedly may reveal specific search terms entered by the member, and additional information, including the member's email address. (*Id.*) According to Plaintiff, the DMV installed the Insight Tag on pages through which members apply for, renew, or check the status of their disability placards. (*See id.* ¶¶ 40, 49-54, 57.)

Plaintiff contends that, while renewing her disability placard in 2023, her activity on the DMV webpages was transmitted to LinkedIn via the Insight Tag, and that at the time, she was unaware that the DMV had installed the Insight Tag on its website. (*Id.* ¶¶ 6-7.) Plaintiff does not identify any specific information she purportedly transmitted to the DMV, nor does she contend that she received targeted advertising from either the DMV or LinkedIn or that LinkedIn used ***her*** data in any way. Instead, she merely alleges that she "first discovered" the DMV's use of

[2] The DMV has been bound by these obligations since it first began serving advertisements through LinkedIn. *See* Castaño Decl. ¶ 3; *see also* Castaño Decl. Ex. A at § 6 ("you agree to indemnify LinkedIn and our affiliates . . . and hold LinkedIn and our affiliates harmless from any damages, losses and costs . . . related to third party claims or proceedings, arising out of or related to your Ads . . . and breach of this Ads Agreement"; *id.* at § 8 ("you agree not to transfer to LinkedIn or its affiliates any Personal Data").

LinkedIn's Insight Tag in January 2024, under unspecified circumstances. (*Id.* ¶ 7.)

## III. ARGUMENT

Plaintiff brings two causes of action on behalf of herself and a class of all LinkedIn members who visited the DMV website to apply for, renew, or check the status of a disability placard. (Compl. ¶ 81.) To begin, both claims fail under Rule 12(b)(7), because Plaintiff has failed to join a required party—the DMV. Even if Plaintiff could cure this defect (she cannot), the action should still be dismissed because Plaintiff also fails to state a claim under Rule 12(b)(6).

### A. Rule 12(b)(7) – Plaintiff Failed to Join a Required Party In This Action.

In determining whether a complaint must be dismissed for failure to join a required party, the Court conducts a three-step analysis. First, it considers if the third party is "required" under Rule 19(a)(1). If so, the court asks if the party can be joined. If joinder is impossible, the court decides whether the case can fairly proceed without that party or must be dismissed. Fed. R. Civ. P. 19(b). Although LinkedIn is the sole defendant here, the gravamen of Plaintiff's claims is that the DMV, an absent party, improperly set up its webpage such that it shared Plaintiff's personal information with LinkedIn without her consent. Dismissal is necessary because the DMV is a required party that cannot be joined, and this case cannot fairly proceed without it.

#### 1. The DMV is a Required Party.

Rule 19(a)(1) sets forth "three different ways" a court may find a party is required: (A) in that person's absence, "the court cannot accord complete relief among existing parties"; or (B)(i) "he has an interest in the action and resolving the action in his absence may as a practical matter impair or impede his ability to protect that interest"; or (B)(ii) "he has an interest in the action and resolving the action in his absence may leave an existing party subject to inconsistent obligations because of that interest."[3] *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). The DMV is required here under all three tests.

---

[3] Prior to 2007, courts used the terms "necessary" and "indispensable" party to refer to the respective steps of the Rule 19 analysis. Although Rule 19 was amended in 2007, these changes "were stylistic only" and courts routinely still use the prior terminology. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 856 (2008). LinkedIn uses the current terminology (required party), unless relying on a decision that references the prior terminology.

**a. The Court cannot award "complete" relief without the DMV.**

A party is required if, in its absence, the court cannot grant complete relief to the existing parties. *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 780 (9th Cir. 2005). Complete relief is distinct from relief that is "partial or hollow" and is intended to "preclud[e] multiple lawsuits on the same cause of action." *Id.* Importantly, courts look beyond whatever specific relief the plaintiff requests and consider whether the absent party's joinder is required to fully address the plaintiff's alleged injury. *Pit River Home & Argic. Coop. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994) (finding absent party was required because "even if the [plaintiff] obtained its requested relief [against the government], it would not have complete relief, since judgment" would not bind absent party); *Iconlab Inc. v. Bausch Health Companies Inc.*, 2019 WL 12521292, at *3-5 (C.D. Cal. May 15, 2019)(finding court could only provide "hollow" relief on plaintiff's claim against defendant for illegally using plaintiff's technology in absence of parties including those that sold plaintiff's technology to defendant), *aff'd*, 828 F. App'x 363, 366 (9th Cir. 2020); *see also Paiute-Shoshone Indians of Bishop Comm. of the Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 997 (9th Cir. 2011) (finding relief sought by plaintiff would not be complete absent joinder of United States).

Here, Plaintiff's purported injuries cannot be fully remedied unless the DMV is joined. Plaintiff seeks redress for "violations of [her and class members'] right to privacy [and] loss of value in their personally-identifiable information" based on the disclosure at issue here. (Compl. ¶ 112, Prayer for Relief (d).) Although Plaintiff seeks injunctive relief to prevent LinkedIn from obtaining this information (Prayer for Relief (c)), that relief would not fully address her purported injury. As discussed above, documents quoted and relied upon in the Complaint establish that the DMV, as the advertiser, is directly responsible for her injury. The DMV installed the Insight Tag on the challenged webpages. (Reddy Decl., Ex. C.)[4] Thus, absent joinder, the DMV would not be bound by any judgment here, and it would remain free to share her information with any other analytics provider to facilitate its advertising and marketing efforts. The DMV's joinder is therefore necessary to prevent Plaintiff's alleged injuries from recurring.

---

[4] The Court may consider this document outside the pleadings under Rule 19 (*see supra* note 1) or under the incorporation by reference doctrine (*see* Def. LinkedIn Corp.'s Req. Judicial Notice Supp. LinkedIn's Mot. Dismiss Pl.'s Class Action Compl. ("RJN"), concurrently filed).

