Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JACQUELINE JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | **CASE NO. 5:24-cv-00812-PCP**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS**<br><br>**DATE:** **June 6, 2024**<br>**TIME:** **10:00 a.m.**<br>**DEPT.:** **Courtroom 8, 4th Floor**<br><br>Hon. P. Casey Pitts |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. SUMMARY OF PERTINENT ALLEGATIONS ..... 2

III. ARGUMENT ..... 4

A. The DMV Is Not a "Required Party," and Plaintiff's Failure to Join the DMV Does Not Warrant Dismissal. ..... 4

1. As a threshold matter, *Downing v. Globe Direct LLC*, which is the tentpole of LinkedIn's Rule 12(b)(7) argument, is inapposite. ..... 5

2. The DMV is not a "required party" under Rule 19. ..... 7

a. The Court can grant "complete relief" without joining the DMV. ..... 7

b. The DMV does not have an interest in this litigation that will be impaired or impeded by its absence. ..... 9

c. The DMV's absence will not create inconsistent obligations. ..... 10

3. The DMV's absence does not warrant dismissal. ..... 10

B. Plaintiff Adequately Pleads Her DPPA Claim. ..... 12

1. Plaintiff adequately alleges that LinkedIn knowingly obtained and used her personal information. ..... 13

2. Plaintiff adequately alleges that LinkedIn obtained plaintiff's personal information "from a motor vehicle record." ..... 16

3. LinkedIn's conduct is not "permitted" by the DPPA. ..... 18

C. Plaintiff Adequately Pleads Her CIPA Claim. ..... 19

1. Plaintiff adequately alleges that LinkedIn is a "third-party eavesdropper," not a party to the relevant communications. ..... 20

2. Plaintiff adequately alleges a violation of § 631's second clause. ..... 22

3. Plaintiff adequately alleges a violation of § 631(a)'s third clause. ..... 24

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. California Highway Patrol*,
No. 07-cv-05483-SI, 2009 WL 733872 .......... 8

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) .......... 15

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) .......... 9, 12, 16

*Bakia v. Los Angeles Cnty. of State of Cal.*,
687 F.2d 299 (9th Cir. 1982) .......... 5

*Bates v. Franchise Tax Bd.*,
124 Cal. App. 4th 367 (Cal. Ct. App. 2004) .......... 9

*Berton v. Aetna Inc.*,
No. 23-cv-01849-HSG, 2024 WL 869651 (N.D. Cal. Feb. 29, 2024) .......... 7

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 24

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 19

*Daniel Pickering v. FCA US LLC, et al.*,
No. 21-cv-1813-GW-RAOX, 2021 WL 5968454 (C.D. Cal. Apr. 12, 2021) .......... 8

*Downing v. Globe Direct LLC*,
806 F. Supp. 2d 461 (D. Mass. 2011), aff'd on other grounds by *Downing v. Globe Direct LLC*, 682 F.3d 18 (1st Cir. 2012) .......... 5, 6, 11, 19

*E.E.O.C. v. Peabody W. Coal Co.*,
610 F.3d 1070 (9th Cir. 2010) .......... 8, 9

*Enslin v. The Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd*, 739 F. App'x 91 (3d Cir. 2018) .......... 14, 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 21

*Force MOS Tech. Co. v. Lin*,
No. 22-cv-08938-SVK, 2024 WL 1199017 (N.D. Cal. Mar. 19, 2024) .......... 4, 5, 7, 10

*Gershzon v. Meta Platforms, Inc.*,
No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......... *passim*

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)....................20, 21

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-08002-SPG-E, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023)....................24

*Iconlab Inc. v. Bausch Health Companies Inc.*,
No. 16-cv-03121-JLS-KES, 2019 WL 12521292 (C.D. Cal. May 15, 2019)....................4, 5

*James v. Allstate Ins. Co.*,
No. 3:23-cv-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)....................23

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023)....................21

*Keogh v. Meta Platforms, Inc.*,
No. 6:23-CV-5004-KDB, 2023 WL 9657924 (D.S.C. Feb. 14, 2023)....................*passim*

*Knowlton v. City of Wauwatosa*,
No. 20-cv-1660, 2023 WL 2951425 (E.D. Wis. Apr. 14, 2023)....................18

*Maracich v. Spears*,
570 U.S. 48 (2013)....................12

*Matera v. Google Inc.*,
No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)....................20

*Pichler v. UNITE*,
542 F.3d 380 (3d Cir. 2008)....................15

*Rand v. Travelers Indem. Co.*,
No. 21-cv-10744, 2022 WL 15523722 (S.D.N.Y. Oct. 27, 2022)....................14

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................21, 23, 24

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....................23

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,
672 F.3d 1176 (9th Cir. 2012)....................4

*Senne v. Village of Palatine, Illinois*,
695 F.3d 597 (7th Cir. 2012)....................15

*Swarts v. Home Depot, Inc.*,
No. 2023-cv-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023)....................22

*Tinoco v. San Diego Gas & Elec. Co.*,
327 F.R.D. 651 (S.D. Cal. 2018)....................8

*Tison v. Arizona*,
481 U.S. 137 (1987) .......... 14

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) .......... 15

*Valenzuela v. Super Bright LEDs Inc.*,
No. 23-cv-01148-JAK, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 22, 23, 25

*Yockey v. Salesforce, Inc.*,
No. 22-cv-09067-JST, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) .......... 22

**Statutes**

18 U.S.C. § 2721(a) .......... 12

18 U.S.C. § 2721(b)(1) .......... 18, 19

18 U.S.C. § 2722(a) .......... 12

18 U.S.C. § 2723 .......... 11

18 U.S.C. § 2724(a) .......... 13, 14

18 U.S.C. § 2725(1) .......... 16

Cal. Govt. Code § 905.2(b) .......... 9

Cal. Penal Code § 630 .......... 20

Cal. Penal Code § 631(a) .......... 20, 21, 23, 24

**Other Authorities**

139 Cong. Rec. S15745-01 (Nov. 16, 1993) .......... 12

Fed. R. Civ. P. 19 .......... *passim*

## I. INTRODUCTION

This case concerns LinkedIn's use of proprietary software code called an "Insight Tag" that was added to the California Department of Motor Vehicle ("DMV") website. The Insight Tag intentionally and surreptitiously collects an extraordinary amount of personal information about users' interactions with that website without users' knowledge or consent. The Insight Tag also accesses the profiles of DMV website users who have LinkedIn accounts and ties their internet browsing information to the personal information contained in their LinkedIn accounts. LinkedIn then feeds this combined personal profile information into its proprietary "Marketing Solutions" advertising systems so its customers can target specific LinkedIn users based on their individual characteristics, all for advertising purposes. This intentional invasion of privacy is incredibly lucrative for LinkedIn, as it reportedly hauls in more than $5 billion in annual advertising revenue.

As relevant here, Plaintiff, who is disabled, interacted with the DMV website to complete and submit a renewal application for a disability placard. Unbeknownst to Plaintiff, the Insight Tag allowed LinkedIn to obtain Plaintiff's personal disability information, along with her first and last name, date of birth, email address, and URL information for each portion of the DMV site that she visited. LinkedIn then used this highly personal information, without Plaintiff's consent, for advertising purposes. LinkedIn's conduct violated two important data privacy statutes, the Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, and the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630, *et seq.*, which seek to prevent third parties from obtaining, viewing, and using individuals' personal information.

