COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
MORGAN E. LEWIS (322205)
(melewis@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JACQUELINE JACKSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:24-cv-00812-PCP

**DEFENDANT LINKEDIN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Date: June 6, 2024
Time: 10:00 a.m.
Dept: Courtroom 8, 4th Floor
Judge: P. Casey Pitts
Trial Date: TBD
Date Action Filed: February 9, 2024

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | PLAINTIFF FAILED TO JOIN A REQUIRED PARTY. | | 1 |
| | A. | *Downing v. Globe Direct* Is Not Distinguishable and Requires Dismissal | 1 |
| | B. | The DMV is a Required Party Under Rule 19(a)(1). | 3 |
| | | 1. The DMV is Required Under Rule 19(a)(1)(A) Because the Court Cannot Grant Complete Relief in its Absence. | 3 |
| | | 2. The DMV Has an Interest in the Litigation That May Be Impaired in Its Absence Under 19(a)(1)(B)(i). | 4 |
| | | 3. In the DMV's Absence, LinkedIn May be Subject to Inconsistent Obligations. | 5 |
| | C. | The DMV's Absence Warrants Dismissal Pursuant to Rule 19(b). | 6 |
| III. | PLAINTIFF'S ARGUMENTS DO NOT ESTABLISH LINKEDIN'S DPPA LIABILITY. | | 6 |
| | A. | The Complaint Does Not Allege LinkedIn's Knowing Obtainment or Use. | 6 |
| | B. | The Challenged Data Do Not Come "From a Motor Vehicle Record." | 9 |
| | C. | The Complaint Fails to Allege LinkedIn's Use for an Impermissible Purpose. | 10 |
| IV. | NONE OF PLAINTIFF'S ARGUMENTS SAVE HER CIPA CLAIMS FROM DISMISSAL. | | 11 |
| | A. | Plaintiff Has Failed to Plead LinkedIn is a Third-Party Eavesdropper. | 11 |
| | B. | Plaintiff's Second Clause CIPA Claim Fails for Myriad Independent Reasons. | 13 |
| | C. | Plaintiff's Claim Under CIPA's Third Clause is Also Doomed. | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.D. v. Cal. Highway Patrol*,
2009 WL 733872 (N.D. Cal. Mar. 17, 2009) ..... 4

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) ..... 8, 9

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) ..... 2, 6

*Am. Marine Corp. v. Blue Shield of Cal.*,
2011 WL 1399244 (N.D. Cal. Apr. 13, 2011) ..... 5

*Andrews v. Sirius XM Radio, Inc.*,
932 F.3d 1253 (9th Cir. 2019) ..... 9

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ..... 13, 14

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) ..... 6

*E.E.O.C. v. Peabody*,
610 F.3d 1070 (9th Cir. 2010) ..... 4

*Enslin v. Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) ..... 8, 9

*Esparza v. Gen Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ..... 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..... 12, 13

*Gaston v. LexisNexis Risk Sols., Inc.*,
483 F. Supp. 3d 318 (W.D.N.C. 2020) ..... 11

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-CV-08002, Dkt. 19 ..... 15

*James v. Allstate Ins. Co.*,
No. 3:23-cv-01931, Dkt. 34 ..... 14

*Kescoli v. Babbitt*,
101 F.3d 1304 (9th Cir. 1996) ..... 5

*Northrop Corp. v. McDonnell Douglas Corp.*,
705 F.2d 1030 (9th Cir. 1983) ..... 3

*Pickering v. FCA US LLC*,
2021 WL 5968454 (C.D. Cal. Apr. 12, 2021) ..... 4

*Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*,
321 F.R.D. 475 (D.P.R. 2017) ..... 4

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827, Dkt. 43 ..... 12

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ..... 14

*Tinoco v. San Diego Gas & Elec. Co.*,
327 F.R.D. 651 (S.D. Cal. 2018) ..... 4

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ..... 14

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ..... 12

*Winns v. Exela Enter. Sols., Inc.*,
2021 WL 5632587 (N.D. Cal. Dec. 1, 2021) ..... 5

*Yockey v. Salesforce, Inc.*,
2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ..... 12

**Statutes**

18 U.S.C. § 2723 (b) ..... 5

18 U.S.C. § 2724 ..... 3

18 U.S.C. § 2725 ..... 2, 10

**Other Authorities**

Rule 12(b)(6) ..... 1

Rule 12(b)(7) ..... 1

Rule 19 ..... *passim*

## I. INTRODUCTION

LinkedIn's Motion to Dismiss ("Motion") established that Plaintiff's Complaint cannot go forward for a host of reasons. Plaintiff failed to join a required party and the entity actually responsible for her alleged injuries—the California DMV.[1] Among other defects, Plaintiff also failed to plead LinkedIn's "knowing" obtainment of personal information from "a motor vehicle record" under the DPPA and failed to plead a "willful," non-party interception of a communication "in transit" under CIPA.

Plaintiff's Opposition does not adequately address any of these flaws and, instead, rests on clear misstatements of her allegations and attempts to ignore facts Plaintiff does not want to admit, but cannot deny. The Opposition repeatedly asserts that LinkedIn uses Insight Tag information for its own, impermissible advertising purposes, and not just to serve the DMV's account. Yet nothing in the Complaint even suggests this is true. Her allegations deal solely in generalities and quote materials on how an Insight Tag can work, but she never specifically alleges that LinkedIn used any information from the DMV, much less information related to her disability status.

