UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACQUELINE JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>    Defendant. | Case No. 24-cv-00812-PCP (VKD)<br><br>**ORDER RE DISCOVERY DISPUTE RE ESI PROTOCOL**<br><br>Re: Dkt. No. 46 |

Plaintiff Jacqueline Jackson and defendant LinkedIn Corporation ("LinkedIn") ask the Court to resolve disputes involving several provisions of their proposed protocol for discovery of electronically stored information ("ESI"). Dkt. No. 46. The Court finds this matter suitable for resolution without oral argument. Civil L.R. 7-1(b).

The Court orders as follows:

**1.   Section 4: Dates for preservation of ESI**

The parties disagree about the time frame for preservation of potentially relevant ESI. The Court agrees with LinkedIn that February 9, 2019, which is one year before the earliest actionable conduct at issue in the case, is an appropriate reference point for preservation as a general matter. However, Ms. Jackson says that she has or will seek discovery regarding whether LinkedIn designed the Insight Tag knowing or intending that it would be used to collect, store, and transmit to LinkedIn personal information of visitors to a web page on which an Insight Tag has been installed, such as the "personal disability information" of individuals like Ms. Jackson who visited the DMV website to apply for, renew, or check the status of a disability placard. Dkt. No. 46 at 2. Ms. Jackson suggests this information is likely to be found in documents describing or reflecting

the design and development of the Insight Tag, which she believes occurred in or around September 2016. LinkedIn responds that this argument is "meritless" and that "to the extent that any development-stage plan for the use of Insight Tag data became reality, LinkedIn's preservation proposal would capture those [documents]," presumably on the theory that this information would likely appear in documents generated since February 9, 2019. *Id.* at 4.

As Ms. Jackson acknowledges, her proposal would require LinkedIn to preserve ESI dating back to September 1, 2016—more than seven and one-half years of data. This proposal, if it is meant to encompass all proposed custodial and non-custodial sources, is not reasonable. However, information regarding LinkedIn's knowledge and intent in offering and promoting the Insight Tag to entities, such as the DMV, appears to be relevant and some information may indeed be found in documents generated at the time the Insight Tag was first made available. Thus, Ms. Jackson has offered some justification for preserving ESI on this topic.

Having considered the parties' respective arguments, the Court concludes that the parties need not preserve any ESI created or received before February 9, 2019, with the following exception: The parties shall confer regarding the custodial and non-custodial sources most likely to contain relevant, non-duplicative information regarding the purposes for which the Insight Tag was developed, LinkedIn's knowledge of the nature of the information likely to be transmitted via Insight Tag, and its intent in making the Insight Tag available generally. If the Court ultimately requires LinkedIn to preserve ESI earlier than February 9, 2019 (such as for a reasonable time period in or around September 2016), that preservation obligation will be limited to only those specific sources likely to have relevant, non-duplicative information on this specific topic. The Court encourages the parties to reach agreement on this point and advise the Court of their proposal, as directed below.

**2.     Section 5(b):  Search methodologies**

*Hit reports*. The parties disagree about whether a producing party must provide "hit reports" disclosing how many "unique hits, hits with families, and total number of documents hit" for each search term a producing party discloses to a requesting party. Ms. Jackson contends that this disclosure should be made before the parties confer about the appropriateness of any proposed

search terms, arguing that without such reports the requesting party "is entirely in the dark about the efficacy of the search terms." *Id.* at 2. LinkedIn objects that disclosure of initial hit reports is unnecessary and unduly burdensome. LinkedIn proposes instead that the parties should only be required to provide hit reports that are "reasonably available and reasonable in scope" after counsel have conferred about proposed search terms and genuine disputes remain. *Id.* at 5.

As a general matter, a hit report reveals very little about how effective a search term is in identifying relevant and responsive documents. While some inferences might be drawn from the number of hits—e.g., a search term that generates an unexpectedly large number of hits may be capturing an unreasonable number of irrelevant documents—for the most part, the Court expects there is little utility in requiring disclosure of hit reports as a matter of course for every search term at the time a producing party first proposes its search terms. However, the Court agrees that hit reports can be a useful tool as part of the parties' efforts to resolve disputes about specific search terms.