The highly analogous decision of the Massachusetts District Court in *Downing v. Globe Direct LLC* demonstrates that this case cannot proceed without the DMV. 806 F. Supp. 2d 461, 470 (D. Mass. 2011), *aff'd on other grounds*, 682 F.3d 18, 19 (1st Cir. 2012).[5] There, the Massachusetts Registry of Motor Vehicles (RMV) hired Globe Direct to mail registration renewal notices along with third-party advertisements on behalf of the RMV and provided Globe Direct with the names and addresses of vehicle owners to facilitate that mailing. *Id.* at 464. Plaintiff, who received a mailing, sued Globe Direct under the DPPA alleging that he had not consented to its use of his motor vehicle record information. The court observed that failure to join the state could prejudice the plaintiff, as "Massachusetts [could] sprout[] a new RMV renewal-registration contract with a different company much like a Hydra would grow new heads." *Id.* at 468–69.

The same is true here. Indeed, the DMV has already allegedly sought web pixel services from at least one other company for advertising purposes, leading to another litigation regarding whether the DMV's actions violate the DPPA and CIPA. *See Gershzon v. Meta Platforms Inc.*, 2023 WL 5420234, at *1 (N.D. Cal. Aug. 22, 2023) ("*Gerhszon*"). Given that neither *Gershzon* nor the present case can bind the DMV, neither case could afford Plaintiff the relief she seeks nor prevent the proliferation of further DPPA litigation based on the DMV's actions. Just as the court held in *Downing*, the DMV is a required party under Rule 19(a)(1)(A).

As an additional matter, the Court also could not afford complete relief to LinkedIn in the DMV's absence. If the Court were to find LinkedIn liable here, LinkedIn may be contractually entitled to indemnification from the DMV pursuant to its agreement with the DMV and "[i]t would be profoundly unfair if [Defendant] could not seek indemnification from the [absent party]." *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) (finding absent party was required under Rule 19(a) because in the event defendant was found liable, it "will not be able to seek indemnification from the Secretary"); Castaño Decl. Ex. B at § 7. The Court should find the DMV to be a required party under Rule 19(a) for this independent reason.

[5] In its order affirming dismissal pursuant to Rule 12(c), the First Circuit did not address the district court's analysis of the indispensable party issue and instead "short-circuit[ed]" that analysis and affirmed on the basis that there was no DPPA violation. *Downing*, 682 F.3d at 22.

**b. Proceeding without the DMV would impair the DMV's interests.**

Pursuant to Rule 19(a)(1)(B)(i), a party is necessary where it "claims an interest relating to the subject of the action"[6] and its "absence may as a practical matter impair or impede [its] ability to protect the interest." That interest must "be more than a financial stake, and more than speculation about a future event." *Iconlab Inc.*, 2019 WL 12521292, at *4; *see Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) ("[T]he finding that a party is necessary to the action is predicated only on that party having a *claim* to an interest."). In conducting this analysis, "[t]he Court has a duty to protect absent persons who will be affected by [its] decree." *Iconlab Inc.*, 2019 WL 12521292, at *3 (internal quotations omitted). Litigating this suit in the DMV's absence would impair the DMV's interests in two independent respects.

***First***, this lawsuit directly implicates a contractual agreement in which the DMV has an interest. As discussed above, the DMV's use of the Insight Tag is governed by the Ads Agreement, which specifically prohibits the DMV from sharing personal or sensitive data with LinkedIn. *Supra* Section II.B. The DMV explicitly agreed it would not "transfer to LinkedIn any data that [it] know[s] or reasonably should know . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial or other Sensitive Data about identified or identifiable individuals." (Castaño Decl. Ex. B at § 5.) This lawsuit accuses the DMV of sharing such information with LinkedIn, and therefore, could result in a finding that the DMV has breached the Ads Agreement. In these circumstances, courts routinely find the absent party's interests are impaired. *E.g., Iconlab, Inc.*, 828 F. App'x at 366 (finding absent parties required where granting plaintiff declaratory relief could invalidate contracts involving absent parties or subject absent

[6] LinkedIn acknowledges that in assessing this factor, courts in the Ninth Circuit have, at times, required that the absent party "come forward and affirmatively claim an interest in the subject of the litigation." *Cal. v. Azuma Corp.*, 2023 WL 5835794, at *6 (E.D. Cal. Sept. 8, 2023) (collecting authorities and rejecting this interpretation). LinkedIn respectfully submits that the cases adopting this requirement are unpersuasive and derived from misguided reliance on a single statement in *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999), in which the Ninth Circuit merely concluded that the district court "did not err" by finding the absent party unnecessary where it "was aware of this action and chose not to claim an interest." *Bowen*, 172 F.3d at 689. This is better understood to mean that a district court retains discretion to consider whether the absent party has sought to assert its interest (such as by attempting to intervene) when determining if that party has a claim to a legally protected interest in the case. As in *Azuma*, this Court should decline to follow the cases misinterpreting *Bowen*.

parties to "inconsistent obligations"); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (holding absent party was required where "the instant litigation threatens to impair [its] contractual interests, and thus, its fundamental economic relationship with" existing party).

Again, *Downing* makes the application of Rule 19 to this case crystal clear. As here, *Downing* involved information that the non-party RMV shared with the defendant pursuant to a contract. Relying on Ninth Circuit authority, the *Downing* court found the state had an interest in the case, as "any decision by this court would effectively invalidate" the contract or make it "less valuable" to the state. 806 F. Supp. 2d at 467 (citing *reyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002).) The same reasoning applies here.

Moreover, were the Court to rule that the DMV's use of the Insight Tag has caused LinkedIn to violate the DPPA or CIPA, the DMV's breach of the Ads Agreement would obligate the DMV to indemnify LinkedIn: "[Y]ou agree to indemnify LinkedIn and hold LinkedIn harmless from any damages, losses and costs . . . related to third party claims or proceedings, arising out of or related to your . . . breach of this Ads Agreement." (Castaño Decl. Ex. B at § 7.) Put simply, finding LinkedIn liable here may directly impact the DMV's rights and obligations.[7] While this alone may not make the DMV a required party here, it illustrates the absurdity of proceeding without it.