LinkedIn's motion to dismiss first essentially asks the Court to find that it is immune from liability under these privacy statutes because the DMV is a "required party" under Fed. R. Civ. P. 19, and the Eleventh Amendment precludes its joinder. But the linchpin of LinkedIn's argument is that the DMV is the only wrongdoer here, and there is nothing LinkedIn can do about the highly personal information ***it*** intentionally obtained, used, and profited from. The argument is illogical, contrary to the facts, and requires the Court to ignore well established joinder rules.

LinkedIn also argues that Plaintiff fails to adequately plead claims under the DPPA and

CIPA. LinkedIn's arguments on this front are neither novel nor convincing. Indeed, Judge Susan Illston recently denied a motion to dismiss by Meta in a case involving nearly identical allegations about software code Meta installed on the DMV's website to obtain similar personal data. *See Gershzon v. Meta Platforms, Inc.*, No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023). Recognizing this, LinkedIn resorts to characterizing Judge Illston's ruling as "wrongly decided." It was not.

In sum, because Plaintiff adequately alleges that LinkedIn knowingly obtained and used Plaintiff's protected personal information for *its own* improper purpose, and, willfully intercepted, read and learned the contents of Plaintiff's communications with the DMV, Plaintiff has clearly stated claims for violation of the DPPA and CIPA.

LinkedIn's motion to dismiss should be denied in its entirety.

## II. SUMMARY OF PERTINENT ALLEGATIONS

Plaintiff has a LinkedIn account, and since approximately 2009, she has had a disabled persons placard ("DPP") issued by the California DMV. She applied for a renewal of her DPP online in 2023 through the DMV's website. *See* Class Action Complaint, ("Compl."), ECF 1, ¶ 6. In doing so, Plaintiff "provided the DMV with her first and last name, date of birth, disability information, email address, and URL information about each portion of the DMV site that she visited." *See id.* ¶¶ 6, 49-57, 105, 109.

LinkedIn is a marketing and advertising company whose business model centers around harvesting and profiting from personal data collected, in part, "from the driving records maintained by the DMV and from the contents of website users' communications with the DMV" and which "use[s] that information and data to generate substantial revenue from advertising and marketing services." *Id.* ¶¶ 20-27, 22 n.10, 24 n.12, 34-39, 41-59, 106. Through its Insight Tag, a JavaScript-based code, LinkedIn secretly amasses troves of data about Plaintiff's and Class Members' personal information, communications, and interactions with third parties, including the DMV, that it uses to "to create profiles, categorize individuals, and derive information about them in order to sell . . . the ability to create targeted marketing and advertising" to third parties. *Id.* ¶¶ 3, 28, 106.

LinkedIn controls the Insight Tag. *Id.* ¶ 64. Moreover, LinkedIn voluntarily and intentionally designed the Insight Tag to secretly and indiscriminately transmit users' personal information, communications, and interactions with third parties, including the DMV, to itself for its own financial gain. *See id.* ¶¶ 41, 64, 75. More specifically, LinkedIn intentionally designed the Insight Tag to obtain detailed information about individuals for ad targeting purposes and "boasts that its Ad Targeting service will help marketers '[r]each the right audience' by targeting specific 'matched audiences' derived from +950 million LinkedIn members, 180 million Senior-level influencers, 63 million decision makers, and 10 million C-level executives in the LinkedIn Audience Network." *See id.* ¶¶ 20-26, 34-39. LinkedIn's ad targeting services allows marketers and advertisers, including healthcare providers and insurance companies, to expand their advertising reach across multiple platforms, including by sending direct messages to potential prospects, to generate new customers. *Id.* ¶¶ 24-25, 36-39.

To ensure that it collects as much data as possible, LinkedIn created "a critical new feature" of the Insight Tag that allows it to be installed as a first-party cookie, and instructs website owners on how to embed its Insight Tag throughout their websites as such, to "ensure[] that the third-party cookie-blocking functions of modern web browsers do not prevent LinkedIn from collecting data through its" Insight Tag and to "shield[] [it] with the same privacy exemptions offered to first-party cookies." *Id.* ¶ 28.

LinkedIn knows that the Insight Tag is embedded throughout the DMV's website, which the DMV uses to communicate with individuals about matters concerning their driver's licenses, vehicle registrations, disability placard applications, and other information on file with the DMV. *Id.* ¶¶ 40-43. "LinkedIn assigns a unique numerical identifier to each Insight Tag and maintains records associating each [Insight Tag] with the data it transmits and the website where it is embedded." *Id.* ¶ 42. "The numerical identifier associated with the Insight Tag currently operating on the DMV website is 1457876." *Id.* LinkedIn also uses requests from "lms_ads" and "lms_analytics" to link users' activity on the DMV website to their corresponding LinkedIn member profile for analytics and advertisement purposes. *Id.* ¶ 31.

As part of its scheme, LinkedIn's Insight Tag to indiscriminately sends itself information regarding Plaintiff's and Class Members' interactions with the DMV. *See id.* ¶¶ 6, 45-56, 59-75. And, far from being an innocent intermediary, LinkedIn specifically programed the Insight Tag for a clear purpose: to obtain troves of personal user data in order to feed LinkedIn's lucrative targeted advertising services. *Id.* ¶¶ 34, 39, 57-60.

Plaintiff alleges that LinkedIn secretly obtains Plaintiff's and Class Members' personal information that they use to complete their DPP applications and renewals through URLs and online forms maintained by and submitted to the DMV. *Id.* ¶¶ 41, 49-57, 93, 96-97. Upon receipt, LinkedIn knowingly uses Plaintiff's and Class Members' information for its own impermissible marketing and advertising purposes. *Id.* ¶¶ 20-27, 22 n.10, 24 n.12, 31-39, 41-59, 57, 63, 71, 97.

## III. ARGUMENT

### A. The DMV Is Not a "Required Party," and Plaintiff's Failure to Join the DMV Does Not Warrant Dismissal.

LinkedIn urges this Court to find that the DMV is a "required party"[1] to this litigation under Rule 19, and because joinder of the DMV is not feasible, dismissal of the entire case is warranted under Fed. R. Civ. P. 12(b)(7). *See* LinkedIn's Motion to Dismiss ("Def. Br."), ECF No. 19, at 1, 5. Neither the facts nor the law support LinkedIn's argument.

The joinder analysis under Rule 19 involves a three-step inquiry: (1) Is the non-party "necessary" to the litigation?; (2) If so, is it feasible to order the absent party be joined?; and (3) If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed? *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). If a court determines that a non-party is not "required," it need not address the next two questions." *Force MOS Tech. Co. v. Lin*, No. 22-cv-08938-SVK, 2024 WL 1199017, at *1 (N.D. Cal. Mar. 19, 2024) (citation omitted).

Importantly, "[t]he Rule 19 inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Iconlab Inc. v. Bausch Health Companies Inc.*, No. 16-cv-

[1] Rule 19 now uses the term "required parties," but courts sometimes use the terms "necessary" and "indispensable" party in the Rule 19 analysis based on the Rule's pre-amendment language.