Conversely, LinkedIn's Motion demonstrates that every alleged transmission of personal information at issue here results from ***the DMV's choice*** to install an Insight Tag on its disability parking placard ("DPP") webpages and ***the DMV's configuration*** of its URLs to include allegedly sensitive data—all in contravention of LinkedIn's explicit contractual prohibitions. Plaintiff never disputes or even addresses these facts. She ignores them and hopes the Court will overlook them.

Plaintiff's attempts at sleight of hand are fatal to her rebuttals to LinkedIn's arguments. Her claims cannot go forward without the DMV under Rule 12(b)(7) and, because her DPPA and CIPA claims are premised on conclusory boilerplate allegations, rather than specific alleged facts, they cannot survive under Rule 12(b)(6). The Court should dismiss this action in its entirety.

## II. PLAINTIFF FAILED TO JOIN A REQUIRED PARTY.

### A. *Downing v. Globe Direct* Is Not Distinguishable and Requires Dismissal.

Realizing that *Downing v. Globe Direct*, is fatal to her claims, Plaintiff devotes two pages of her brief to characterizing it as "inapposite." 806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd*, 682

[1] Defined terms throughout this brief have the same meaning as in the Motion.

F.3d 18 (1st Cir. 2012). *Downing* involved DPPA claims brought against a third-party vendor (Globe Direct) that facilitated a state motor vehicle agency's advertising activities. The decision is directly on point and the Court should refuse Plaintiff's plea to ignore it.

***First***, Plaintiff argues *Downing* involved disclosure of names and addresses rather than "highly personal disability information." Opp. at 5. This distinction is irrelevant; the DPPA equally applies to these forms of information, if taken from a DMV record. 18 U.S.C. § 2725.

***Second***, Plaintiff contends that LinkedIn's alleged conduct here is different from Globe Direct's because LinkedIn used Plaintiff's information for its "own targeted advertising purposes." Opp. at 6. Plaintiff does not explain why this consideration is relevant to the Rule 19 analysis (it is not). In any case, Plaintiff has no factual allegations to support this flawed theory. As discussed in LinkedIn's opening motion and in more detail below, none of Plaintiff's allegations show that LinkedIn acted as anything more than a service provider that "enables advertisers to target users with relevant content[.]" Compl. ¶ 57; *infra* SectionIV.A.; MTD at 3:12-21.

***Third***, Plaintiff argues that *Downing* is distinguishable because an injunction "would [have] effectively invalidate[d] Massachusetts's contract" by prohibiting conduct that the RMV required under that contract. Opp. at 6. Plaintiff claims that no such issue is present here because the DMV's sharing of personal information was not "called for" by the Ads Agreement and thus would not "effectively invalidate" that agreement. *Id.* Plaintiff cites no authority and has no plausible explanation for why this claimed difference matters under Rule 19. In both cases, a judgment for the plaintiff would make the contract "less valuable" to the absent party, and "may . . . as a practical matter impair or impede" the absent party's interest in the contract, and its ability to protect that interest. *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022-23 (9th Cir. 2002); Rule 19(a)(1)(B)-(B)(i). This is all that is needed to show an absent party is required under Rule 19(a). Even if the distinction were legally significant, it is illusory. For example, LinkedIn could terminate services to the DMV for this violation. Ad Agreement § 2 ("LinkedIn may, in its sole discretion, discontinue, modify, cancel or terminate any part or all of the Ad Services").

***Fourth***, Plaintiff perplexingly argues *Downing* is distinguishable because this case involves the statutory provision of the DPPA concerning illicit conduct by third parties, rather than the

DMV. This makes no sense. *Downing* involved the same section of the DPPA at issue here, 18 U.S.C. § 2724, and also addressed the conduct of a third-party vendor, Globe Direct, not a DMV.[2]

### B. The DMV is a Required Party Under Rule 19(a)(1).

#### 1. The DMV is Required Under Rule 19(a)(1)(A) Because the Court Cannot Grant Complete Relief in its Absence.

LinkedIn's Motion argues that the Court cannot afford Plaintiff "complete relief" in the DMV's absence because the Court can neither completely address Plaintiff's injury nor LinkedIn's right to redress from the DMV. Plaintiff's Opposition fails to refute either of these arguments.

***First***, LinkedIn explained that absent joinder, the DMV is free to contract with other third parties for the same advertising services at issue in this case—meaning Plaintiff may well continue to suffer her alleged injuries from the DMV's alleged malfeasance. Mot. at 6-7. In response, Plaintiff contends that she can receive "complete relief from *LinkedIn* for the injuries it caused." Opp. at 8. This argument ignores the Ninth Circuit authority establishing that courts must look beyond the relief a plaintiff requests and consider whether joinder is required to fully address plaintiff's claimed injury. Mot. at 6 (collecting authorities). Plaintiff's only other rejoinder is to blithely characterize the risk of future litigation against the DMV as "hypothetical," ignoring that *Gershzon* already involves the same conduct at issue here. Opp. at 8. The complete relief analysis is "concerned with . . . *precluding multiple lawsuits on the same cause of action*," and plainly, that interest is served here. *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983) (emphasis added) (citing *Advisory Committee's Note,* 39 F.R.D. 89, 91 (1966)).