*Null set*. The parties also disagree about whether Ms. Jackson may "reserve the right to request LinkedIn to review a 'null set sample' . . . that is a "statistically valid (95% ±5), randomly generated sample set of documents from a given data source that do not hit on any search terms," so that the parties can evaluate whether LinkedIn's search terms are missing too many relevant documents. *Id.* at 3 & Ex. 2. Ms. Jackson emphasizes that she is not asking the Court to require LinkedIn to review a null set sample for every data source; she is merely reserving the right to make the request. *Id.* at 3.

The Court agrees that review of a null set sample may be useful and appropriate where there is reason to believe that the application of search terms has not adequately captured the collection of potentially relevant and responsive documents for review. However, the Court sees no reason to include a statement of Ms. Jackson's "right to request" use of a null sample review in the ESI protocol. Either party may make such a request of the other if and when it is appropriate to do so.

Thus, the Court will not include Ms. Jackson's proposed text for Section 5(b), and instead adopts the version of this section that appears in LinkedIn's proposed ESI protocol.

3

### 3. Section 7(b): Clawback procedures

Invoking Rule 502(d) of the Federal Rules of Evidence, the parties agree that "the production or disclosure of attorney-client privileged or work-product-protected documents . . . whether inadvertent or otherwise, shall not result in the waiver of any claim of privilege or work product protection . . .." *See* Dkt. No. 46-1 at 10 (sec. 7(a)). They disagree regarding whether a receiving party may use the contents of a document that is clawed back from production by a producing party under Section 7(b) of the ESI protocol to challenge the producing party's claim of privilege or protection for that document. *See* Dkt. No. 46 at 3, 6.

Absent a stipulation adopting different procedures, the procedures for disputing a privilege or protection claim are set forth in Rule 26(b)(5) of the Federal Rules of Civil Procedure. If information subject to a claim of privilege or protection has already been produced, the producing party may notify the receiving party of the claim and the basis therefor. Fed. R. Civ. P. 26(b)(5)(B). After being notified, the receiving party "must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for determination of the claim." *Id.* Ms. Jackson's proposal, which would permit a party to use the contents of a clawed back document "for the purpose of challenging the privilege assertion," is inconsistent with Rule 26(b)(5). *See In re Google RTB Consumer Priv. Litig.*, No. 21-cv-02155-YGR (VKD), 2022 WL 1316586 (N.D. Cal. May 3, 2022) (rejecting similar proposal and discussing relevant authority).

Accordingly, the Court rejects Ms. Jackson's proposed text for Section 7(b)(iii)(1) and adopts LinkedIn's proposal.

### 4. Appendix A: Metadata fields

The parties disagree regarding whether a producing party should be required to include the following metadata fields in its ESI production: AttachNames; Attachments; FilePath; and NativeFileLink. It is not clear from the parties' submission why Ms. Jackson wishes to include these particular fields and why other agreed metadata fields are not sufficient. LinkedIn argues

that including these fields will require manual review for privilege, as there is no way to automatically exclude attachment or file names that reveal privileged information from these fields for files and attachments withheld on grounds of privilege.  Ms. Jackson does not address this concern.

The Court does not have enough information to resolve this dispute.  The parties must confer further regarding this dispute and must and report to the Court, as directed below.  The report must at least explain why Ms. Jackson believes these fields should be provided and how the privilege concerns LinkedIn raises can be addressed.

### 5. Further proceedings

The parties shall confer as directed above regarding the remaining disputes concerning Section 4 and the metadata fields in the Appendix.  They must jointly report back to the Court on the status of those disputes by **July 29, 2024**.  The joint report shall not exceed 1,500 words total or 750 words per party.  Alternatively, if the parties resolve their remaining disagreements, they may simply submit a stipulated request for entry of an ESI protocol for the Court's consideration.

**IT IS SO ORDERED.**

Dated: July 15, 2024

Virginia K. DeMarchi
United States Magistrate Judge