***Second***, Plaintiff seeks a judgment that may impair the DMV's ability to perform its key functions, including procuring advertising services. *Downing,* 806 F. Supp. 2d at 467 n.40 (finding "a judgment rendered in [the state's] absence would impair its 'sovereign capacity to negotiate contracts,' [and] undermine the Commonwealth's ability govern effectively and efficiently") (quoting *Dawavendewa*, 276 F.3d at 1155). "A public entity has an interest in a lawsuit that could result in the invalidation or modification of one of its ordinances, rules, regulations, or practices." *E.E.O.C*, 610 F.3d at 1082 (finding Secretary of the Interior had interest "in an action that would require him to modify the terms of leases he approves for entities conducting business on the Navajo

[7] While the DMV would, in theory, retain the right to contest its breach in a later proceeding, the imposition of liability on LinkedIn here due to the content of the DMV's URLs would effectively make it impossible for the DMV to deny its breach. This Court would already have ruled that the DMV transmitted Plaintiff's personal information without her consent.

reservation"); *see also Dawavendewa*, 276 F.3d at 1157 (finding Navajo Nation was a required party because it had an interest in "its sovereign capacity to negotiate contracts and, in general, to govern the Navajo reservation") (collecting cases finding same) (emphasis added); *Friends of Mat-Su v. Usibelli Coal Mine, Inc.*, 2012 WL 12871623, at *5 (D. Alaska Sept. 13, 2012) (finding state had interest where requested relief would invalidate permits "without the state having had an opportunity to defend its actions or protect its interests in the permits").[8]

**c. The DMV's absence puts LinkedIn in an untenable position.**

Finally, if the Court rules in Plaintiff's favor, LinkedIn could be saddled with an injunction with which it cannot guarantee compliance. As discussed in more depth below, the DMV controls the URLs of its website and also whether to install (now or in future years) LinkedIn's publicly-available Insight Tag script on any particular webpage. Thus, if the DMV is not joined, LinkedIn could be left "between the proverbial rock and a hard place," *Dawavendewa*, 276 F.3d 1156, where it has been ordered to not receive information that it cannot prevent the DMV's Insight Tag from sending to it. This too establishes that the DMV is a required party.

**2. The DMV Cannot be Joined.**

The DMV cannot be joined because the Eleventh Amendment prohibits joinder of nonconsenting state agencies in federal court, and there are no relevant exceptions to this immunity. *Hibbs v. Dep't of Hum. Res.*, 273 F.3d 844, 850 (9th Cir. 2001), *aff'd sub nom. Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 723 (2003). Further, as the Court observed in *Downing*, Congress has not abrogated the States' sovereign immunity in private DPPA lawsuits. *Downing,* 806 F. Supp. 2d at 468. Accordingly, this factor is satisfied.

**3. Due to the DMV's Absence, The Court Should Dismiss the Action.**

If joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The rule sets out four considerations for making this determination.

---

[8] Although courts sometimes consider whether an existing party can adequately represent an absent party's interest, neither Plaintiff nor LinkedIn has any incentive to protect the DMV's interests. *Salt River Project Agr. Imp. & Power Dist.,* 672 F.3d at 1180 ("[i]mpairment may be minimized" where an existing party can adequately represent absent party's interests).

***First***, courts consider "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." *Id.* at 19(b)(2). This analysis "largely duplicates the consideration that made a party necessary under Rule 19(a)." *reyhound Racing, Inc.*, 305 F.3d at 1024–25. As set forth above, this factor is satisfied.

***Second***, courts consider how prejudice to existing or absent parties could be lessened or avoided by "protective provisions in the judgment," "shaping the relief," or "other measures." Fed. R. Civ. P. 19(b)(2)(A) & (B). Because the DMV is not bound by any judgment here, the Court's ability to shape relief that would fully redress Plaintiff's claimed injury is limited. *Downing*, 806 F. Supp. 2d at 469-70. As discussed, the Court also has no clear means to protect either the DMV's contractual interests or to protect LinkedIn from involuntary non-compliance with an injunction.

***Third,*** courts consider "whether a judgment rendered in the person's absence would be adequate." Fed. R. Civ. P. 19(b)(3). But "[n]o partial relief is adequate." *Dawavendewa*, 276 F.3d at 1162. As discussed, the Court cannot award Plaintiff complete relief in the DMV's absence.

***Fourth***, courts consider "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P 19(b)(4). As the court observed in *Downing*, this factor also weighs in favor of dismissal, because the DPPA provides other means of addressing Plaintiff's alleged injury. Specifically, the statute empowers the attorney general to seek the DMV's compliance with the DPPA on the public's behalf. *Downing,* 806 F. Supp. 2d 469; *see also Dawavendewa*, 276 F.3d at 1162 (stating plaintiff has "viable alternative forum in which to seek redress" because the E.E.O.C. could bring a suit to address his injury).

Even without this alternative remedy, a required party's sovereign immunity is "a compelling factor supporting dismissal of a claim under Rule 19(b)." *Webb v. City of Tempe*, 2017 WL 1233827, at *5 (D. Ariz. Apr. 4, 2017) ("While dismissing a claim when the plaintiff has no alternative remedy may be a harsh result, courts do so when a necessary party cannot be joined because of sovereign immunity.") *aff'd*, 703 F. App'x 539, 540 (9th Cir. 2017). This is because "[s]ociety has 'consciously opted' . . . to shield states from suit without congressional or state consent." *Webb*, 2017 WL 1233827, at *5. Numerous decisions are in accord. *Republic of Philippines*, 553 U.S. at 872 ("Dismissal under Rule 19(b) will mean, in some instances, that

plaintiffs will be left without a forum for definitive resolution of their claims. But that result is contemplated[.]")); *see also reyhound Racing, Inc.*, 305 F.3d at 1025 (similar).

For all of these reasons, each of the Rule 19(b) factors compels dismissal.