03121-JLS-KES, 2019 WL 12521292, *3 (C.D. Cal. May 15, 2019) (citations omitted). "Evaluating the propriety of dismissal 'requires the district court to analyze various equitable considerations within the context of particular litigation, rather than to decide a purely legal issue.'" *Id.* at *3 (quotation omitted). "Rule 19 gives a trial court considerable discretion . . . ." *Bakia v. Los Angeles Cnty. of State of Cal.*, 687 F.2d 299, 301 (9th Cir. 1982). But "[t]he party seeking joinder under Rule 19 bears the burden of persuasion." *Force MOS Tech. Co.*, 2024 WL 1199017, at *1 (citation omitted).

**1. <u>As a threshold matter, *Downing v. Globe Direct LLC*, which is the tentpole of LinkedIn's Rule 12(b)(7) argument, is inapposite.</u>**

The centerpiece of LinkedIn's argument is a decision from the District of Massachusetts in *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011), aff'd on other grounds by *Downing v. Globe Direct LLC*, 682 F.3d 18, 19 (1st Cir. 2012), in which the court held that the Commonwealth of Massachusetts was a necessary party to a DPPA class action against a contracting vendor who mailed registration renewal notices on behalf of the Massachusetts Registry of Motor Vehicles ("RMV"). LinkedIn claims that this "highly analogous decision . . . demonstrates that this case cannot proceed without the DMV." Def. Br. at 7. Indeed, LinkedIn leans on *Downing* to support every element of the Rule 19 analysis but one. However, because *Downing* was decided on very different facts, and was affirmed on other grounds on appeal, it lacks any persuasive value.

Critically, the *Downing* case *did not* involve the highly personal disability information at issue here, nor did it involve a party's misuse of such personal information for its own financial gain. Instead, in *Downing*, the RMV retained an outside vendor to print and mail registration renewal notices to motor vehicle owners *on behalf of Massachusetts*. 806 F. Supp. 2d at 464. The RMV provided the outside vendor with the names and addresses of motor vehicle owners for mailing purposes. And, to defray the cost of the mailing and thereby save Massachusetts money, the RMV's contract *required* the vendor to include third party advertisements in the mailings, which the RMV *approved*. *Id.* at 464.

Naturally, the RMV's own conduct was at issue, but so too was the fact that the

registration mailings fell within the DPPA's "'permissible uses' for which drivers' personal information may be disclosed." *Id.* at 21. In any event, with respect to the misjoinder analysis, the court found that the RMV was a necessary party because the plaintiff requested an order enjoining the defendant vendor from engaging in certain future conduct *required by the RMV's contract*. *Id*. at 467. Because such an injunction "would effectively invalidate Massachusetts's contract," the court held that the State should have a say in the determination and should have been joined. *Id.* But, because joinder was not feasible and the Rule 19(b) factors weighed in favor of dismissal, the court dismissed the case. *Id*. at 468-470. The facts here are easily distinguishable from *Downing* in many important respects.

First, LinkedIn obtained and used Plaintiff's personal disability information (*see, e.g.*, Compl. ¶¶ 44-59), whereas the information in *Downing* was merely names and addresses. *Downing*, 806 F. Supp. 2d at 464. Additionally, while the RMV's contract with the vendor in *Downing* obligated the vendor to use the plaintiffs' names and addresses in order to mail the advertisements, *id.*, LinkedIn's own use of Plaintiff's personal information here is not necessary for LinkedIn to perform its services under its Ad Agreement with the DMV. *Cf. Downing*, 806 F. Supp. 2d at 464. Relatedly, and especially relevant here, Plaintiff is not seeking to enjoin LinkedIn from any conduct called for by the Ad Agreement, so a finding that LinkedIn's practice of obtaining and using Plaintiff's protected personal information for LinkedIn's own targeted advertising purposes inuring to its own pecuniary benefit would not effectively invalidate the Ad Agreement.

Second, inapposite facts aside, this case involves LinkedIn's *own conduct* and falls under "the second part of the DPPA which 'concerns not DMVs themselves, but instead those who illicitly seek information from motor vehicle records." *Gershzon v. Meta Platforms, Inc.*, No. 23-cv-00083-SI, 2023 WL 5420234, at *4 (N.D. Cal. Aug. 22, 2023) (emphasis added), citing *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019).

In short, LinkedIn's heavy reliance on *Downing* is misplaced. LinkedIn's Rule 12(b)(7) argument was defective even if *Downing* were persuasive authority, and without *Downing*, it is almost entirely unsupported by the law.

**2. <u>The DMV is not a "required party" under Rule 19.</u>**

A party may be "required" under Rule 19(a) for three different reasons: first, if, in its absence, the court cannot accord complete relief among existing parties; second, if it has an interest in the action and resolving the action in its absence may, as a practical matter, impair or impede its ability to protect that interest; and third, if it has an interest in the action and resolving the action in its absence may leave an existing party subject to inconsistent obligations because of that interest. Fed. R. Civ. P. 19(a)(1)(A)-(B)(ii). None of these reasons apply here.

**a. The Court can grant "complete relief" without joining the DMV.**

LinkedIn argues that any relief awarded by this Court would be incomplete without the DMV because (a) in the absence of an injunction against it, the DMV will remain free to share Plaintiff's data with third parties, and (b) it would be unfair if LinkedIn could not seek contractual indemnification under the Ad Agreement against the DMV. Def. Br. at 6-7. Both arguments rely on incorrect applications of the law.

"In evaluating whether a court may award complete relief without joining an additional party, a 'court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties.'" *Force MOS Tech. Co.*, 2024 WL 1199017, at *2 (quotation omitted). "Complete relief is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple suits on the same cause of action." *Berton v. Aetna Inc.*, No. 23-cv-01849-HSG, 2024 WL 869651, *6 (N.D. Cal. Feb. 29, 2024) (citations and internal quotations omitted). This requirement is satisfied where "a party can recover damages sufficient to compensate for his or her injuries from the defendants already in the action." *Force MOS Tech. Co.*, 2024 WL 1199017, at *2 (citing *A.D. v. Cal. Highway Patrol*, No. 07-cv-05483-SI, 2009 WL 773872, at *2 (N.D. Cal. Mar. 17, 2009)).

LinkedIn's argument that an injunction against the DMV is necessary to afford Plaintiff complete relief ignores Plaintiff's allegations and mischaracterizes her claims. Under the DPPA, Plaintiff seeks monetary damages and injunctive relief prohibiting LinkedIn from using the Insight Tag to obtain and use personal information from motor vehicle records maintained by the

DMV. Compl., ¶¶ 99-100. LinkedIn does not dispute that such an award will provide Plaintiff complete relief *from LinkedIn* for the injuries it caused. Instead, LinkedIn develops a sudden concern for Plaintiff's privacy rights and argues that relief would be incomplete because the DMV would remain free to share Plaintiff's personal information with *other companies* that are apparently harvesting Plaintiff's data from the DMV website. Def. Br. at 6-7. However, that hypothetical scenario does not mean that the relief Plaintiff is seeking *from LinkedIn* for injuries caused *by LinkedIn* would be incomplete. In this regard, LinkedIn tries to wrongly portray the DMV as the entity illegally collecting and using Plaintiff's personal information under the DPPA when, in fact, Plaintiff alleges in detail that LinkedIn is the entity doing so.