***Second***, Plaintiff does not dispute that this Court is unable to provide complete relief to LinkedIn, and instead argues that "a party's right to indemnity against a third party is not the proper basis for a finding that the third party is 'required' under Rule 19." Opp. at 8. Relying exclusively on inapposite district court cases, Plaintiff fails to effectively distinguish the Ninth Circuit's dismissal of an action on these exact grounds.[3] Mot. at 7 (citing *E.E.O.C. v. Peabody*, 610 F.3d

---

[2] Plaintiff also argues that *Downing* is distinguishable because the alleged conduct fell within the "permissible uses" under the statute, but it does here as well. Opp. at 5-6; *Infra* Section III.C.

[3] None of Plaintiff's authorities support her misguided argument that contractual indemnity is "not a proper basis" for a finding that a third party is required under Rule 19. Two of Plaintiff's cited

1070, 1081 (9th Cir. 2010)). Plaintiff argues *E.E.O.C.* is distinguishable because the defendant there had no alternative forum to pursue indemnity, whereas according to Plaintiff, LinkedIn can bring a contractual indemnity claim in state court.[4] Plaintiff is wrong. Nothing in *E.E.O.C.* supports that interpretation and another court has applied the decision without requiring the defendant to show no alternative forum was available for pursuing indemnification. *Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 321 F.R.D. 475, 479 (D.P.R. 2017) (applying *E.E.O.C.* and concluding that absent party's duty to indemnify defendant "alone merits a finding that [absent party required under] Rule 19(a)(1)(A)"). This reasoning is consistent with Rule 19's plain text, which concerns only whether "***the court*** can[] accord complete relief among existing parties," not whether other courts or state courts can afford such relief. Rule 19(a)(1)(A).

**2. The DMV Has an Interest in the Litigation That May Be Impaired in Its Absence Under 19(a)(1)(B)(i).**

Plaintiff does not dispute that the DMV may be a required party under Rule 19(a)(1)(B)(i) if the Court's judgment could establish that the DMV breached the Ads Agreement. Opp. at 9. Instead, Plaintiff argues she can prove a DPPA violation without implicating the Ads Agreement. *Id.* Not so. Plaintiff concedes that, to prevail on her DPPA claim, she must show that the DMV transmitted "personal information" concerning disabilities to LinkedIn. *Id.* The Ads Agreement prohibits the DMV from "transfer[ring] to LinkedIn any data" that constitutes "medical, financial, or other Sensitive Data" via Insight Tag. Ads Agreement § 5. Plaintiff nowhere explains how she can show that LinkedIn received "personal information" without ***also*** establishing that the DMV breached its contractual obligation not to transmit such information to LinkedIn. Thus, Plaintiff has done nothing to refute LinkedIn's argument, particularly given that Rule 19(a)(1)(B) asks only if the absent party's interest ***may*** be impeded by the Court's determination. LinkedIn need not show

---

authorities make only a passing reference to this issue *in dicta*. *A.D. v. Cal. Highway Patrol*, 2009 WL 733872, at *2 (N.D. Cal. Mar. 17, 2009) (pre-dating *E.E.O.C.*; indemnification not at issue in Rule 19 motion); *Pickering v. FCA US LLC*, 2021 WL 5968454, at *1 (C.D. Cal. Apr. 12, 2021) (no Rule 19 motion made). Further, *Tinoco v. San Diego Gas & Elec. Co.*, 327 F.R.D. 651, 658-59 (S.D. Cal. 2018) (citation omitted) ignores *E.E.O.C.* and only establishes that defendant's right to indemnification by the absent party is not, ***standing alone***, "sufficient" to satisfy Rule 19(a)(1)(A).

[4] Plaintiff does not establish that LinkedIn can pursue contractual indemnity claims in state court, and instead incorrectly asserts that LinkedIn "admits" it can bring its indemnification claim outside of this litigation. It did not. Opp. at 8-9.

that impediment is a certainty.[5]

Plaintiff criticizes as "fatally conclusory" LinkedIn's argument that this lawsuit may interfere with the DMV's sovereign capacity to negotiate contracts and perform key functions. Opp. at 9. However, Plaintiff cites no case law of her own and ignores LinkedIn's numerous authorities establishing that a public entity has an interest in litigation that may impact its contractual obligations and other rights. Mot. at 9-10; *Kescoli v. Babbitt,* 101 F.3d 1304, 1310 (9th Cir. 1996) (absent party indispensable where the action "could affect [absent parties'] interests in their lease agreements and the ability to obtain the bargained-for royalties and jobs"). Instead, Plaintiff argues that because she has only sued LinkedIn, she is not seeking any relief that would affect the DMV's ability to "contract[] for advertising services with other entities." Opp. at 9. This argument ignores that Plaintiff is asking the Court to find LinkedIn liable for ***the DMV's*** alleged conduct—*i.e*., installing the Insight Tag and sharing impermissible URLs—which would of course impact the DMV's ability to procure other vendors for similar services. Opp. at 9. Nor does Plaintiff address that such a finding may impair the DMV in other respects, including by subjecting it to attorney general enforcement for potential DPPA violations. 18 U.S.C. § 2723 (b). Thus, this litigation may hamper the DMV's ability to "govern effectively and efficiently" in myriad ways. *Downing*, 806 F. Supp. 2d. at 467 n.40 (internal quotations and citation omitted).