### B. Rule 12(b)(6) – Plaintiff Fails to State a Claim under the DPPA.

18 U.S.C. Section 2724 provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the DPPA] shall be liable to the individual to whom the information pertains." Thus, violation of the DPPA requires that a defendant: (1) with the requisite *mens rea*, took some affirmative action to obtain, disclose, or use personal information, (2) from a record maintained by the DMV pertaining to a driver's operating permit, title, registration, or identification card, (3) for an impermissible purpose. *See Senne v. Village of Palatine, Illinois*, 695 F.3d 597, 603 (7th Cir. 2012); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019). Plaintiff fails to plausibly allege ***any*** of these elements. Plaintiff does not allege facts showing that LinkedIn "knowingly" received this alleged personal information, her allegations make clear that the information LinkedIn allegedly received did ***not*** come from a "motor vehicle record," and she fails to adequately allege an impermissible purpose.

#### 1. Plaintiff Fails to Plausibly Allege that LinkedIn *Knowingly* Obtained or Used Her Personal Information.

Courts have consistently held that, to adequately plead a knowing DPPA violation, a plaintiff must allege that the defendant voluntarily took an action it was on notice would result in the obtainment, disclosure, or use of a plaintiff's personal information. For example, *Senne* held that a police officer placing a parking ticket displaying the plaintiff's personal information on his car dashboard took "[v]oluntary action . . . sufficient to satisfy the mens rea element of the DPPA." 695 F.3d at 603. Similarly, an insurance company designing its publicly accessible online quote tool to auto-populate driver's license numbers for anyone entering "a bare minimum of publicly available information about [an] individual" knowingly disclosed personal information. *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *1 (E.D.N.Y. July 21, 2023). Courts have also found a knowing violation where security alerts from a government agency provide notice of the potential disclosure of personal information. *See In re USAA Data Sec. Litig.*, 621 F. Supp.

3d 454, 468 (S.D.N.Y. 2022) (New York State Department of Financial Services warned that insurance quote portals created a cybersecurity risk); *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 68 (S.D.N.Y. 2022) (same).

While it is not necessary that the defendant have notice its actions are illegal, the DPPA does require knowing obtainment, disclosure, or use of the alleged personal information. 18 U.S.C. Section 2724(a). Accordingly, mere passive failure to prevent a third party (like the DMV) from violating the DPPA is insufficient to meet the statute's knowledge requirement. In *Enslin v. The Coca-Cola Company*, the defendant's failure to secure laptops that contained personal information from employees' motor vehicle records was insufficient to trigger DPPA liability. 136 F. Supp. 3d 654, 669-72 (E.D. Pa. 2015). As the court explained, "[a] 'knowing disclosure' of [personal information] requires the defendant to take some 'voluntary action' to disclose the information." *Id.* at 670. Likewise, the court in *Allen v. Vertafore, Inc.* held that the defendant's storage of personal information on "unsecured external servers," that permitted third parties to gain unauthorized access, did not amount to knowing disclosure. 28 F.4th 613, 617 (5th Cir. 2022). The case law uniformly requires that a defendant take a voluntary action that it is on notice ***would*** result in it obtaining, disclosing, or using the type of alleged personal information at issue here.

Plaintiff's Complaint cannot clear this bar and does not plausibly allege that LinkedIn "knowingly" obtained her information. She alleges only that LinkedIn engages in the anodyne and commonplace practice of using web pixels and propounds only conclusory allegations that LinkedIn "knows all the information and communications exchanged between users and the DMV" (Compl. ¶ 43; *see also id.* ¶ 58 (alleging, without more, that "personal information was obtained 'knowingly' under the DPPA because LinkedIn knows that [personal information] exchanged between users and the DMV [is] transmitted to LinkedIn[.]").) The facts pled, however, belie these claims. They suggest, at most, LinkedIn's passive failure to prevent the DMV from "disclosing" the allegedly personal information that LinkedIn contractually prohibited the DMV from sending.

The Complaint also makes clear that it is ***the DMV's chosen URLs*** that contain the allegedly personal information. Plaintiff alleges that LinkedIn receives that information from "the various URLs that users visit within the DMV website," which allegedly "reveal information,

including personal and disability information." (*See, e.g.*, Compl. ¶ 44.) The Complaint marks the "path" data element in each screenshot purporting to show the URLs containing private information and explains that "LinkedIn obtains URLs" containing the challenged data in each instance. (*Id.* ¶ 52; *see also id.* ¶¶ 45-56.) The Complaint concludes this discussion stating, without explanation or factual basis, that LinkedIn "permits the DMV to transmit this information." (*Id.* ¶ 57.)

This is not enough to hold LinkedIn liable for third-party conduct. It is self-evident that ***the DMV*** set up its own webpages and chose how to configure its URLs. The Complaint does not and cannot allege that ***LinkedIn*** controlled the allegedly privacy-violating URLs the DMV chose to use on its webpage. Accordingly, LinkedIn took no voluntary action with knowledge that it would receive the allegedly impermissible information at issue here.

The Complaint also contains ***no factual allegations*** supporting the claim that LinkedIn was aware that the DMV was transmitting this allegedly personal information, let alone that LinkedIn used such information. Plaintiff never alleges, for example, that she received any form of targeted advertising related to her disability status, much less advertising that she has a basis to connect to LinkedIn or her visits to the DMV's website. *See Keogh v. Meta Platforms, Inc.*, 2023 WL 9657924, at *2 (D.S.C. Feb. 14, 2023) (expressing skepticism where the plaintiff did not "describe or even allege that he received any advertising from Meta concerning his DMV visit"). Instead, Plaintiff falls back on generalities—*e.g.*, that LinkedIn's Insight Tag is capable of transmitting information that is generally used for advertising services. (*E.g.*, Compl. ¶¶ 23, 34.) With no specific facts pled, Plaintiff's conclusory claims that LinkedIn knowingly obtained and used impermissible information from the DMV website falls well short of *Twombly*'s plausibility pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[9]

Finally, Plaintiff's position that LinkedIn's mere alleged receipt of this information violates the DPPA would not only run afoul of authorities on the knowledge requirement, but would read the word "obtain" out of the statute. Unlike mere receipt, obtainment requires an affirmative act to

[9] Indeed, judicially-noticeable public documents show that LinkedIn ***affirmatively prohibits*** its advertisers from transmitting this kind of information through the Insight Tag. *See* Reddy Decl. Ex. B at § 5 ("You will also not transfer to LinkedIn any data that you know or reasonably should know . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or identifiable individuals").

bring about receipt. BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "obtain" as "[t]o bring into one's own possession; to procure, esp. through effort"). Absent facts regarding LinkedIn's volition, Plaintiff's generalized allegations do not state a claim for violation of the DPPA.