LinkedIn next argues that because it has contractual indemnity rights against the DMV, this Court cannot provide complete relief *to LinkedIn* in the DMV's absence. Def. Br. at 7. But a party's right to indemnity against a third party is not the proper basis for a finding that the third party is "required" under Rule 19. *See Tinoco v. San Diego Gas & Elec. Co.*, 327 F.R.D. 651, 658 (S.D. Cal. 2018) (stating that the mere possibility of indemnity between current defendant and proposed defendant does not meet the requirements of Rule 19's "complete relief" analysis); *accord Daniel Pickering v. FCA US LLC, et al.*, No. 21-cv-1813-GW-RAOX, 2021 WL 5968454, at *2 (C.D. Cal. Apr. 12, 2021); *see also A.D. v. California Highway Patrol*, 2009 WL 733872 at *2 ("A party potentially subject to an indemnity action arising from the claim is not necessary [to] afford complete relief.").

LinkedIn cites *E.E.O.C. v. Peabody W. Coal Co*., 610 F.3d 1070 (9th Cir. 2010), for the proposition that it would be "unfair" if it could not pursue contractual indemnification against the DMV. In *Peabody*, however, there was no contract between the defendant and absent party, the Secretary of the Interior. *See id*. at 1082. Accordingly, if the Secretary was not joined in the case, the defendant would have no avenue to seek indemnity. *Id.* at 1083. ("[B]ecause Peabody's indemnification suit would seek damages, it would be barred by the government's sovereign immunity unless that immunity is waived by statute. We can find no waiver of sovereign immunity to such a suit."). Here, LinkedIn admits that it has the contractual right to seek indemnity from the DMV, and it can do so outside of this litigation. *See* Def. Br. at 9, fn.9. More

specifically, LinkedIn can pursue any of its contractual claims against the DMV in California State Court pursuant to the California Government Claims Act, Cal. Govt. Code § 810, *et seq*. Section 905.2 thereof explains the procedure for "all claims for money or damages against the state." Cal. Govt. Code § 905.2(b). *See Bates v. Franchise Tax Bd.*, 124 Cal. App. 4th 367, 382-83 (Cal. Ct. App. 2004).

Because LinkedIn has the right to litigate a breach of contract action against the DMV in a separate proceeding, the "unfairness" considerations in *Peabody* are simply not present here.

**b. The DMV does not have an interest in this litigation that will be impaired or impeded by its absence.**

LinkedIn next argues that the DMV has an interest related to this action that will be impaired by its absence because this case "could result in a finding that the DMV has breached the Ads Agreement." Def. Br. at 8–9. But it also concedes that the DMV would "retain its right to contest its breach in a later proceeding" (Def. Br. at 9, fn.9). Quite simply, LinkedIn does meet its burden to show that this case could result in a finding that the DMV has breached the Ads Agreement. To determine liability under the DPPA, the Court need only determine that LinkedIn "(1) knowingly obtained [Plaintiff's] personal information (2) from a motor vehicle record (3) for a nonpermissible use." *Andrews*, 932 F.3d at 1259. As fully addressed below, Plaintiff's DPPA claim, as alleged in her Complaint, easily meets each of these elements and does not depend a finding that the DMV breached LinkedIn's Ads Agreement. *See* § III.B.

Similarly, LinkedIn's argument that "Plaintiff seeks a judgment that may impair the DMV's ability to perform its key functions, including procuring advertising services," is just as fatally conclusory as the prior argument. *See* Def. Br. at 9. LinkedIn provides no factual support for its claim that the DMV's key functions and ability to contract for advertising services will be impaired or invalidated by a judgment *against LinkedIn* for *LinkedIn's illegal conduct*, nor does it explain how any such "impairment" of the DMV's key functions would occur. Plaintiff is not seeking any relief that would prevent the DMV from contracting for advertising services with other entities, or maintaining its contract with LinkedIn so long as LinkedIn ceases its illegal harvesting and use of Plaintiff's highly personal information to profit from targeted advertising.

**c. The DMV's absence will not create inconsistent obligations.**

LinkedIn argues that "if the Court rules in Plaintiff's favor, LinkedIn could be saddled with an injunction with which it cannot guarantee compliance." Def. Br. at 10. That argument is premised on the hollow assertion that "the DMV controls the URL's of its website and whether to install" the Insight Tag on the website. *Id*. But, of course, LinkedIn alone controls its own actions and, for example, can certainly modify the Insight Tag to prevent its own receipt and use of personal information. Of course, this is not the entire universe of actions that LinkedIn could take to bring itself into compliance with the law, but it demonstrates, for argument's sake, that LinkedIn has not met its burden to show that it "cannot" comply with the requested injunction.

* * *

LinkedIn has not satisfied any of the three tests under the "required party" inquiry, so the Court can reject its Rule 12(b)(7) argument without further analysis. *See Force MOS Tech. Co.*, 2024 WL 1199017, at *1. However, even if the DMV were a "required" party, dismissal of Plaintiff's Complaint would not be appropriate here.

**3. <u>The DMV's absence does not warrant dismissal.</u>**

Since it is undisputed that joinder of the DMV is not possible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19 provides four factors for the Court to consider, none of which warrant dismissal. Fed. R. Civ. P. 19(b)(1)-(4).

***First***, no party will suffer prejudice if the Court renders judgment in the DMV's absence. Fed. R. Civ. P. 19(b)(1). LinkedIn correctly notes that the prejudice analysis is largely duplicative of the necessary party analysis under Rule 19(a). Because LinkedIn makes no new arguments regarding prejudice, this factor does not warrant dismissal. *See* § III.A.1.

***Second***, because the DMV and LinkedIn will not be prejudiced by the DMV's absence, no "protective provisions in the judgment," "shaping the relief," or "other measures" are necessary. Fed. R. Civ. P. 19(b)(2)(A) & (B). As explained above, the DMV's contractual interests will not be impacted by a judgment ordering LinkedIn to stop collecting and using Plaintiff's personal information from the DMV website because, for example, LinkedIn can modify the Insight Tag to

prevent the use of that information. *See* § III.A.2.c. As for prejudice to LinkedIn's contractual right to indemnity, LinkedIn admits that it can pursue that relief in a separate proceeding. *See* Def. Br. at 9, fn.7; *see also* § III.A.2.a.

***Third***, a judgment against *LinkedIn* in the DMV's absence will not be inadequate, Fed. R. Civ. P. 19(b)(3), because, contrary to LinkedIn's argument, the relief against *LinkedIn* will not be partial. *See* § III.A.2.a.

***Fourth***, Plaintiff will have no adequate remedy if the action is dismissed. Fed. R. Civ. P 19(b)(4). LinkedIn claims that the DPPA allows the Attorney General to seek the DMV's compliance with the law, but despite LinkedIn's incessant attempts to avoid responsibility by portraying the DMV as the bad actor, Plaintiff is seeking redress for *LinkedIn's* conduct. *See* § III.B.1. And the DPPA does not permit the Attorney General to impose penalties *against LinkedIn*, only the DMV. 18 U.S.C. § 2723.

Separately, LinkedIn's citation to *Dawavendewa* only highlights the weakness of its argument. *Dawavendewa* found that the plaintiff "may have a viable alternative forum in which to seek redress" because the E.E.O.C. could bring suit to address the injury, but did so *only after* the E.E.O.C. had already moved to intervene. 276 F.3d at 1162. Moreover, the court recognized that the plaintiff himself could have sought remedy in another forum. *Id*. at 1162 fn.12. LinkedIn has not argued that Plaintiff has similar options here.