### 3. In the DMV's Absence, LinkedIn May be Subject to Inconsistent Obligations.

Plaintiff next argues that LinkedIn will not be subject to inconsistent obligations because it could "of course . . . modify the Insight Tag to prevent its own receipt and use of personal information." Opp. at 10. The Court should reject this argument, which is based solely on supposition, and is nowhere alleged in the Complaint. *Am. Marine Corp. v. Blue Shield of Cal.*, 2011 WL 1399244, at *4 (N.D. Cal. Apr. 13, 2011) (on motion to dismiss "[a] district court cannot consider 'new' facts, *i.e.*, facts not alleged in the complaint, asserted in plaintiff's opposition papers.") Indeed, Plaintiff's claim that "LinkedIn alone controls its own actions" is inconsistent

[5] Plaintiff fails to address LinkedIn's argument that her CIPA claim also implicates whether LinkedIn breached the Ads Agreement, Mot. at 8-9, and thus concedes the point. *Winns v. Exela Enter. Sols., Inc.*, 2021 WL 5632587, at *3 (N.D. Cal. Dec. 1, 2021).

with her own concession that LinkedIn merely "instructs website owners on how to embed Insight Tag throughout their websites," Opp. at 3, 10.

### C. The DMV's Absence Warrants Dismissal Pursuant to Rule 19(b).

LinkedIn's motion explains why dismissal is warranted under all four Rule 19(b) factors. As to the first three factors, Plaintiff merely refers back to, or repeats, her arguments in Rule 19(a)(1)(A), which LinkedIn addressed above.[6] As to the fourth factor, which asks "whether plaintiff would have an adequate remedy if the action were dismissed for nonjoinder," Plaintiff argues that she will have no adequate remedy *against LinkedIn* if the action were dismissed. However, Plaintiff acknowledges, as she must, that the Attorney General is empowered "to seek the DMV's compliance with the law[.]" Opp. at 11. An enforcement action against the DMV would necessarily prevent LinkedIn from receiving sensitive information. Opp. at 11; Reddy Decl. Ex. C.

Further, as LinkedIn explained in its Motion, the fourth factor weighs in favor of dismissal where sovereign immunity is present even where, unlike here, plaintiff has no alternative remedy. Mot. at 11. Plaintiff does not argue otherwise, and instead contends the other three factors may sometimes outweigh this consideration. Opp. at 11-12. Plaintiff cites no authority to support her argument, and thus offers no basis for this Court to depart from the Ninth Circuit's "regular" practice of holding that an absent party's sovereign immunity weighs in favor of dismissal. *Am. Greyhound Racing*, 305 F.3d at 1025.[7]

## III. PLAINTIFF'S ARGUMENTS DO NOT ESTABLISH LINKEDIN'S DPPA LIABILITY.

### A. The Complaint Does Not Allege LinkedIn's Knowing Obtainment or Use.

***First,*** Plaintiff argues that LinkedIn must have knowingly obtained the challenged data by pointing to her conclusory assertion that "personal information was obtained 'knowingly' under the DPPA because LinkedIn knows that information and communication . . . are transmitted to LinkedIn[.]" *See* Opp. at 13 (citing Compl. ¶ 58). She further relies on the claims that: (1) LinkedIn

---

[6] Plaintiff does not dispute that the DMV cannot be joined due to its sovereign immunity.

[7] Plaintiff attempts to distinguish *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1163 (9th Cir. 2002), arguing that the Plaintiff there had other "options" because the E.E.O.C. had intervened in the action and the plaintiff could have brought the case in another forum. Opp. at 11. Plaintiff misstates the case. The court had denied the E.E.O.C.'s motion to intervene, *Dawavendewa*, 276 F.3d at 1163, and it did not find the plaintiff had an alternative forum, stating only that he *may* have an alternative forum. *Id.* at 1162-63.

designed the Insight Tag to transmit information and (2) allowed the DMV to use its Insight Tag. *See id.* Assuming *arguendo* that claims of mere receipt suffice to allege obtainment—they do not—Plaintiff fails to allege the requisite *mens rea* with respect to ***any*** action that violates the DPPA.

Accepting all allegations as true, the DMV: (1) installed the Insight Tag on pages related to disability placards and (2) designed its URLs to contain allegedly personal information. Plaintiff does not and cannot allege that LinkedIn had any role in this, nor does she specifically allege that LinkedIn was aware that the DMV was transmitting the challenged data. But, were it not for the DMV's intervening missteps, there would be no colorable DPPA violation. Thus, Plaintiff's mere allegation that LinkedIn created and offers the Insight Tag is not enough.