**2. Plaintiff Fails to Allege that the Alleged Personal Information Was from a Motor Vehicle Record.**

To violate the DPPA, a defendant must obtain protected information from a motor vehicle record. The statute defines "motor vehicle record" as a "record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). The portion of the DMV website from which Plaintiff alleges LinkedIn obtained protected information is not such a record.

First, the challenged DMV webpages (pages used to apply for, renew, or check the status of a disability placard, which define class membership) (Compl. ¶ 81), are not motor vehicle records under the plain text of the statute's definition. Plaintiff never alleges how these webpages qualify as a motor vehicle record under the statute and makes only the unadorned pronouncement that "[a] disabled parking placard 'pertains to a motor vehicle operator's permit.'" (*Id.* ¶ 17.) This legal conclusion is meaningless, as it is supported by no factual allegations. It is also demonstrably false, as disability placards relate solely to ***parking privileges***, not an operator's permit.

The Complaint confirms that disability placard information appears on the DMV website page titled "Disabled Person ***Parking*** Placards and Plates." (*Id.* ¶ 49 (text and screenshot) (emphasis added).) In the "Frequently Asked Questions" section of the webpage bearing that title, the DMV answers, "What are the privileges of a DP placard or DP License Plates?" with only a list of places a driver with a disability placard "may park" and a single reference to a service station privilege. (Reddy Decl. Ex. D.) The page mentions no rights or privileges pertaining to a motor vehicle operator's permit. Additionally, the DMV publicly states that disability placards may be used when the recipient is only a passenger, further confirming that they do not pertain to an "operator's permit." (*Id.* ("Placards . . . [are] a good option for a caregiver who transports a disabled person"), Reddy Decl. Ex. E ("You do not have to own or drive the vehicle to use the placard").)

The South Carolina District Court's decision in *Keogh v. Meta Platforms* is directly relevant

on this point. There, the plaintiff alleged a DPPA violation based on his visit to the South Carolina DMV's webpage due to the operation of Meta/Facebook web pixels on that site. *Keogh*, 2023 WL 9657924, at *1-2. The Court ruled, for several reasons, that Keogh had no viable DPPA claim. The court explained, "even if the [DMV] website was a 'record,' it is not a 'motor vehicle' record under the statutory definition, which is limited to records pertaining to [the enumerated list above]." *Id.* at *5. The *Keogh* court found the plaintiff's argument that "every single webpage on the South Carolina Department of Motor Vehicles website has some kind of a 'connection with driving'" to be "plainly untrue." *Id.* This Court should reach the same conclusion as to the disability placard pages at issue here. They simply do not pertain to a motor vehicle operator's permit.

The challenged DMV webpages here are also not motor vehicle records because, as the *Keogh* court held by relying on Ninth Circuit authority, under the DPPA, the DMV website is not a DPPA "record" at all. *Id.* ("To start, the SCDMV website is not a 'record' under the DPPA."). In 2019, the Ninth Circuit issued its seminal DPPA decision in *Andrews v. Sirius XM Radio Inc.*, holding that obtaining information from a driver's license did not violate the DPPA and that "Congress intended the DPPA to reflect the Privacy Act of 1974 . . . which defines a 'record' as 'information about an individual *that is maintained by an agency*.'" 932 F.3d at 1260 (emphasis original). Here, LinkedIn is alleged to have received contemporaneous information from DMV webpages Plaintiff visited about what Plaintiff typed into those pages, rather than any information from a record "maintained by" the DMV. (*E.g.*, Compl. ¶ 111 ("LinkedIn . . . learn[ed] the contents of Plaintiff's and Class Members' communications ***while*** they were using a web browser or mobile application . . . .") (emphasis added).) Plaintiff's interactions with the DMV online are thus analogous to a trip to a physical DMV office. If a third party overheard her queries about a disability placard at the counter, that information would plainly not be "from a motor vehicle record." Here too, Plaintiff cannot meet the binding standard set forth in *Andrews*. As *Keogh* correctly held, contemporaneous information about webpages visited—an automatically generated byproduct of Plaintiff's browsing—simply does not come from records "maintained by" the DMV. *Keogh*, 2023 WL 9657924, at *5 (citing *Andrews*, 932 F. 3d at 1260).

Finding that the DPPA reaches the alleged conduct here would also be at odds with the

statute's purpose. According to the Ninth Circuit, "[a]s characterized by the Supreme Court, the purpose of the DPPA is to 'regulate[ ] the disclosure and resale of personal information contained in the records of state DMVs.'" *Andrews*, 932 F.3d at 1258. Here, Plaintiff alleges only that the DMV disclosed information about who visited its website, rather than any information at all from its repository of driver data records. Therefore, even if some overly literal reading of the DPPA could arguably encompass visits to the DMV website, this Court should "not adopt a literal interpretation [that] would thwart the purpose of the overall statutory scheme or lead to an absurd result." *Id.* at 1260 (internal quotes and citations omitted).

#### 3. The Challenged Conduct Here Falls Within the "Permitted Purposes" Exceptions, Which Precludes DPPA Liability.

18 U.S.C. Section 2721(b)(1) permits obtaining personal information where such conduct assists "any government agency . . . in carrying out its functions." Despite Plaintiff's careful wordsmithing, *see, e.g.*, Compl. ¶ 27, LinkedIn's webpage explaining the Insight Tag—quoted and relied upon in the Complaint—clarifies that ***website owners***, not LinkedIn, install it. (Reddy Decl. Ex. C, cited at Compl. ¶ 27 nn.17-18.) As a government agency organized to serve a public function, common sense dictates that the DMV installed the Insight Tag for a legitimate government purpose, such as understanding the visitors to its website and improving its advertising of its services. (Compl. ¶ 27.) Plaintiff alleges no contrary motivation.