*Downing* is also unpersuasive. There, it was the RMV's own actions in requiring the vendor's use of personal information to mail third party advertisements that caused the DPPA violation, 806 F. Supp. 2d at 467, so a suit by the Attorney General against the RMV would provide the plaintiff with an adequate remedy. Here, the Ad Agreement does not require LinkedIn to obtain and use Plaintiff's personal information, and in fact prohibits it. *See* Def. Br. at 14, fn.9. Plaintiff alleges that LinkedIn collects that information and uses it, so an action by the Attorney General against LinkedIn would not remedy the misconduct alleged. *See* § III.B.1.

LinkedIn also argues that even if Plaintiff has no adequate remedy, the simple fact that the DMV has sovereign immunity, supports dismissal. Def. Br. at 11–12. Although the lack of an adequate remedy is only one of four factors to consider in the dismissal analysis, other factors

may outweigh it. That a "required" party may have sovereign immunity is not, standing alone, a basis for dismissal. None of LinkedIn's cited cases holds otherwise.

Accordingly, even if the DMV were a "required party," joinder is not feasible and in equity and good conscience, the action should proceed among the existing parties. The Court should deny LinkedIn's Rule 12(b)(7) motion.

### B. Plaintiff Adequately Pleads Her DPPA Claim.

The co-sponsors of the DPPA made clear that the statute protects the public's right to control access to the personal information they provide to the DMV because individuals are *obligated* to provide that information to operate a motor vehicle. 139 Cong. Rec. S15745-01, S15764 (Nov. 16, 1993), available at 1993 WL 470986 ("*Leg. History*"). Congress enacted the DPPA because "most" state DMVs were selling data to marketers, and some were divulging data to any taker for a fee, which facilitated stalking and other crimes. *Leg. History*, 1993 WL 470986. By codifying the "individual's fundamental right to privacy and safety" into law, the DPPA "seeks to control dissemination of information collected using the coercive power of the state." *Maracich v. Spears*, 570 U.S. 48, 57, 82 (2013); *Andrews*, 932 F.3d at 1261.

The DPPA is comprised of two parts: the first part prohibits "[a] State department of motor vehicles" from "knowingly disclos[ing] or otherwise mak[ing] available . . . personal information . . . about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a). The second part, which is the focus of this litigation, makes it unlawful for "any person knowingly to obtain or disclose personal information, from a motor vehicle record" unless it is for a permitted purpose. 18 U.S.C. § 2722(a). In other words, § 2722 "***concerns not DMVs themselves, but instead those who illicitly seek information from motor vehicle records***." *Andrews*, 932 F.3d at 1258 (emphasis added).

To state a claim under the DPPA, Plaintiff must allege that LinkedIn "(1) knowingly obtained [her] personal information (2) from a motor vehicle record (3) for a nonpermissible use." *Id.* at 1259. LinkedIn's motion argues that Plaintiff's DPPA claim should be dismissed because Plaintiff failed to adequately allege any of these three elements. Notably, however, Judge Illston rejected nearly identical arguments last year when Meta asserted them in *Gershzon*, 2023

WL 5420234, a factually similar case involving a "Pixel" created by Meta that obtained plaintiff's personal information from the DMV's website. For the reasons below, this Court should follow Judge Illston's well-reasoned opinion in *Gershzon* and deny LinkedIn's motion.

#### 1. **<u>Plaintiff adequately alleges that LinkedIn knowingly obtained and used her personal information.</u>**

LinkedIn is subject to a DPPA claim if it "knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted." 18 U.S.C. § 2724(a). "As a matter of statutory construction, the 'knowingly' requirement applies to the first element of a DPPA claim–'obtains, discloses or uses personal information.'" *Gershzon*, 2023 WL 5420234, at *10.

Plaintiff alleges that her "personal information was obtained 'knowingly' under the DPPA because LinkedIn knows that information and communication exchanged between users and the DMV are transmitted to LinkedIn by the [Insight Tag] specifically assigned to the DMV's website." *See* Compl. ¶ 58. Plaintiff supports this allegation with facts specifically detailing how LinkedIn provided the DMV with the Insight Tag that LinkedIn itself intentionally designed to gather and transmit the personal information as alleged. *Id.* ¶¶ 41–43.[2] Plaintiff then provides examples, including screenshots, of the process by which the Insight Tag obtains information when users access and browse the DMV website (*id*. ¶¶ 45–48), and further alleges in detail how the Insight Tag collected Plaintiff's personal information identified in the Complaint. *Id*. ¶¶ 49–57. LinkedIn also assigned a unique identifier to each Insight Tag and maintains records associating each Insight Tag with the data it transmits and the website in which it is embedded, so it has knowledge of the source and content of the transmissions. *Id*. ¶ 43. Additionally, Plaintiff alleges that LinkedIn knowingly uses the information for marketing purposes once it obtains it. *Id*. ¶¶ 23, 31–39. As just one of many examples in the Complaint, LinkedIn's website explicitly

[2] LinkedIn boasts that it intentionally designed the Insight Tag to collect detailed personal information and provide it to potential advertisers that they can use to target specific users or demographics. Compl. ¶¶ 20-25; *see also id*. ¶ 21 (LinkedIn's "marketing solutions allow advertisers to select specific characteristics to help them reach their ideal audience. The ads [users] see on LinkedIn are then targeted to provide content relevant to [the users].").

admits that its Insight Tag "can help you optimize your campaigns, retarget your website visitors, and learn more about your visitors." *Id.* ¶ 27.

Similar allegations were sufficient to satisfy the "knowingly" pleading requirement in *Gershzon*. *See* 2023 WL 5420234, at *10. Yet, despite Plaintiff's detailed factual allegations, LinkedIn attempts to evade responsibility by shifting the blame to the DMV for its use of the Insight Tag as LinkedIn intended. LinkedIn argues that its collection and use of personal information was merely a "passive failure to prevent the DMV from 'disclosing'" that information and not "voluntary action" required by the DPPA. Def. Br. at 13. That argument fails for at least three reasons.

***First***, LinkedIn's argument that it was a passive observer to the DMV's misconduct does not save it from Plaintiff's allegation that LinkedIn profitably "uses" Plaintiff's personal information after obtaining it. *See* Compl. ¶ 39. Of course, the DPPA prohibits knowing "use" of personal information. 18 U.S.C. § 2724(a).

***Second***, LinkedIn has no answer for Plaintiff's allegations that *LinkedIn* intentionally designed the Insight Tag to obtain detailed information about individuals for ad targeting purposes; *LinkedIn* affirmatively represents that Insight Tag can be used to target specific users based on the detailed information it collects; *LinkedIn* provided the Insight Tag to the DMV for the purpose of obtaining information for its own advertising purposes; and *LinkedIn* designed the Insight Tag to circumvent third party cookie settings. Plaintiff's allegations regarding LinkedIn's voluntary and intentional action are sufficient to plead its "knowing" conduct. *See Rand v. Travelers Indem. Co.*, No. 21-cv-10744, 2022 WL 15523722, at *6 (S.D.N.Y. Oct. 27, 2022) (decision to "auto-populate" protected information on website effected "knowing" disclosure); *Tison v. Arizona*, 481 U.S. 137, 150 (1987) (noting that a party "intends certain consequences when [it] knows that those consequences are substantially certain to result from [its] acts").

LinkedIn's citation to inapposite cases that did not involve voluntary action by a defendant confirms the weakness of its argument. In *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd*, 739 F. App'x 91 (3d Cir. 2018), the court found that that the non-actions of an employer accused of "disclosing" information that was stolen by "various, unknown

identity thieves" was not a knowing disclosure. *Id.* at 659. Similarly, in *Allen v. Vertafore, Inc.*, 28 F.4th 613 (5th Cir. 2022), the court found that the non-action of storing personal information on unsecured external servers that third parties accessed was not a knowing disclosure. *Id*. at 617.