***Second,*** Plaintiff asserts that she adequately alleged ***knowing use*** of her information. *E.g.*, Opp. at 13. She did not. Her citations to general resources about how the Insight Tag can work do not bear on the DMV's individual implementation or establish that LinkedIn was combing URL text for personal information. The mere fact that an Insight Tag appears on a webpage does not show that LinkedIn used any information from that page for its own purposes, much less any information related to any person's disability status. Absent such allegations, which would be false if made, alleging that an Insight Tag can be used to improve advertisers' marketing is not enough.

Additionally, as *Keogh v. Meta Platforms, Inc.* pointed out, conclusory allegations that data is generally used for advertising purposes lack the factual support necessary to survive a motion to dismiss. 680 F. Supp. 3d 601, 606 (D.S.C. 2023). As in *Keogh*, Plaintiff makes no claim that she saw ads related to her disability, or even her driver status, that she can attribute to LinkedIn or interactions with the DMV's website. Plaintiff herself is, of course, best positioned to know whether she saw any such ads. But, since she did not allege this, Plaintiff asks this Court to bend over backward to patch the holes in her pleadings. It should decline to do so.

***Third,*** Plaintiff's heavy reliance on *Gershzon v. Meta Platforms, Inc.* is misplaced. *See* Opp. at 14 ("Similar allegations were sufficient to satisfy the 'knowingly' pleading requirement in *Gershzon*.") (citing 2023 WL 5420234, at *10 (N.D. Cal. Aug. 22, 2023)). As explained, the decision in that action rested on different allegations, rejected a legal argument LinkedIn does not make here, and failed to fully analyze the voluntary action requirement for knowingness (discussed

below). Mot. at 19. The Opposition does not rebut these points. To the extent that *Gershzon* found that offering a commonplace technology "knowingly" violates the DPPA if the DMV uses it in a manner contrary to that party's express contractual terms, this Court should decline to follow suit.

***Fourth,*** the authorities Plaintiff cites do not show that LinkedIn engaged in voluntary action. Citing *Tison v. Arizona*, a 1987 murder case, Plaintiff submits that "a party 'intends certain consequences when [it] knows that those consequences are substantially certain to result from [its] acts.'" Opp. at 14 (citing *Tison*, 481 U.S. 137, 150 (1987)). Even under this proposed standard, LinkedIn in no way knowingly obtained or used Plaintiff's protected information. There is no allegation (and no basis to infer) that LinkedIn knew the DMV would install the Insight Tag on disability pages ***and*** implant personal information in its URLs. Thus, Plaintiff does not adequately allege LinkedIn could have been "substantially certain" it would receive personal information.

Likewise, in sharp contrast to the defendant in *Rand v. Travelers Indemnity Co.*, which specifically designed its site to auto-populate private information for any website visitor to see, the alleged DPPA violation here arose not from LinkedIn's conduct but from the intervening, contractually prohibited actions of the DMV itself. 637 F. Supp. 3d 55, 67-68 (S.D.N.Y. 2022). There is simply no allegation that LinkedIn "knowingly" expected the DMV to set up its website to ignore the contract between the parties.

In this way, the *Enslin* and *Allen* decisions that Plaintiff brushes aside are highly analogous. These cases illustrate the right result where ***a third party*** acts to violate the DPPA. *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 669-72 (E.D. Pa. 2015); *Allen v. Vertafore, Inc.*, 28 F.4th 613, 617 (5th Cir. 2022). Plaintiff mischaracterizes these cases as instances where there was ***no*** challenged action by the defendant. Opp. at 14-15 (references "non-action" by the *Enslin* and *Allen* defendants). In fact, in both, the plaintiffs asserted the defendant's actions had caused the DPPA violations. *Enslin*, 136 F. Supp. 3d at 671 (finding defendant took action of "privately holding [information]" on "unsecured laptops"); *Allen*, 28 F.4th at 617 (finding defendant took action of "stor[ing] personal information on 'unsecured external servers'"). Nonetheless, those courts found that the defendants' actions were ***not the kind of knowing action*** that triggers DPPA liability. Action triggering DPPA liability must be, as Plaintiff puts it, "substantially certain to result from"

the proscribed transmission of prohibited information. Opp. at 14. As in *Enslin* and *Allen*, LinkedIn took no action that was substantially certain to result in the DMV's sending it prohibited content.

**B. The Challenged Data Do Not Come "From a Motor Vehicle Record."**

Plaintiff does not dispute that, under the binding authority of *Andrews*, only data "maintained by" the DMV can be a DPPA "motor vehicle record." Opp. at 16 (citing *Andrews v. Sirius XM Radio, Inc.*, 932 F.3d 1253, 1260 (9th Cir. 2019)). Yet the Complaint remains focused on information that Plaintiff ***never alleges*** the DMV maintained, including her searches on the DMV's website, Compl. ¶¶ 45, 46, her driving self-assessment, *id.* ¶ 47, and her email address, *id.* ¶ 56. Apparently recognizing this problem, the Opposition claims that simply because she visited webpages related to renewing her DPP, information maintained by the DMV was disclosed. Opp. at 16. This does not withstand scrutiny. Plaintiff does not allege that the DMV tracked and maintained her browsing history in its records. That the DMV might later record the fact of DPP renewal when she finished the forms does not make her web browsing a record the agency maintained. Plaintiff never addresses LinkedIn's apt analogy to a party overhearing a conversation at a DMV office counter. This would plainly not come from a record "maintained by the agency," even if the transaction resulted in a later-created record. The same logic applies here.