The Complaint includes generic allegations that data transmitted through the Insight Tag is used to enhance ad targeting, but such handwaving is irrelevant. If the use of personal information is authorized to assist a government agency, the fact that such use may also serve a separate business purpose does not create liability. The holding in *Downing*, in which the First Circuit affirmed the ruling discussed in Section III.A above, is highly instructive. There, the defendant, a contractor for the Massachusetts Registry of Motor Vehicles' registration renewal program, inserted RMV ***advertisements*** in mailings containing registration renewals. *Downing*, 682 F.3d at 19-20. The First Circuit held that the inclusion of advertisements did not trigger liability, because the mailings had the permissible purpose of assisting the agency in carrying out its functions. *Id.* at 23-24. Here too, the permissible purpose of helping the DMV market its services would preclude liability,

despite Plaintiff's other non-specific allegations of marketing use.

#### 4. *Gershzon v. Meta* is Distinguishable and Its Analyses Are Flawed.

Plaintiff's opposition will doubtless rely heavily on *Gershzon v. Meta Platforms Inc.*, which permitted a DPPA claim to proceed past the pleadings. 2023 WL 5420234, at *4-10. However, *Gershzon* is both distinguishable and, in parts, wrongly decided.

First and foremost, the allegations in *Gershzon* related to a different part of the DMV website. There, the plaintiff asserted claims on behalf of "all persons who accessed their MyDMV account on the California DMV website or viewed the status of a pending application to the California DMV by clicking on the 'status checker' link in electronic correspondence from the California DMV." *Id.* at *3. No allegations here either relate to responses to electronic correspondence from the DMV or have anything to do with MyDMV accounts. Indeed, in *Gershzon*, the plaintiff alleged that, when users visited their MyDMV pages, "Meta secretly watche[d] every step of the process, and intercept[ed] any and all communications between users and the DMV for its own purposes and its own use." *Id.* Under the *Andrews* standard concerning information "maintained by the agency," allegedly accessing information in a user's MyDMV records is far more potentially problematic than the alleged conduct here. The *Gershzon* court expressly recognized this, writing: "[H]ere Gershzon alleges that Meta obtained his personal information from the DMV website and that the DMV maintained this information after Gershzon provided it to the DMV through his 'MyDMV' online account." *Id.* at 8. Indeed, this is the basis on which the *Keogh* court distinguished *Gershzon*, writing:

> In *Gershzon*, the plaintiff alleged that he "provided [his personal information] to the DMV through his 'MyDMV' online account," that "the DMV maintained this information," and that "the information [that was sent to Meta] comes 'from a motor vehicle record' because the information 'derives from the DMV database.'" It was only in that context – in which the plaintiff alleged the DMV kept records in its "database" of information with respect to his online account – that the *Gershzon* court concluded that the plaintiff had sufficiently alleged a DPPA violation. There was no claim and certainly no holding in *Gershzon* that a DMV website itself is a "motor vehicle record."

*Keogh*, 2023 WL 9657924, at *5. This crucial factual difference alone renders *Gershzon* largely inapposite. Without allegations concerning the MyDMV database, the claim that Plaintiff's information came from a "motor vehicle record" here is very different from the claim in *Gershzon*.

Second, reading *Gershzon* to treat the allegedly personal information here as coming "from a motor vehicle record" would run afoul of the binding authority in *Andrews*, which rightly limited the reach of the DPPA to cases where the source of the personal information is records maintained by an agency. That bright line is part of why the Ninth Circuit held that a driver's license, which would arguably be the definitive record of "a motor vehicle operator's permit," is still not a "motor vehicle record" under the DPPA. If the information does not come from a record maintained by an agency, the DPPA is not implicated as a matter of law. Here, where the alleged personal information arises not from any record maintained by the DMV, but solely from Plaintiff's visitation of a webpage, no expansion of the DPPA scope set out in *Andrews* is justifiable.

Moreover, LinkedIn respectfully submits that this Court should decline to follow other portions of *Gershzon*. Its ruling that a disability placard pertains to an operator's permit and not just parking rights is counter to common sense and to the DMV's own statements about placards, as discussed above. The *Keogh* court explained, citing *Andrews*, that "the DPPA does not create a right to privacy with respect to every interaction that a citizen may have with the DMV website. … Instead, it provides important protection for specific information in specific types of records, none of which are alleged here." *Keogh*, 2023 WL 9657924, at *6 (internal citation omitted).

Additionally, the Court should not adopt the rationale in *Gershzon* to find that LinkedIn "knowingly" obtained the challenged information here. First, that decision's holding rests on different allegations. *Gershzon*, 2023 WL 5420234, at *2 ("In 2017, Meta quietly modified the Pixel code to transmit additional information automatically[.]"). That decision also rejected a different legal argument than LinkedIn's argument here. *Id.* at *10 (Meta argued that the knowledge requirement "applies to all three elements of the statute" whereas here, LinkedIn only argues that it did not knowingly obtain personal information). Furthermore, the *Gershzon* court did not fully consider the voluntary action requirement discussed in the DPPA cases cited in Section III.B.1 above before reaching its conclusion. There is no such voluntary action here.

Finally, the defendant in *Gershzon* never moved under Rule 12(b)(7), so the court there grappled with none of the required-party defects discussed in Section III(A) above.