Here, unlike the defendants in *Enslin and Allen* who were themselves crime victims, LinkedIn voluntarily created and distributed its Insight Tag to transmit pertinent information from third parties, including the DMV, for its own use. In doing so, LinkedIn had a responsibility to comply with the DPPA.

***Third***, LinkedIn argues that Plaintiff did not allege facts showing that LinkedIn knew that it was obtaining or using protected personal information from the DMV. Def. Br. at 14. But that is simply untrue. Plaintiff alleges detailed facts how LinkedIn: (a) knows that its Insight Tag is operating on the DMV's website (Compl. ¶ 43); (b) knows that the information the Insight Tag obtains comes from the DMV website because it contains a unique numerical identifier identifying the DMV as the source of the transmission (*id*. ¶ 42); (c) knows the type of information that its Insight Tag obtains because the Insight Tag works as it was designed (*id*. ¶¶ 34, 57, 59–60); and (d) uses the information the Insight Tag obtains for targeted advertising. *Id*. ¶¶ 39, 57. And, it doesn't matter whether LinkedIn was aware that the personal information it obtained and used was legally protected under the DPPA—the statute only requires that LinkedIn knowingly obtained or used Plaintiff's personal information, not that LinkedIn knew the legal status of that information. "Voluntary action, not knowledge of illegality or potential consequences, is sufficient to satisfy the mens rea element." *Senne v. Village of Palatine, Illinois*, 695 F.3d 597, 603 (7th Cir. 2012); *see also Pichler v. UNITE*, 542 F.3d 380, 396–97 (3d Cir. 2008) (discussing the term "knowingly" as it is used in the DPPA and finding that knowledge of illegality is not an element); *United States v. Hastie*, 854 F.3d 1298, 1305 (11th Cir. 2017) ("the [DPPA] does not require knowledge that [disclosure of personal information] is illegal").

Tellingly, the only case LinkedIn relies on in support of this argument does not analyze the DPPA's "knowingly" requirement at all. LinkedIn cites *Keogh v. Meta Platforms, Inc.*, No. 6:23-CV-5004-KDB, 2023 WL 9657924, at *2 (D.S.C. Feb. 14, 2023), and appends the following parenthetical: "expressing skepticism where the plaintiff did not 'describe or even allege that he

received any advertising from Meta concerning his DMV visit.'" Def. Br. at 14. However, the quoted language comes from the court's "Facts and Procedural History" section of the opinion and only describes the plaintiff's allegations that "Meta used information related to his online visit to the SCDMV 'to help it in its advertising efforts[.]'" *Keogh*, 2023 WL 9657924, at *2. Thus, the court was not "expressing skepticism" that Meta "knowingly" used personal information from the SCDMV.

### 2. <u>Plaintiff adequately alleges that LinkedIn obtained plaintiff's personal information "from a motor vehicle record."</u>

The DPPA defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). "Congress intended the DPPA to reflect the Privacy Act of 1974, which defines a 'record' as 'information about an individual that is maintained by an agency.'" *Andrews*, 932 F. 3d at 1260 (citation omitted).

LinkedIn argues that it "is alleged to have received contemporaneous information from DMV webpages Plaintiff visited about what Plaintiff typed into those pages, rather than any information from a record 'maintained by' the DMV." Def. Br. at 16. But that argument misconstrues Plaintiff's allegations because those allegations make clear that the information Plaintiff "typed into those pages" are not just fleeting website inquiries but the personal information maintained by the DMV through, among other things, Plaintiff's submission of her application for her DPP on the DMV website. *See* Compl. ¶¶ 6–7. In particular, Plaintiff describes in detail the application process for a DPP and renewal thereof through the DMV website, and how LinkedIn obtains the personal information she uses to complete that application every step of the way through URLs the DMV presented to her for her application and *after* she entered her personal information into the online forms and submitted them to the DMV. *Id*. ¶¶ 49–57. And since Plaintiff was *renewing* her DPP in 2023, *id*. ¶ 6, the DMV already maintained a record of her initial approved application in its database. Therefore, Plaintiff's allegations are sufficient to state a claim. *See Gershzon*, 2023 WL 5420234, at *8 (holding that similar allegations satisfy the "from a motor vehicle record" pleading requirement).

LinkedIn's reliance on *Keogh* here is, again, misplaced. In *Keogh*, the court found that the SCDMV website was not a "record" under the DPPA because it merely "provides information to the public and perhaps a means to communicate with the agency or link to its services" and plaintiff did not allege that the website "even maintains a record of the identity of those who visit its website.'" 2023 WL 9657924, at *5, fn.5. In contrast, Plaintiff alleges that LinkedIn obtained her protected personal information from the DMV during the renewal of Plaintiff's disability placard (Compl. ¶ 7), which the DMV necessarily would have maintained as a legal record. Plaintiff also alleges that LinkedIn obtains personal information from motor vehicle records "maintained" by the DMV. *Id*. ¶¶ 41 57, 93, 96. As such, the allegations here are more like those in *Gershzon*, in which the plaintiff alleged that "the DMV maintained [his personal] information[.]" *Gershzon*, 2023 WL 5420234, at *8. The *Keogh* court itself recognized that the lack of allegations regarding whether the DMV "maintained" the information was what distinguished it from *Gershzon* on this point and led to a different conclusion. *Keogh*, 2023 WL 9657924, at *5.[3] Accordingly, this Court should follow the reasoning of *Gershzon*.

LinkedIn also argues that DPPs are not motor vehicle records because they "relate solely to *parking privileges*, not an operator's permit." Def. Br. at 15 (emphasis in original). Judge Illston flatly rejected an identical argument in *Gershzon*, holding:

> A disability parking placard (and an application for such a placard) does pertain to a motor vehicle operator's permit. If a person with a disability is licensed to drive in California and requires an accommodation in the form of a disabled parking placard, the person must apply for such a placard. Disability parking placards are only used in connection with driving, unlike a voter registration form which has no connection to driving. Thus, a disabled parking placard "pertains to a motor vehicle operator's permit."

*Gershzon*, 2023 WL 5420234, at *8.

Notably, LinkedIn does not explain *why* parking privileges do not "pertain to a motor vehicle's operator's permit." Instead, it simply states that disabled parking placards relate to

[3] For these reasons, LinkedIn's later argument that *Gershzon* is distinguishable falls flat. *See* Def. Br. at 18–19.

parking rather than driving without elaboration or citation to support.[4] That is not enough, because parking unquestionably "pertains to" driving. As *Keogh* recognized, "'[p]ertain to' or 'pertain' is a broad term which means with 'reference to' or 'related to[.]'" *Keogh*, 2023 WL 9657924, at *6, n.1. Parking accommodations are necessarily "related to" driving because parking is an action that can only be taken in connection with driving, and thus a DPP is "related to" the operation of a motor vehicle.[5]

Accordingly, Plaintiff has sufficiently alleged that a DPP "pertains to a motor vehicle's operator's permit."