Again, Plaintiff leans on *Gershzon* while attempting to distinguish this case from *Keogh*. Opp. at 16-17. But this Court should not permit Plaintiff to so easily dodge LinkedIn's arguments. *Gershzon* found that the MyDMV portion of the DMV's website contained records maintained by the agency. Mot. at 18:6-8. That part of the DMV website is not at issue here, just as it was not in *Keogh*, which expressly distinguished *Gershzon* on that basis. *Keogh*, 680 F. Supp. 3d at 609-10. The Opposition leaves the prominent argument in LinkedIn's Motion related to MyDMV ***wholly unanswered***. *Gershzon* is distinguishable on these grounds, and the Court need not follow it.

Finally, Plaintiff has no answer, apart from harping on the *Gershzon* ruling, to LinkedIn's argument that a ***parking*** placard does not pertain to a vehicle ***operating*** permit. Plaintiff's assertion that "parking unquestionably 'pertains to' driving" (Opp. at 18) is irrelevant. The DPPA does not encompass all things related to "driving." It much more narrowly requires that a "motor vehicle record" pertain to a "motor vehicle operator's ***permit***." 18 U.S.C. § 2725(1). The right to park in

designated locations and the right to operate a vehicle are wholly distinct. Judicially noticeable documents establish that the DMV tells the public that DPPs relate solely to parking rights (and a limited service station right) and that ***non-drivers*** may use a DPP. A disabled minor with no license can use a DPP to allow someone driving them to park in a disabled parking spot. Thus, the privileges granted by an operator's permit and a DPP are entirely separate, and this Court should follow *Keogh*, which reasoned that not all things related to cars are within the DPPA's reach.

**C. The Complaint Fails to Allege LinkedIn's Use for an Impermissible Purpose.**

To rebut LinkedIn's argument that any information obtained through the Insight Tag was to help the DMV carry out its functions, Plaintiff points back to her boilerplate statements that LinkedIn's purpose was not permissible. Opp. at 18. These conclusory claims are of no moment, particularly where they contravene other specific facts alleged. Plaintiff specifically alleges that the purpose of the Insight Tag is to "help [the DMV] optimize [its] campaigns, retarget [its] website audiences, and learn more about [its] audiences." Compl. ¶ 27; Opp. at 14. In other words, Plaintiff alleges that the Insight Tag helps the DMV carry out the functions of its website and reach drivers. These very purposes grounded *Downing*'s conclusion that the advertising vendor there did not violate the DPPA. 682 F.3d at 23-24. This Court should reach the same conclusion.

Plaintiff cites *Knowlton v. City of Wauwatosa* and *Gershzon* for the proposition that permitted purpose arguments cannot be decided at the motion to dismiss stage. Opp. at 18 (citing 2023 WL 2951425, at *1 (E. D. Wis. Apr. 14, 2023); *Gershzon*, 2023 WL 5420234, at *9). The *Knowlton* order cited is perplexing and likely an error, as it is a ***denial*** of a motion in limine to exclude any testimony on a permissible DPPA purpose. *Knowlton*, 2023 WL 2951425, at *1. *Gershzon*'s brief treatment of the issue is not as persuasive as the careful analysis to the contrary in *Downing*, on which LinkedIn's motion relies. Mot. at 17-18. Put simply, *Downing* persuasively established that, at the pleading stage, an action with a permissible governmental purpose will not be rendered impermissible by a secondary alleged advertising purpose. The Court should follow that rationale and ruling here.

Finally, Plaintiff makes much of *Keogh*'s language suggesting that Meta could not rely on the DMV's permitted purpose to "avoid compliance with the statute with respect to its own

conduct." First, as explained throughout this brief, plaintiff makes no plausible allegation that LinkedIn used this data for its own purposes, separate from those of the DMV. Second, in *Keogh*'s sole authority for this *dicta*, *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318 (W.D.N.C. 2020), the defendant failed to identify ***any*** action plausibly supporting a law enforcement purpose. Indeed, in that case, the court held where both the defendant ***and*** the police publicized crash reports containing protected personal information, ***neither*** could be said to be effectuating a law enforcement purpose. *Id.* at 347-48. These facts are worlds away from the present case.

## IV. None of Plaintiff's Arguments Save Her CIPA Claims from Dismissal.

### A. Plaintiff Has Failed to Plead LinkedIn is a Third-Party Eavesdropper.

To begin, the Court should decline Plaintiff's request to apply *Javier* and ignore *Graham* in analyzing whether LinkedIn acted as a third-party eavesdropper. There is no merit to Judge Breyer's critique that *Graham*'s reasoning would "swallow[] [CIPA's] third prong" by imputing a use requirement in the second prong. Opp. at 21. The third prong broadly penalizes "use" of "any information ***so obtained***"—*i.e.*, through the first and second prongs. Thus, CIPA's third prong proscribes different conduct than the second, as *Graham* correctly held. It can, for example, apply to a defendant who uses data intercepted by another, even if she did not eavesdrop herself.