### C. Rule 12(b)(6) – Plaintiff Fails to State a Claim under Section 631 of CIPA.

Plaintiff's CIPA claims—which are premised on alleged violations under the statute's second and third clauses—do not meet her pleading burden. (Compl. ¶¶ 105-106.) CIPA's second clause applies to "[a]ny person who . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit…." Cal. Penal Code § 631(a). CIPA's third clause applies to any person "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained in violation of Clause Two. *Id*. Each of these claims fails for multiple reasons.[10]

***First***, both claims are barred by the party exception. As a vendor that provided a tool to assist the DMV with its marketing and advertising efforts, LinkedIn was a party to Plaintiff's alleged communications with the agency, not a third-party eavesdropper. ***Second***, Plaintiff also fails to plausibly allege many of the requisite elements of her claim under CIPA's second clause. Specifically, her Complaint is devoid of factual allegations establishing that (1) LinkedIn "read or attempted to read, or to learn the contents or meaning of" any purported communication; (2) any alleged interception occurred while the communication was "in transit"; and that (3) any such interception was "willful." Each of these failures is dispositive. ***Third***, Plaintiff's claim under CIPA's third clause fails because it is entirely derivative of her deficient claim under CIPA's second clause. Additionally, her claim cannot stand because she has not alleged that LinkedIn "use[d] or attempted to use" information obtained from the DMV. Cal. Penal Code § 631(a).

#### 1. LinkedIn Is Not Liable Under CIPA Because It Was a Party to The Alleged Communications, Not a Third-Party Eavesdropper.

To begin, both of Plaintiff's CIPA claims fail under CIPA's party exception. It is well established that CIPA applies "only to eavesdropping by a third-party and not to recording by a

[10] To the extent the Court determines it is ambiguous whether the statute applies to LinkedIn's conduct, it should construe that ambiguity in its favor under the Rule of Lenity, which provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008) (citation omitted); *see also Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013) (stating that rule of lenity applies even where criminal statutes raised in civil cases, and may apply to Federal Wiretap Act).

participant to a conversation." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)). Plaintiff's bare pleading fails to allege that LinkedIn acted as anything more than an extension of and service provider to the DMV, which was a party to the alleged communications. The leading case on this topic, *Graham v. Noom*, analyzed a similar theory and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . .and allow[ed] the client to analyze their data" but had not "intercepted and used the data itself." 533 F. Supp. 3d 832, 832 (N.D. Cal. 2021). Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows ***Noom*** to record and analyze ***its own data***." *Id.* (emphases added). Numerous courts have endorsed this reasoning. *See, e.g.*, *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (applying the party exception to a vendor).[11]

The same analysis warrants dismissal here. Plaintiff has not pled that LinkedIn acted as anything more than an extension of the DMV. To the contrary, she alleges only that LinkedIn's Insight Tag is "[a] simple code snippet added to [a] website [that] can help you optimize your campaigns, retarget your website visitors, [] learn more about your audiences," "'enable[s] in-depth campaign reporting' and can 'unlock valuable insights about your website visitors.'" (Compl. ¶ 27; *see also* Compl. ¶¶ 21, 34, 36, 37 (stating LinkedIn "feeds" this data into its "Marketing Solutions services" to enable its advertising customers to "'[b]uild strategic campaigns' targeting specific users" and "reach their target audience").) Thus, her pleading only establishes that LinkedIn collected and maintained information received at the direction of the DMV, to enable advertising requested ***by*** the DMV. Just as in *Graham*, *Williams*, and other cases, Plaintiff has failed to allege

[11] *See also Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) (third-party software provider was covered by party exception because software functioned more like a tape recorder, given it was not alleged to have harvested data for its own use); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, 3 (N.D. Cal. April 15, 2021) (vendor providing "Event Triggered Recorder" software was not a third-party eavesdropper since it "allows its clients to monitor their website traffic"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (similar); *see also Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (vendor not a third-party eavesdropper in action involving chat bot technology because it acted "as an extension of the company"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal . 2023) (similar).

that LinkedIn's Insight Tag was anything more than a mere "tool that [defendant] used to record its communications with plaintiff." *Williams*, 2022 WL 17869275, at *3.

For many courts, the analysis begins and ends with *Graham*. Plaintiff may, however, invoke another line of decisions holding that an analytics provider is not an extension of a defendant if it has "the capability to use" the communications for any other purpose than supporting the website operator. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Even if the Court adopted the *Javier* framework, Plaintiff's claims would still fail because she has not alleged specific facts showing that LinkedIn is capable of using information received from the DMV for its own purposes. Although Plaintiff alleges that LinkedIn offers services that allow "marketers" such as the DMV to "'identify, characterize, and categorize users' for targeted advertising purposes" (Compl. ¶ 34), nowhere does she specifically allege that LinkedIn was ***capable*** of using data from the DMV for its own independent marketing or advertising purposes. While Plaintiff offers the generic contention that LinkedIn "monetizes the collected data through the sale of adds [sic]" and enables unspecified advertisers to "target users with relevant content. . . harvested from the driving records maintained by the DMV," she pleads zero specific factual assertions about the DMV or DMV-related ads to make these allegations remotely plausible. (*Id.* ¶¶ 35, 57). Indeed, Courts have found that far more detailed allegations still do not plausibly aver the necessary "capacity" under *Javier*'s framework. *See e.g. Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023) (allegations that defendant "analyz[ed] data and provid[ed] customer data metrics related to each conversation" and "accesse[d] and analyze[d]" those "conversations" were not sufficient to show capability of use); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (finding plaintiff's allegation that chat vendor had "capability to use its record of [w]ebsite users' interactions" for data analytics and marketing/advertising to consumers "conclusory and insufficient"); *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (following *Javier* and dismissing CIPA claim that provider "analyzes the customer-support agent interactions in real time to create live transcripts of communications" and that "supervisors can view transcripts in real time"). Accordingly, irrespective of whether the Court applies *Graham* or *Javier*, Plaintiff fails to allege facts showing

that LinkedIn was a third-party eavesdropper that either used or had the capability of using her data for its own purposes, and both of her CIPA claims are barred by the well-settled party exception.

**2. Plaintiff's Claim Under CIPA's Second Clause Has Additional Defects.**

Even setting aside this fundamental deficiency, Plaintiff fails to plead facts establishing other elements of a claim brought under CIPA's second clause. Specifically, Plaintiff has not plausibly alleged that LinkedIn: (1) "read or attempted to read" her "communications," (2) while they were in transit, and (3) did so "willfully." Her claims are doomed for these reasons as well.