**3. <u>LinkedIn's conduct is not "permitted" by the DPPA.</u>**

LinkedIn also argues that its conduct is permitted by 18 U.S.C. § 2721(b)(1), which permits obtaining personal information where such conduct assists "any government agency . . . in carrying out its functions." Def. Br. at 17. LinkedIn's argument is defective. At the outset, Plaintiff alleges that LinkedIn does not obtain or use information for any permissible purpose (Compl. ¶¶ 63, 71, 97), and LinkedIn's argument to the contrary raises a question of fact not appropriate for resolution at the pleading stage. *See Gershzon*, 2023 WL 5420234, at *9 ("Whether Meta in fact had a permissible purpose in obtaining and using personal information from the DMV website raises factual questions to be resolved on summary judgment or at trial."); *Knowlton v. City of Wauwatosa*, No. 20-cv-1660, 2023 WL 2951425, at *1 (E.D. Wis. Apr. 14, 2023).

Even if the Court were to address the argument now, the Court should reject it. LinkedIn does not identify with specificity the "functions" that it purportedly assists the DMV with. It

---

[4] LinkedIn seemingly relies on *Keogh* in support of its argument on this point. Def. Br. at 15–16. But that reliance is misplaced because *Keogh* never analyzed whether a DPP (or any parking permit) "pertains to a motor vehicle's operator's permit."

[5] To the extent that the Court grants LinkedIn's Request for Judicial Notice of Exhibit C to the declaration in support (ECF 22-3) over Plaintiff's objection, Plaintiff notes that as further evidence of the intertwined nature of driving and parking that the DMV offers disabled person license plates that provide *the same privileges as a DPP*, but unlike a DPP, they must be permanently affixed to a single vehicle. *Id.* at p.1. It would stretch the bounds of reason to argue that disabled person *license plates* affixed to a motor vehicle are not related to a motor vehicle's operator's permit, and DPPs are functionally identical to those plates.

merely states that "[a]s a government agency organized to serve a public function, ***common sense dictates*** that the DMV installed the Insight Tag for a legitimate government purpose, ***such as*** understanding the visitors to its website and improving its advertising of its services." Def. Br. at 17. That's all—LinkedIn provides no authority holding that "understanding the visitors to its website and improving its advertising of its services" is a DMV "function" under § 2721(b)(1). An unsupported assertion about the function of the DMV is insufficient to establish an exception to liability under the DPPA in the face of Plaintiff's contrary allegations.

LinkedIn's similar reliance on the First Circuit's decision in *Downing* is unpersuasive because, as Plaintiff has already explained, *Downing* was decided on entirely different facts. As pertinent here, on appeal, the court found a legitimate government purpose in a vendor sending renewal notices on behalf of the State and the contract between the RMV and vendor specified the governmental purposes for the vendor's actions. *Downing*, 682 F. 3d at 20, 24–25.

Finally, *Keogh*—which LinkedIn argues is "directly on point"—is actually fatal to its argument. *Keogh* held that § 2721(b)(1) of the DPPA did not apply in that case because "whether or not the DMV could assert one or more 'permissible uses' with respect to its governmental use of Meta's services, ***that does not allow Meta to avoid compliance with the statute with respect to its own conduct.***" *Keogh*, 2023 WL 9657924 at *7 (emphasis added). That holding applies with the same force here, where LinkedIn collects personal information from motor vehicle records and uses it to "monetize[] the collected data through the sale of ads" for its own use in providing targeted advertisements to entities other than the DMV. *See* Compl. ¶¶ 34–35, 57. Therefore, even if LinkedIn had described a legitimate government function it assisted the DMV with, § 2721(b)(1)'s does not apply because there is no permissible purpose for *LinkedIn's* use of the personal data to generate massive advertising revenue.

Accordingly, Plaintiff has adequately stated her DPPA claim.

### C. Plaintiff Adequately Pleads Her CIPA Claim.

CIPA targets "the substantive intrusion that occurs when private communications are intercepted by someone who does not have the right." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020). CIPA's Legislative Declaration and Intent describes how such

protection is necessary given "that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

As relevant here, the second clause of § 631(a) creates liability for any person who "*willfully and without the consent of all parties* to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of" communications. The third clause creates liability for any person who "uses, or attempts to use, in any manner . . ., or to communicate in any way, *any information so obtained*," or who even agrees to do so. *See id.* (emphasis added); *Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016).

Plaintiff alleges that LinkedIn violated the second and third clauses of CIPA. LinkedIn attacks the adequacy of Plaintiff's allegations, but its arguments miss the mark.

**1. <u>Plaintiff adequately alleges that LinkedIn is a "third-party eavesdropper," not a party to the relevant communications.</u>**

LinkedIn argues that it cannot be liable for any violation of Cal. Penal Code § 631(a) because, as a mere vendor, it acts as an "extension" of the DMV and therefore was a party to Plaintiff's alleged communications with the DMV. *See* Def. Br. at 20–23. But this argument relies entirely on LinkedIn's erroneous contention that Plaintiff does not allege that LinkedIn used the private communications for its own financial purposes. Without that contrived factual scenario, the cases LinkedIn relies upon are inapposite.

Specifically, LinkedIn relies on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), describing it as "the leading case on this topic," which held that a third party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the client to analyze their data" but had not "intercepted and used the data itself." *Id*. at 832. Again, here, Plaintiff alleged that LinkedIn intercepted *and used the data itself*. For example, Plaintiff alleges that LinkedIn "feeds the vast quantities of personal data obtained from

the LinkedIn [Insight Tag] into its Marketing Solutions advertising systems" in order to "monetize[] the collected data through the sale of ads" and for its own use in providing targeted advertisements to entities other than the DMV, collecting billions of dollars in the process. *Id*. ¶¶ 34–35, 57; *see also* § III.B.1. Therefore, Plaintiff's allegations are more in line with those in the cases *Graham* distinguished, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), and *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019), where the advertisers "were independent parties who mined information from other websites and sold it[.]" *Graham*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).

Even if Plaintiff had not alleged that LinkedIn used the data from the DMV for its own purposes, LinkedIn's argument would still be defective. Indeed, as Judge Breyer held in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), the reasoning in *Graham* and its progeny is flawed because they read a "use" requirement into the second prong of § 631(a), swallowing the third prong in the process. *See id.* at 900 (noting that "the third prong of the statute already penalizes 'use'"). Judge Breyer also held that *Graham* ignored the California Supreme Court's stated rationale for § 631: "the right to control the nature and extent of the firsthand dissemination of [their] statements." *Id.* at 899 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 361–62 (1985)).

Judge Breyer concluded in *Javier* that a software provider could only avoid being a third party eavesdropper under the statute if: (1) it "does not have the capability to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner); or (2) the ubiquity of services . . . effectively renders it party to the 'firsthand dissemination' of [the plaintiff's] information to [the website]." *Javier*, 649 F. Supp. 3d at 899.[6]

LinkedIn acknowledges, as it must, *Javier's* break with *Graham's* reasoning, but contends that even under *Javier's* test, Plaintiff failed to "specifically allege that LinkedIn was ***capable*** of

[6] LinkedIn does not argue that it falls within the second exception set forth in *Javier*.

using data from the DMV for its own independent marketing or advertising purposes" because the allegations Plaintiff set forth are "generic." Def. Br. at 22. But if Plaintiff's allegations described above fall short of alleging that LinkedIn does use data from the DMV for its own purposes—they do not—they surely sufficiently allege that capability. *See* Compl. ¶¶ 20–27, 22 n.10, 24 n.12, 34–39, 41–59. Plaintiff's allegations on this point easily distinguish this case from the cases LinkedIn cites. *See* Def. Br. at 22–23.[7]

### 2. <u>Plaintiff adequately alleges a violation of § 631's second clause.</u>

Contrary to LinkedIn, Plaintiff has plausibly alleged that LinkedIn: (1) "read or attempted to read" her "communications," (2) while they were in transit, and (3) did so "willfully." Def. Br. at 23–25.