In any event, Plaintiff's insubstantial allegations do not show that LinkedIn acted as a third-party eavesdropper under either *Graham* or *Javier*. Plaintiff argues that her allegations are sufficient because she purportedly alleges LinkedIn "used the private communications for its own financial purposes" Opp. at 20. This claim misstates the Complaint. Nowhere does Plaintiff allege that LinkedIn used any Insight Tag data for ***its own purposes*** (rather than using it for the advertiser who installed the Insight Tag), let alone that it used data it received from the DMV for such purposes. The absence of these allegations precludes Plaintiff's reliance on *Javier*, as well as *Graham*.

*Swarts v. Home Depot, Inc.* is instructive. There, the plaintiff alleged that his chat information was sent to a "data mining company" that "analyz[ed] data and provid[ed]" the website operator, Home Depot, with "customer data metrics related to each conversation[.]" 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023). Plaintiff alleged that Home Depot used the data by "access[ing] and analyz[ing] the recorded conversation[s] to understand what [its] customers want,

to increase sales, fix inefficiencies, and improve experiences." *Id.* Nevertheless, because the complaint did not "allege that [the vendor], . . . can use the information obtained for any other purpose besides relaying it to Home Depot," it was not an eavesdropper under *Javier*. *Id*.[8]

The same result follows here. Plaintiff's Opposition points to general and vague allegations that LinkedIn "monetize[s] the collected data" by making it available to third-party advertisers through its "Marketing Solutions advertising systems." Opp. at 21-22; *see* Compl. ¶ 21 ("LinkedIn's Marketing Solutions services ***allows potential advertisers*** to '[b]uild strategic campaigns' targeting specific users"); *id*. ¶ 57 (alleging that LinkedIn's receipt of data "***enables*** advertisers to target users with relevant content or advertisement[s]") (emphases added). It is self-evident that a data analytics provider would benefit financially from making data available to third parties, or even analyzing or compiling that data for third parties. What matters here is that Plaintiff has not alleged ***independent*** use of her data by LinkedIn, only that it assists websites in compiling their own data so that those websites can better target ads. The Court will search the Complaint in vain for an allegation that LinkedIn used DMV data to enhance another website's ads. Plaintiff surely omitted such an allegation because it is untrue and she had no factual basis to assert it.

While Plaintiff invokes *In re Facebook* and *Revitch* (Opp. at 21), those authorities only illustrate the gap between what Plaintiff must plead to survive dismissal and what she has pled here. In *Revitch*, plaintiff alleged a third party scanned the plaintiff's computer for files, and could unmask his identity, match him to a geographic address; and send him physical postcards. *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827, Dkt. 43 ¶ 22 (N.D. Cal. May 22, 2019), In *Facebook*, the plaintiffs alleged that the defendant was compiling "broad swaths" of information regarding logged-out users to use for its own purposes in contravention of its express representations to users, including browsing history from seven million websites. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599, 603-04 & n.7 (9th Cir. 2020). By contrast, Plaintiff here does not come

---

[8] *See also Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (allegations that Salesforce "analyzes the customer-support agent interactions in real time to create live transcripts. . . do not support . . . that [it] has the capability to use these communications for any purpose other than furnishing them to Kaiser."); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) ("It is not alleged that the software could be used for data analytics or marketing/advertising by persons other than Super Bright.").

close to alleging LinkedIn used the data for its own purposes. Compl. ¶ 57 (cited in Opp. at 21).

Even if Plaintiff had plausibly alleged use or capability of use, her claims would also fail because none of her allegations are tethered to the ***DMV's*** use of Insight Tag or her interactions with LinkedIn's website. *Cody v. Ring LLC*, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024) establishes why this deficiency is fatal to Plaintiff's claims. The plaintiff in *Cody* alleged that, upon visiting the Ring website, a Meta-owned company called Kustomer purportedly mined chat data with Ring's customer service representatives which it used to "bombard . . . [w]ebsite visitors with targeted advertising." *Id.* at *1. In support, the plaintiffs cited a *Bloomberg* article reporting how Meta purportedly used Kustomer-monitored chat communications to serve targeted ads. *Id.* at *6 n.3. Applying *Javier*, the court concluded that these allegations were "conclusory" and failed *Javier*'s capability of use framework. *Id.* at *6. Critically, the court reasoned that the plaintiffs had alleged "nothing about ***Ring*** or about Meta or Kustomer using ***Ring*** data to create targeted advertising." *Id.* at *6 n.3 (emphasis added). The same is true of Plaintiff's theory based on general allegations about LinkedIn's Marketing Solutions, which says nothing about ***the DMV*** or LinkedIn's use of ***the DMV's data*** for any purpose at all. If the *Cody* plaintiffs' allegations about an alleged eavesdropper's specific business practices is not enough to establish capability under *Javier*, then Plaintiff's far more general allegations are certainly not enough here either.