***Read or Attempting to Read.*** Under CIPA's second clause, Plaintiff must at least plausibly allege facts concerning defendant's attempt to "read, or to learn the contents" of any purported communications. § 631(a). Plaintiff's conclusory allegation that "LinkedIn intended to learn, and did learn, the meaning of the contents of Plaintiff's and Class Members' communications with the DMV" is nothing but a recitation of the elements and is not entitled to a presumption of truth. (Compl. ¶ 109); *see Twombly*, 550 U.S. at 570. Plaintiff elsewhere alleges that search queries and specific website actions are "obtained by LinkedIn" through the Insight Tag (Compl. ¶¶ 46-49, 52, 56); this is merely an allegation that LinkedIn ***received*** the data, not that LinkedIn read it or attempted to learn its contents. In *James v. Allstate Insurance Company*, for example, the plaintiff alleged that the defendant's analytics provider "recorded the data and store[d] it on its servers." 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023). The Court found such allegations "insufficient to support a plausible inference [that] [the analytics provider] attempted to read or learn the contents of the communications while in transit." *Id.* Plaintiff's allegations that LinkedIn "obtained" certain data from the DMV are similarly deficient. Like *James*, Plaintiff has not pled any facts creating a plausible inference that LinkedIn read or attempted to learn the contents of her communications with the DMV, such as by alleging that she saw disability related ads that she can plausibly connect to her visits to the DMV's website or to LinkedIn.

***In Transit.*** "[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, *i.e.*, before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); *see Swarts*, 2023 WL 5615453, at *8 (finding "conclusory allegations" of

interception where plaintiff failed to allege specific facts including "*when* the interception occurs"). Plaintiff has pled no facts establishing that her alleged communications with the DMV were intercepted while "in transit." (*See, e.g.,* Compl. ¶¶ 28-31, 41-48 (describing functionality of Insight Tag); *id.* ¶¶ 90-100 (describing the CIPA claim).) Specifically, while she pleads that "LinkedIn's Pixel . . . is secretly transmitting personal information . . . maintained by the DMV to LinkedIn," she fails to allege any facts specifically describing *when* the alleged interception occurs. (Compl. ¶ 41.) "While Plaintiff[] need not prove [her] theory of interception on a motion to dismiss, Plaintiff[] must provide fair notice to Defendant[] of when [she] believe[s] [Defendant] intercepts [her] communications." *In re Vizio Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).[12] She has not done so here.

Notably, Plaintiff cannot readily amend her complaint to address this threshold defect. Plaintiff likely remained conspicuously silent as to the timing of alleged interception because allegations that LinkedIn intercepted her communications with the DMV "in transit" (*i.e.*, before they reached the DMV) would be dispositive of any claim that the information came from a "motor vehicle record" maintained by the agency under the DPPA. *Supra* III.B.2. Plaintiff cannot have it both ways, as her artful pleading attempt suggests she already knows.

***Willful.*** To state a claim, Plaintiff must plausibly allege LinkedIn "willfully" obtained and read, or attempted to read, her communications with the DMV. Plaintiff's allegations of willfulness are entirely conclusory and do not satisfy Rule 8. She merely alleges that "LinkedIn knows that the LinkedIn Pixel is operating on the DMV website" and "LinkedIn intended to learn, and did learn, the meaning of the contents of Plaintiff's and Class Members' communications with the DMV[.]" (Compl. ¶¶ 43, 109.) Again, these allegations are little more than a bare recitation of the statute's elements and are not entitled to a presumption of truth. *Twombly*, 550 U.S. at 570.

[12] *See also Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (emphasis added) (dismissing CIPA claims involving Pixel technology where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place"); *Cody v. Ring LLC*, 2024 WL 735667, at *5 (N.D. Cal. Feb. 22, 2024) (dismissing and finding allegation that "application program is 'plugged into' Ring's website and allows chats to be routed 'in real time ... fail[s] to provide specific factual allegations"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough" to "make it plausible Google is intercepting [plaintiff's] data in transit").

Plaintiff must plead more to state a violation of CIPA, and courts have dismissed similar claims based on far more detailed allegations of intent. *Cf. Heiting v. Taro Pharm s. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (holding allegations "Defendant paid Genesys to intercept messages . . . [did not] demonstrate[] Defendant acted with the requisite knowledge or intent to aid and abet Genesys's purported CIPA violation").

### 3. Plaintiff's Claims Under CIPA's Third Clause Have Further Flaws.

To begin, a claim brought under CIPA's third clause for use of unlawfully obtained data must be predicated on a violation of either of the first two clauses and thus fails because Plaintiff does not assert a claim under CIPA's first clause or state a viable claim under its second clause. *In re Google Assistant Privacy Lit.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because plaintiffs have not done so, they have failed to plead a violation of third clause."); *Mastel,* 549 F. Supp. 3d at 1137 (no derivative liability under third clause without predicate).

Additionally, as discussed above, Plaintiff pleads no facts showing that LinkedIn independently used any of the allegedly intercepted information. While the Complaint contains scattered allegations regarding how data from the Insight Tag is generally "fed" into "LinkedIn Marketing Solutions" and "allows marketers to utilize various types of ads to reach their target audiences," there are no specific allegations related to the data allegedly obtained from the DMV. Because these allegations are not even tied to the DMV, this is an even more attenuated series of allegations than those rejected in *James* that "interception, capture, recording, and storing" of data on behalf of the defendant is not equivalent to reading that data. (Compl. ¶¶ 34, 37.) *James*, 2023 WL 8879246, at *3. It is not enough to simply point out that LinkedIn has tools for gathering information to support its marketing products as a general matter. Plaintiff has not plausibly alleged any facts remotely suggesting that LinkedIn used any of the data received from the DMV Insight Tag, let alone her individual data, and her claims fail for this reason as well.

## IV. CONCLUSION

At bottom, Plaintiff's claims arise out of alleged misconduct by the DMV, not by LinkedIn. Consequently, and for all the reasons discuss above, dismissal with prejudice is warranted.

Dated: April 9, 2024

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
LINKEDIN CORPORATION

299969837