***First***, Plaintiff alleged facts plausibly showing that LinkedIn read, or attempted to read or to learn, the contents of her communications with the DMV to provide advertisers with detailed information about individuals for targeted advertising purposes. As explained above, LinkedIn's business model is to harvest data from communications that it obtains via the Insight Tag and that it uses what it learns, among other things, "to make extremely personal inferences about individuals." Compl. ¶¶ 20–27, 22 n.10, 24 n.12, 34–39. Further, Plaintiff alleges that she visited the DMV website and applied for a disability placard via her smartphone; the Insight Tag is embedded on and throughout the DMV website; the Insight Tag transmits each page visited on the website; and LinkedIn obtained information showing that Plaintiff communicated with the DMV and renewed her disability placard. *See, e.g.*, *id*. ¶¶ 6–7, 40–61, 57. "This type of information is substantive and personal, as it shows that [Plaintiff] has a disability" and "constitutes 'contents' under CIPA." *Gershzon*, 2023 WL 5420234 at *13. Once LinkedIn

---

[7] *See Swarts v. Home Depot, Inc.*, No. 2023-cv-0995-JST, 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023) ("Nowhere in Swarts's complaint does he allege that LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot"); *Valenzuela v. Super Bright LEDs Inc.*, No. 23-cv-01148-JAK, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) ("It is not alleged that the software could be used for data analytics or marketing/advertising by persons other than Super Bright"); *Yockey v. Salesforce, Inc.*, No. 22-cv-09067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) ("The[] allegations do not support a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to Kaiser.").

collected data about Plaintiff, it also learned the contents of that communication, it used that information to create targeted advertising campaign. Compl. ¶ 71.

Plaintiff's allegations go well beyond those made in *James v. Allstate Ins. Co.*, No. 3:23-cv-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023). The plaintiff there alleged only that the defendant stored and could access his data, which was "insufficient to support a plausible interference [the defendant] attempted to read or learn the contents of the communication while in transit." *Id*. at *3. Drawing all inferences in Plaintiff's favor, as the Court must on a motion to dismiss, these allegations amount to a plausible claim that Defendant intercepted Plaintiff's communications and harvested data from them, which sufficiently alleges the "reading, or attempting to read or to learn" element. *See Valenzuela*, 2023 WL 5266033, at *4.

***Second***, LinkedIn contends the Complaint's allegations of intercepted communications by the Insight Tag while "in transit" are conclusory. This argument "ignores the plain language of section 631." *See Ribas*, 696 P.2d at 640. Section 631(a) is written in the disjunctive. Thus, it penalizes third parties who intercept communications "while the communication[s] [are] either 'in transit' *or [are] 'being sent from' [or] 'received at' a place within this state*." *Ribas*, 696 P.2d at 640 (emphasis added); *Revitch*, 2019 WL 5485330, at *2 ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis," because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications").

Here, there can be little doubt that Plaintiff's communications with the DMV were being sent from and received in California because she is a *California* resident communicating with the *California* DMV. As such, she satisfies the requirements of section 631.

Plaintiff also satisfies section 631 because her communications were intercepted "in transit" because the Insight Tag collected the contents of her communications with the DMV as soon as she submitted her renewal application. Compl. ¶¶ 45–56 (describing how and when LinkedIn obtains communications sent to and received by the DMV); *see id*. ¶ 57 ("As is clear from the foregoing images, using the [Insight Tag], LinkedIn permits the DMV to transmit users' email addresses, disability placard information, and other identifying information about users' activity on the DMV website. LinkedIn is also learning the contents of communications between

website users and the DMV."); *see also Revitch*, 2019 WL 5485330, at *2 ("communication by pressing a button on his mouse or a key on his keyboard . . . [e]ven if the browser caused a parallel signal to be sent . . . that intervention happened while the signal was already in transit"). Plaintiff's allegations are to be taken as true at this stage of the case. *See, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014).

***Third*****,** Plaintiff has alleged willful conduct. The very purpose of the Insight Tag is to gather highly personal information which LinkedIn can use for targeted advertising based on specific user characteristics. Compl. ¶¶ 34–39. Furthermore, LinkedIn is aware that the Insight Tag is collecting and transmitting Plaintiff's personal information, and that "LinkedIn intended to learn, and did learn, the meaning of the contents of Plaintiff's and Class Members' communications . . . ." *Id.* ¶¶ 41–59, 105, 109. In short, Plaintiff alleges that LinkedIn read communications and learned of their contents intentionally and by design, not fortuitously or inadvertently. Similar allegations were sufficient in *Gershzon*, which found that they raised a factual question. 2023 WL 5420234, at *11.

LinkedIn's argument that Plaintiff's allegations are conclusory conspicuously cites to only two paragraphs of the Complaint, neither of which contain Plaintiff's allegations that LinkedIn's conduct was willful. *Compare* Def. Br. at 24 *with* Compl. ¶¶ 98, 105. And these allegations are far more detailed than in *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002-SPG-E, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023), on which LinkedIn relies.

**3. <u>Plaintiff adequately alleges a violation of § 631(a)'s third clause.</u>**

LinkedIn's argument that "there are no specific allegations related to the data allegedly obtained from the DMV" is belied by a cursory reading of Plaintiff's Complaint. *See* Def. Br. at 25. Plaintiff alleges that LinkedIn violated the third clause of § 631(a) by impermissibly "us[ing]" the data it obtained from the DMV. Compl. ¶¶ 1, 7, 23; *see also* ¶ 57 ("LinkedIn permits the DMV to transmit users' email addresses, disability placard information, and other identifying information about users' activity on the DMV website. LinkedIn is also learning the contents of communications between website users and the DMV. This enables advertisers to target users

with relevant content or advertisement using the personal information and data that LinkedIn harvested from the driving records maintained by the DMV and from the contents of website users' communications with the DMV."); ¶ 106 ("LinkedIn uses the information it obtains and collects from the DMV in order to create profiles, categorize individuals, and derive information about them in order to sell its customers the ability to create targeted marketing and advertising."). And, as explained above, LinkedIn provided the Insight Tag to the DMV and instructed the DMV on how to install it so the DMV *and LinkedIn* could financially benefit from this data harvesting through ad targeting. *Id.* ¶¶ 21–28, 28, 106. These allegations lead to a plausible inference that LinkedIn uses the information it gathers for its own benefit in violation of the third clause. *See Valenzuela*, 2023 WL 5266033, at *6.

Accordingly, Plaintiff stated claims under CIPA's second and third clauses.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that the DMV is not a "required party" under Rule 19, that Plaintiff adequately pleaded her DPPA and CIPA claims, and deny LinkedIn's motion in its entirety.

In the alternative, Plaintiff respectfully requests leave to amend, which is to be granted with "extreme liberality," *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018), and unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

Date: April 23, 2024

Respectfully submitted,

By: *<u>/s/ Roland S. Tellis</u>*

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**

15910 Ventura Blvd., Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Attorneys for Plaintiff and the Putative Class*