**B. Plaintiff's Second Clause CIPA Claim Fails for Myriad Independent Reasons.**

***Read or Attempt to Learn Contents.*** Relying again on the same allegations regarding LinkedIn's Marketing Solutions, Plaintiff claims that she has plausibly alleged that LinkedIn attempted to read or learn the contents of her communications because its "business model" is to "use[] what it learns" from data collected through Insight Tag. Opp. at 22. Her allegations here are deficient for the same reasons discussed above. Nowhere does Plaintiff allege that LinkedIn ever read or attempted to learn the contents of ***her*** communications, that she received any targeted ads based on her disability status, or that LinkedIn ever used ***any*** Insight Tag data from the DMV—disability-related or otherwise. Citing no apposite case law of her own, Plaintiff's only defense is to misconstrue *James v. Allstate*, claiming that the plaintiff there alleged only that the defendant "stored and could access his data[.]" Opp. at 23. This is incorrect. *James v. Allstate* involved the

same kinds of allegations that Plaintiff offers here, namely that the vendor defendant "benefit[ed] financially from collecting information" by identifying "leads" used for marketing purposes. *James v. Allstate Ins. Co.*, Case No. 3:23-cv-01931, Dkt. 34 ¶ 3 (N.D. Cal. June 30, 2023).[9] Here too, Plaintiff's allegations are deficient.

***In Transit.*** Plaintiff's Opposition also confirms that she has failed to plausibly allege that LinkedIn intercepted any communications "in transit." First, ignoring the many cases cited in LinkedIn's Motion, Plaintiff argues that she can bypass the "in transit" requirement by merely alleging her communications are purportedly "'received at' a place within this state." Opp. at 23. She cannot. In *Cody*, the Court rejected this exact argument based on *Ribas v. Clark*, the same authority Plaintiff relies on here. The *Cody* court explained that the word "while" precedes the phrases "in transit" and "received at"; thus, the *Ribas* Court's "interpretation leaves the contemporaneous requirement intact." 2024 WL 735667, at *6 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985)); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) ("Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California.").

In the alternative, Plaintiff argues that she has satisfied the "in transit" requirement by alleging that LinkedIn "collected the contents of her communications . . . as soon as she submitted her renewal application." Opp. at 23 (citing ¶¶ 45-57). In so arguing, Plaintiff misstates her own allegations. Nothing she cites establishes that LinkedIn intercepted her communications "in real time"; to the contrary, those allegations merely establish that LinkedIn "obtains personal information . . . when they run searches[.]" Compl. ¶ 45. Such ambiguous pleading does not suffice. *Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims based on Pixel where "Plaintiff fail[ed] to allege specific facts about . . . *when* the interception took place" (emphasis added)). As discussed in the Motion, Plaintiff's lack of specificity as to the timing of the alleged interception was likely intentional. A more specific allegation that the

---

[9] Plaintiff cites *Gershzon* for the proposition that disability-related information qualifies as "contents" under CIPA. Opp. at 22. LinkedIn never argued otherwise. *Gershzon* does not help Plaintiff, as the defendant there never challenged Plaintiff's CIPA claim for failure to plausibly allege the defendant read or attempted to learn the contents of plaintiff's communications.

interception occurred "in transit" may have supported her CIPA claim, but would extinguish her DPPA claim, which requires the challenged information be "maintained" in DMV records.

***Willful.*** To avoid dismissal, Plaintiff points to a pair of boilerplate allegations in her complaint that merely regurgitate CIPA's statutory requirements regarding intent. Compl. ¶¶ 105, 109.[10] This argument fails for the same reasons Plaintiff has not alleged a "knowing" DPPA violation. Plaintiff also once again invokes *Gershzon*, but the plaintiff there alleged additional facts regarding intent that are not present here, including that Meta specifically designed its Pixel "to maximize the private information it transmits[.]" *Gershzon*, 2023 WL 5420234, at *11. And while Plaintiff contends her allegations are "far more detailed" than those that the *Heiting* court deemed insufficient, the plaintiff there alleged the defendant was "aware" that the underlying communications were being recorded, that those recordings reflected "personal information," that it "knowingly" allowed a third party to develop "data profiles" of visitors based on that information, and that it "knowingly allow[ed] users' personal information (and personal vulnerabilities) to be shared with a wide range of corporate entities[.]" *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-CV-08002, Dkt. 19 ¶¶ 15, 21, 23 (C.D. Cal. Jan. 16, 2024). Plaintiff here alleges substantially less; she does not specifically claim that LinkedIn knew it was receiving disability-related information, or that it used such information for targeted advertising.

**C. Plaintiff's Claim Under CIPA's Third Clause is Also Doomed.**

Plaintiff does not contest, and thus concedes, that this claim cannot stand unless she alleges a viable clause two claim. Instead, she once again invokes the same defective allegations described above regarding how LinkedIn "fuels" its Marketing Solutions services using Insight tag data. *Supra* Section IV.A; Compl. ¶ 23. The clause two claims fail for the reasons set forth above: Nothing in Plaintiff's pleading alleges that LinkedIn used *her* data—or any data from the DMV—for any advertising or marketing purposes. Her clause three claim fails for this reason as well.

Dated: May 3, 2024

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

[10] Plaintiff also cites, but does not quote, paragraphs 41-59 of her Complaint, which merely state that the DMV installed Insight tag on its website and describe the information allegedly transmitted.