Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

JACQUELINE JACKSON, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:24-cv-00812-PCP

**PLAINTIFF'S OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

**DATE:** **October 24, 2024**
**TIME:** **10:00 a.m.**
**DEPT.:** **Courtroom 8, 4th Floor**

Hon. P. Casey Pitts

# **TABLE OF CONTENTS**


I. INTRODUCTION ........................................ 1

II. STANDARD OF REVIEW ........................................ 2

III. PLAINTIFF ADEQUATELY STATES A DPPA CLAIM ........................................ 2

A. Plaintiff adequately alleges that LinkedIn obtained her personal information "from a motor vehicle record." ........................................ 3

B. *Gershzon*'s reasoning was not flawed, and it is not in conflict with any of the cases on which LinkedIn attempts to rely. ........................................ 7

C. Plaintiff adequately alleges that LinkedIn "knowingly" obtained her personal information. ........................................ 9

D. Plaintiff adequately alleges that LinkedIn's conduct was not for a "permissible use." ........................................ 12

IV. THE COURT SHOULD RETAIN JURISDICTION EVEN IF IT DISMISSES PLAINTIFF'S DPPA CLAIM ........................................ 14

V. CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Adams v. W. Marine Prod., Inc.*,
958 F.3d 1216 (9th Cir. 2020) ....................15

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) ....................11

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ....................passim

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2

*Davis v. Meta Platforms, Inc.*,
No. 2:23-CV-01352-APG-BNW, 2024 WL 3293644 (D. Nev. July 3, 2024) ....................8

*Downing v. Globe Direct LLC*,
806 F. Supp. 2d 461 (D. Mass. 2011) ....................13

*Dye v. Meta Platforms, Inc.*,
No. 5:23-CV-509-BO-BM, 2024 WL 2125602 (E.D.N.C. May 10, 2024)....................8

*Enslin v. The Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) ....................11

*Floyd v. Am. Honda Motor Co.*,
966 F.3d 1027 (9th Cir. 2020) ....................14

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022)....................6

*Gershzon v. Meta Platforms Inc.*,
No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ....................passim

*Hoang v. Bank of Am., N.A.*,
910 F.3d 1096 (9th Cir. 2018) ....................15

*Keogh v. Meta Platforms, Inc.*,
680 F. Supp. 3d 601 (D.S.C. 2023)....................7, 8, 12, 13

*Knight v. Meta Platforms, Inc.*,
No. 23-13347 (D.N.J. July 29, 2024)....................8

*Knowlton v. City of Wauwatosa*,
No. 20-cv-1660, 2023 WL 2951425 (E.D. Wis. Apr. 14, 2023) ....................12

*Maracich v. Spears*,
570 U.S. 48 (2013)....................7

*Pichler v. UNITE*,
542 F.3d 380 (3d Cir. 2008) ....................12

*Rand v. Travelers Indem. Co.*,
No. 21-cv-10744, 2022 WL 15523722 (S.D.N.Y. Oct. 27, 2022)....................10

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) .......... 2

*Senne v. Village of Palatine, Illinois*,
695 F.3d 597 (7th Cir. 2012) .......... 3, 12

*Tison v. Arizona*,
481 U.S. 137 (1987) .......... 10

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) .......... 12

**Statutes**

18 U.S.C. § 2721 .......... 1, 12, 13

18 U.S.C. § 2724 .......... 2, 5, 9, 11

18 U.S.C. § 2725 .......... 2, 7

28 U.S.C. § 1332 .......... 14, 15

Cal. Penal Code § 630 .......... 1

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 14

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 14, 15

Fed. R. Civ. P. 12(b)(7) .......... 1

Fed. R. Civ. P. 8 .......... 2, 3, 5

# I. INTRODUCTION

On February 9, 2024, Plaintiff filed a Complaint against LinkedIn Corporation ("LinkedIn") for violations of the Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.*, which seek to prevent third parties from obtaining, viewing, and using individuals' personal information. Plaintiff, who is disabled, alleges that LinkedIn used its proprietary software code called an "Insight Tag" on the California Department of Motor Vehicle ("DMV") website to obtain her personal information, including her disability information, and used it for advertising purposes.

On April 9, 2024, LinkedIn moved to dismiss Plaintiff's Complaint for failure to join the DMV pursuant to Rule 12(b)(7) and for failure to state a claim pursuant to Rule 12(b)(6). *See* Dkt. 19. On August 13, 2024, this Court denied LinkedIn's Rule 12(b)(7) motion and its Rule 12(b)(6) motion as to Plaintiff's CIPA claim. *See* Order Granting Motion to Dismiss in Part ("MTD Order"), Dkt. 57 at 11. However, the Court granted LinkedIn's 12(b)(6) motion with leave to amend as to Plaintiff's DPPA claims. *Id*.

Relying on *Gershzon v. Meta Platforms Inc.*, No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023), the Court held that Plaintiff's DPPA claim was defective because Plaintiff did not "sufficiently allege that the information LinkedIn purportedly obtained and used was from a 'motor vehicle record.'" MTD Order at 7. The Court distinguished the Plaintiff's allegations from those in *Gershzon*, where the plaintiff alleged that "the personal information from the plaintiff's disability placard application was contained within the plaintiff's 'MyDMV' account," and concluded that a MyDMV account "is at least arguably 'maintained by an agency' for the purposes of the DPPA." *Id*. at 8.

Plaintiff filed her First Amended Complaint ("FAC") on September 3, 2024, to cure the deficiencies the Court identified in its MTD Order. *See* FAC, Dkt. 59. Specifically, Plaintiff alleges in her FAC detailed facts about: (1) her MyDMV account and the personal information contained within that account; (2) how she was logged into her MyDMV account when completing and submitting her DPP renewal; (3) how LinkedIn's Insight Tag is deployed on Plaintiff's MyDMV pages and throughout the DMV website; and (4) how LinkedIn obtained

Plaintiff's DPPA-protected personal information (*i.e.*, her name and that she was disabled) directly from the motor vehicle records maintained by the DMV, including Plaintiff's Disabled Parking Placard ("DPP"), DPP renewal application, and MyDMV account. *See, e.g.*, *id.* at ¶¶ 7-9, 43, 46-48, 50-52, 56-57, 61-64, 66. Plaintiff's allegations in the FAC are similar to, and in certain respects more detailed than, the allegations Judge Illston found sufficient to state a claim in *Gershzon*.

Confronted with Plaintiff's well-pled allegations, LinkedIn filed a scattershot motion to dismiss ("Motion") that again challenges claims this Court previously sustained, mischaracterizes Plaintiff's allegations, and raises improper factual defenses. Because Plaintiff's FAC exceeds Rule 8's pleading requirements, the Court should deny LinkedIn's Motion.

## II. STANDARD OF REVIEW

As this Court explained in its MTD Order, "[t]he Federal Rules require a complaint to include only a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" MTD Order at 3 (quoting Fed. R. Civ. P. 8(a)(2)), and "[i]n considering a Rule 12(b)(6) motion contending that a complaint fails to state a claim, the Court must 'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable' to the non-moving party.'" *Id*. (quoting *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029 (9th Cir. 2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## III. PLAINTIFF ADEQUATELY STATES A DPPA CLAIM

The DPPA provides a civil cause of action against any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" 18 U.S.C. § 2724(a). "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . ." 18 U.S.C. § 2725(3). A "motor vehicle record" means "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or

identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).

To state a claim under the DPPA, Plaintiff must allege that LinkedIn "(1) knowingly took some affirmative action to obtain, disclose, or use personal information, (2) from a record maintained by the DMV pertaining to a driver's operating permit, title, registration, or identification card, (3) for an impermissible purpose." MTD Order at 7 (citing *Senne v. Village of Palatine, Illinois*, 695 F.3d 597, 603 (7th Cir. 2012); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019)). Plaintiff adequately alleged facts sufficient to satisfy all three elements under Rule 8's pleading standard.

### A. Plaintiff adequately alleges that LinkedIn obtained her personal information "from a motor vehicle record."

In its MTD Order, the Court found that, unlike in *Gershzon* where "the personal information from the plaintiff's disability placard application was contained within the plaintiff's 'MyDMV' account," Plaintiff failed to allege that "her disability information was contained within any such account that might qualify as a motor vehicle record." MTD Order at 8. Plaintiff's FAC cures this deficiency by alleging that LinkedIn obtained Plaintiff's name and disability information from her MyDMV account, which this Court has already determined "is at least arguably 'maintained by an agency' for the purposes of the DPPA." *Id*.

At the outset, Plaintiff's FAC thoroughly details how LinkedIn's Insight Tag transmitted protected, personal information to LinkedIn from MyDMV account holders who browse the DMV website, and Plaintiff alleges that the Insight Tag is active within each user's MyDMV account page. *See* FAC ¶ ¶ 43, 46–49. Plaintiff's FAC explains how after logging in to their MyDMV account, the Insight Tag transmits to LinkedIn the account holder's name from their MyDMV account along with any other information it collects, including URLs, each time an account holder takes actions on the DMV website. *Id*. ¶¶ 48–68. This includes URLs that ***the DMV itself presented during each stage of the application for DPPs*** that are tied to the account holder's MyDMV account. *Id*. ¶¶ 56-62 (allegations include screenshots detailing this process). After submitting the application for a new or renewal DPP, LinkedIn obtains the URL of the webpage showing that a disability application was completed and submitted to the DMV. *Id*. ¶ 63.

Thereafter, when the account holder checks the status of their disability application via the confirmation email from the DMV, the Insight Tag transmits the full URL, which contains the e-mail address on file with the DMV, to LinkedIn. *Id*. ¶¶ 64-65. In short, through this process, LinkedIn obtains the MyDMV account holder's name, the fact that the account holder has a disability and submitted a DPP application or renewal application, the MyDMV account holder's email address, and any other information the account holder conveyed during the browsing session.

Plaintiff's allegations also detail how LinkedIn obtained her personal and, in particular, her disability information from her MyDMV account. Specifically, she alleges that she has a MyDMV account, which contained personal information—including her first and last name, phone number, and email address—which was saved in the DMV's database as a motor vehicle record. *Id*. ¶ 7. Plaintiff also alleges that she was logged into her MyDMV account when she renewed her DPP through the DMV website in 2023, *id*. ¶ 8, and LinkedIn's Insight Tag was actively transmitting information from her MyDMV account during the DPP renewal application process. *Id*. ¶ 43, 46–49.

Plaintiff further alleges that as part of her DPP renewal application, she had to verify the renewal notice number issued to her by the DMV or the DPP number from her existing DPP that existed in the DMV's database. *Id*. ¶ 62. After doing so, she proceeded to URLs for every step in the renewal application process that *the DMV presented to her* and that she could only access if she had verified with the DMV that she already had a DPP, including the unique URL showing that she completed the application. *Id*. ¶¶ 62-63. Once Plaintiff accessed a post-verification URL on the DMV website, LinkedIn became aware that Plaintiff had a DPP and that she was renewing it, information which came directly from the DMV's records.

The specific URLs for each step in the foregoing process was obtained by LinkedIn via the Insight Tag along with Plaintiff's communications to the DMV, and they revealed Plaintiff's disability information to LinkedIn. *Id*. By obtaining these post-verification URLs presented by the DMV that were linked to her MyDMV account, LinkedIn indisputably received personal and disability information from the motor vehicle records maintained by DMV (*i.e.*, Plaintiff's

existing DPP and the application for a renewal DPP). Therefore, Plaintiff has plausibly alleged that LinkedIn obtained Plaintiff's disability information directly from motor vehicle records maintained by the DMV. *See id.* ¶ 66.

The *Gershzon* Court found that nearly identical allegations were sufficient to satisfy the requirement that the information at issue come from a "motor vehicle record." *See Gershzon*, 2023 WL 5420234, at *8 (holding that the plaintiff's allegations that "Meta obtained his personal information from the DMV website and that the DMV maintained this information after the plaintiff provided it to the DMV through his 'MyDMV' online account" were "sufficient to show that Meta obtained his information 'from a motor vehicle record.'"). Because Plaintiff's amended allegations cure the defect identified in the Court's MTD Order, and easily exceed Rule 8's notice pleading standard, the allegations are sufficient to state a claim. Confronted with these allegations, LinkedIn reaches for meritless arguments.

First, LinkedIn mischaracterizes how LinkedIn obtained Plaintiff's personal information concerning her disability.[1] For example, LinkedIn claims that Plaintiff "***nowhere*** alleges that the DMV configured its URLs to actually disclose [DPP] renewal notice numbers or DPP numbers—instead, she alleges that this URL information merely 'show[ed] that the application was completed and submitted to the DMV.'" Motion at 7-8 (emphasis in original). But to state a claim under the DPPA, Plaintiff is not required to allege that LinkedIn obtained DPP numbers or renewal notice numbers; instead, she must allege that LinkedIn obtained her personal and disability information *from* a motor vehicle record. 18 U.S.C. § 2724(a). That is precisely what Plaintiff does in the FAC: she alleges that LinkedIn obtained her personal and disability information *from* her MyDMV account, DPP, and DPP renewal application, all of which are motor vehicle records. FAC ¶¶ 7–8, 60–63. Indeed, LinkedIn concedes that it is alleged to have obtained Plaintiff's disability information from her DPP renewal application "completed and submitted" to the DMV, which Plaintiff alleges (and logic dictates) is a motor vehicle record

[1] Contrary to LinkedIn's characterization of Plaintiff's allegations, Plaintiff is not alleging that her claim is based on LinkedIn's collection of her phone number or actual cookies transmitted via the Insight Tag. *See* Motion at 3–4. The allegations in the FAC regarding phone numbers and tracking cookies were illustrative facts designed to show how the Insight Tag works.

under the DPPA. FAC ¶ 63.

Next, LinkedIn's argument that Plaintiff, not the DMV's motor vehicle records, was the source of the disclosure of Plaintiff's personal information to LinkedIn is similarly contradicted by Plaintiff's well-pled allegations. Motion at 6–7. Plaintiff unquestionably alleges that her MyDMV account, as well as the URLs and personal disability information, were DMV motor vehicle records that LinkedIn obtained ***via the Insight Tag***. Plaintiff does not allege that LinkedIn obtained her personal and disability information from Plaintiff herself. Rather, Plaintiff's interactions with the DMV website were transmitted directly from the DMV to LinkedIn via the Insight Tag. As such, the facts here are distinguishable from the driver's license in *Andrews* where the information on the license was "in the possession of its owner is no longer maintained by the DMV, and . . . is outside the bounds of the DPPA." *Andrews*, 932 F.3d at 1260.[2] Indeed, the *Gershzon* Court rejected an identical argument from Meta, finding that "[u]nlike *Andrews*, where the defendant obtained personal information from sources other than a DMV, here Gershzon alleges that Meta obtained his personal information from the DMV website and that the DMV maintained this information after Gershzon provided it to the DMV through his 'MyDMV' online account. These allegations are sufficient to show that Meta obtained Gershzon's information 'from a motor vehicle record.'" *Gershzon*, 2023 WL 5420234, at *8.[3]

Additionally, LinkedIn's remarkable argument that it obtained Plaintiff's personal and disability information from Plaintiff's interactions with the DMV website only and not "motor vehicle records" ignores Plaintiff's well-pled allegations. A cursory reading of Plaintiff's FAC

---

[2] Similarly, in *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022), the defendant personal injury lawyers "obtained car accident reports from North Carolina law enforcement agencies and private data brokers" rather than the NCDMV itself. *Id*. at 919. Thus, *Garey* is also inapposite.

[3] LinkedIn proffers an analogy on page seven of its Motion, in which Plaintiff calls the DMV and a person standing near her overhears her conversation. This analogy is inapposite because LinkedIn obtained Plaintiff's information from the Insight Tag placed on the DMV webpages that the DMV itself presented after Plaintiff submitted required information. A better analogy would be if LinkedIn's agent stood next to and recorded an agent at the DMV's office who read Plaintiff's information to her from the DPP application she submitted to the DMV.

reveals that her MyDMV account, DPP status, and DPP renewal application are the source of the personal and disability information LinkedIn obtained and are "motor vehicle records" under the DPPA. And, even if LinkedIn obtained Plaintiff's information from her communications with the DMV website, a factual issue improper for determination now, Plaintiff has sufficiently alleged that such communications are "motor vehicle records." The DPPA defines a "motor vehicle record" broadly as "any record that *pertains to* a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1) (emphasis added). As the Court in *Keogh v. Meta Platforms, Inc.* recognized, "'[p]ertain to' or 'pertain' is a broad term which means with 'reference to' or 'related to[.]'" 680 F. Supp. 3d 601, 610 n.1 (D.S.C. 2023). Indeed, *Andrews* recognized that the DPPA was enacted to address information that is obtained "*from state DMVs*." *Andrews*, 932 F.3d at 1259–60 (emphasis in original, quoting *Maracich v. Spears*, 570 U.S. 48, 57 (2013)).

Finally, LinkedIn argues that DPPs are not motor vehicle records because they "relate solely to parking privileges, not an operator's permit." Motion at 8 (emphasis omitted). Judge Illston flatly rejected an identical argument in *Gershzon*, holding:

> A disability parking placard (and an application for such a placard) does pertain to a motor vehicle operator's permit. If a person with a disability is licensed to drive in California and requires an accommodation in the form of a disabled parking placard, the person must apply for such a placard. Disability parking placards are only used in connection with driving, unlike a voter registration form which has no connection to driving. Thus, a disabled parking placard "pertains to a motor vehicle operator's permit."

*Gershzon*, 2023 WL 5420234, at *8. In sum, Plaintiff has plausibly alleged that LinkedIn obtained Plaintiff's personal and disability information from a motor vehicle record.

### B. *Gershzon*'s reasoning was not flawed, and it is not in conflict with any of the cases on which LinkedIn attempts to rely.

LinkedIn erroneously urges this Court to reject Judge Illston's ruling in *Gershzon* because (1) Judge Illston erred by concluding that the complaint implicated factual questions; (2) other courts have "uniformly disagree[d] with the fundamental and indispensable premise of *Gershzon*

that a DMV website is a Motor Vehicle Record"; and (3) *Gershzon* is "clearly irreconcilable" with the Ninth Circuit's decision in *Andrews*. Motion at 10–11.

First, the *Gershzon* court correctly hewed to the standard of review on a motion to dismiss. Judge Illston correctly found that plaintiff's allegations were plausible and Meta raised factual questions better suited for summary judgment, all of which was within her discretion. *Gershzon*, 2023 WL 5420234, at *9.

Second, courts have not "disagree[d]" with *Gershzon*'s holding—quite the opposite. Every one of cases on which LinkedIn relies explicitly distinguished *Gershzon* on the basis that the plaintiff in *Gershzon* used the interactive MyDMV online portal instead of a website that merely displayed public information. *See Keogh*, 680 F. Supp. 3d at 610 ("It was only in that context – in which plaintiff alleged the DMV kept records in its 'database' of information with respect to his online account – that the *Gershzon* court concluded plaintiff had sufficiently alleged a DPPA violation."); *Knight v. Meta Platforms, Inc*., No. 23-13347, Letter Order, Dkt. No 19 at p. 3, n. 3 (D.N.J. July 29, 2024) ("Plaintiff relies on [*Gershzon*] to argue that the New Jersey MVC website constitutes a 'motor vehicle record.' But those facts are distinguishable . . . . Plaintiff here does not allege that he input any of his information into the MVC website or that the MVC website maintains a database or account from which Meta could obtain such information . . . ."); *Davis v. Meta Platforms, Inc.*, No. 2:23-CV-01352-APG-BNW, 2024 WL 3293644, at *4 (D. Nev. July 3, 2024) ("Davis cites [*Gershzon*] in support of his argument that the Nevada DMV website is a motor vehicle record . . . . Davis does not allege that he made a 'MyDMV' account or any other kind of personal account where his information was stored by the Nevada DMV. Nor does he allege that the public-facing Nevada DMV website had any way of maintaining a record of Davis's personal information. Thus, he has not plausibly alleged that the Nevada DMV website was a record within the DPPA's meaning, so he has not plausibly alleged that it was a motor vehicle record."); *Dye v. Meta Platforms, Inc.*, No. 5:23-CV-509-BO-BM, 2024 WL 2125602, at *4 (E.D.N.C. May 10, 2024) ("In opposition to the motion to dismiss, plaintiff relies heavily on the holding in [*Gershzon.*] . . . Plaintiff makes no similar allegations in her complaint. She alleges only that in August 2023 she visited the NCDMV website to conduct private business, that she

also has a Facebook account, and that defendant obtained and used her personal information. *Gershzon* is therefore factually distinguishable, and plaintiff's allegations are insufficient to state a claim.”).

Finally, LinkedIn’s argument that *Gershzon* is incompatible with *Andrews* fails. *Andrews*, as discussed above, deals with information obtained from a driver’s license that came from a source outside the DMV, not information transmitted directly to a defendant from an online account maintained by the DMV. *Andrews*, 932 F.3d at 1259–62.

**C. Plaintiff adequately alleges that LinkedIn “knowingly” obtained her personal information.**

LinkedIn recycles its previous argument that Plaintiff failed to allege that it “knowingly” obtained Plaintiff’s personal information. *See* Motion at 11-14. As Plaintiff previously explained, LinkedIn’s argument ignores relevant facts and relies on inapposite case law while ignoring case law directly on point, like *Gershzon*, that support the adequacy of Plaintiff’s allegations.

LinkedIn is subject to a DPPA claim if it “knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted.” 18 U.S.C. § 2724(a). “As a matter of statutory construction, the ‘knowingly’ requirement applies to the first element of a DPPA claim–‘obtains, discloses or uses personal information.’” *Gershzon*, 2023 WL 5420234, at *10.

Plaintiff alleges that her “personal information was obtained ‘knowingly’ under the DPPA because LinkedIn knows that information and communication exchanged between users and the DMV are transmitted to LinkedIn by the [Insight Tag] specifically assigned to the DMV’s website.” *See* FAC ¶ 67. Plaintiff supports this allegation with facts specifically detailing how LinkedIn provided the DMV with the Insight Tag that LinkedIn itself intentionally designed to gather and transmit the personal information as alleged. *Id.* ¶¶ 43–45, 84.[4] Plaintiff then provides

[4] LinkedIn boasts that it intentionally designed the Insight Tag to collect detailed personal information and provide it to potential advertisers that they can use to target specific users or demographics. FAC ¶¶ 22–27; *see also id*. ¶ 23 (LinkedIn’s “marketing solutions allow advertisers to select specific characteristics to help them reach their ideal audience. The ads [users] see on LinkedIn are then targeted to provide content relevant to [the users].”).

examples, including screenshots, of the process by which the Insight Tag obtains information when users access and browse the DMV website (*id.* ¶¶ 52–55), and further alleges in detail how the Insight Tag collected Plaintiff's personal information identified in the FAC. *Id.* ¶¶ 56–66. LinkedIn also assigned a unique identifier to each Insight Tag and maintains records associating each Insight Tag with the data it transmits and the website in which it is embedded, so it has knowledge of the source and content of the transmissions. *Id.* ¶ 44. Additionally, Plaintiff alleges that LinkedIn knowingly uses the information for marketing purposes once it obtains it. *Id.* ¶¶ 25, 36–41. As just one of many examples alleged in the FAC, LinkedIn's website admits that its Insight Tag "can help you optimize your campaigns, retarget your website visitors, and learn more about your audiences." *Id.* ¶ 29.

Similar allegations were sufficient to satisfy the "knowingly" pleading requirement in *Gershzon*. *See* 2023 WL 5420234, at *10. Yet, despite Plaintiff's detailed factual allegations, LinkedIn attempts to evade responsibility by shifting the blame to the DMV for its use of the Insight Tag as LinkedIn intended. LinkedIn argues that its collection and use of personal information was merely a "passive failure" to prevent the DMV from disclosing that information and not "voluntary action" required by the DPPA. Motion at 12. That argument fails for at least three reasons.

***First***, LinkedIn has no answer for Plaintiff's allegations that *LinkedIn* intentionally designed the Insight Tag to obtain detailed information about individuals for ad targeting purposes; *LinkedIn* affirmatively represents that its Insight Tag can be used to target specific users based on the detailed information it collects; *LinkedIn* provided the Insight Tag to the DMV for the purpose of obtaining information for its own advertising purposes; and *LinkedIn* designed the Insight Tag to circumvent third party cookie settings. Plaintiff's allegations regarding LinkedIn's voluntary and intentional action are sufficient to plead its "knowing" conduct. *See Rand v. Travelers Indem. Co.*, No. 21-cv-10744, 2022 WL 15523722, at *6 (S.D.N.Y. Oct. 27, 2022) (decision to "auto-populate" protected information on website effected "knowing" disclosure); *Tison v. Arizona*, 481 U.S. 137, 150 (1987) (noting that a party "intends certain consequences when [it] knows that those consequences are substantially certain to result from [its] acts").

LinkedIn's citation to inapposite cases that did not involve voluntary action by a defendant confirms the weakness of its argument. In *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd*, 739 F. App'x 91 (3d Cir. 2018), the court found that that the non-actions of an employer accused of "disclosing" information that was stolen by "various, unknown identity thieves" was not a knowing disclosure. *Id.* at 659, 671. Similarly, in *Allen v. Vertafore, Inc*., 28 F.4th 613 (5th Cir. 2022), the court found that the non-action of storing personal information on unsecured external servers that third parties accessed was not a knowing disclosure. *Id*. at 617. Here, unlike the defendants in *Enslin* and *Allen* who were themselves crime victims, LinkedIn voluntarily created and distributed its Insight Tag to transmit pertinent information from third parties for its own use. In doing so, LinkedIn had a responsibility to comply with the DPPA.

***Second,*** LinkedIn's argument that it was a passive observer to the DMV's misconduct does not save it from Plaintiff's allegation that LinkedIn "uses" Plaintiff's personal information after obtaining it. *See* FAC ¶¶ 36–41. The DPPA prohibits knowing "use" of personal information. 18 U.S.C. § 2724(a). And, Plaintiff alleges that LinkedIn knew it was receiving information from the DMV and used it for its own purposes.

***Third***, LinkedIn argues that Plaintiff did not allege facts showing that LinkedIn knew that it was obtaining or using protected personal information from the DMV. Motion at 13. But that is simply untrue. Plaintiff alleges detailed facts how LinkedIn: (a) knows that its Insight Tag is operating on the DMV's website (FAC ¶ 45); (b) knows that the information the Insight Tag obtains comes from the DMV website because it contains a unique numerical identifier identifying the DMV as the source of the transmission (*id*. ¶ 44); (c) knows the type of information that its Insight Tag obtains because the Insight Tag works as it was designed (*id*. ¶¶ 36, 66–67, 84); and (d) uses the information the Insight Tag obtains for targeted advertising. *Id*. ¶¶ 41, 66. It does not matter whether LinkedIn was aware that the personal information it obtained and used was legally protected under the DPPA—the statute only requires that LinkedIn knowingly obtained or used Plaintiff's personal information, not that LinkedIn knew the legal status of that information. "Voluntary action, not knowledge of illegality or potential

consequences, is sufficient to satisfy the mens rea element." *Senne*, 695 F.3d at 603; *see also Pichler v. UNITE*, 542 F.3d 380, 396–97 (3d Cir. 2008) (discussing the term "knowingly" as it is used in the DPPA and finding that knowledge of illegality is not an element); *United States v. Hastie*, 854 F.3d 1298, 1305 (11th Cir. 2017) ("the [DPPA] does not require knowledge that [disclosure of personal information] is illegal").

Tellingly, the only case LinkedIn relies on for this point does not analyze the DPPA's "knowingly" requirement at all. LinkedIn cites *Keogh* and appends the following parenthetical: "expressing skepticism where the plaintiff did not 'describe or even allege that he received any advertising from Meta concerning his DMV visit.'" Motion at 13. However, the quoted language comes from the *Keogh* court's "Facts and Procedural History" section of the opinion and only describes the plaintiff's allegations that "Meta used information related to his online visit to the SCDMV 'to help it in its advertising efforts[.]'" *Keogh*, 680 F. Supp. 3d at 606. Thus, the court was not "expressing skepticism" that Meta met the "knowing" element of the DPPA.

### D. Plaintiff adequately alleges that LinkedIn's conduct was not for a "permissible use."

LinkedIn next recycles its argument that its conduct is permitted by 18 U.S.C. § 2721(b)(1), which permits obtaining personal information where such conduct assists "any government agency . . . in carrying out its functions." Motion at 14–15.

At the outset, Plaintiff alleges that LinkedIn does not obtain or use information for any permissible purpose (FAC ¶¶ 72, 80, 106), and LinkedIn's argument to the contrary raises a question of fact not appropriate for resolution at the pleading stage. *See Gershzon*, 2023 WL 5420234, at *9 ("Whether Meta in fact had a permissible purpose in obtaining and using personal information from the DMV website raises factual questions to be resolved on summary judgment or at trial."); *Knowlton v. City of Wauwatosa*, No. 20-cv-1660, 2023 WL 2951425, at *1 (E.D. Wis. Apr. 14, 2023).

Even if the Court were to address the argument now, the Court should reject it. LinkedIn does not identify with specificity the "functions" with which it purportedly assists the DMV. It merely states that "[a]s a government agency organized to serve a public function, ***common sense***

***dictates*** that the DMV installed the Insight Tag for a legitimate government purpose, ***such as*** helping it to better understand the visitors to its website and improving its advertising of its services." Motion at 14 (emphasis added). That's all—LinkedIn provides no authority holding that "better understanding the visitors to its website and improving its advertising of its services" is a DMV "function" under § 2721(b)(1). An unsupported assertion about the function of the DMV is insufficient to establish an exception to liability under the DPPA in the face of Plaintiff's contrary allegations.

LinkedIn's reliance on the First Circuit's decision in *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd on other grounds*, 682 F.3d 18 (1st Cir. 2012), is unpersuasive because, as Plaintiff explained in its prior briefing, *Downing* was decided on entirely different facts. Indeed, this Court's MTD Order expressly recognized that "*Downing* is distinguishable from the factual circumstances here." MTD Order at 7. As pertinent here, on appeal, the court found a legitimate government purpose in a vendor sending renewal notices on behalf of the State and the contract between the RMV and vendor specified the governmental purposes for the vendor's actions. *Downing*, 682 F. 3d at 20, 24–25.

Finally, *Keogh*—upon which LinkedIn relies throughout its motion—is fatal to its argument. *Keogh* held that § 2721(b)(1) of the DPPA did not apply in that case because "whether or not the DMV could assert one or more 'permissible uses' with respect to its governmental use of Meta's services, ***that does not allow Meta to avoid compliance with the statute with respect to its own conduct.***" *Keogh*, 680 F. Supp. 3d at 612 (emphasis added). That holding applies with the same force here, where LinkedIn collects personal information from motor vehicle records and uses it to "monetize[] the collected data through the sale of ads" for its own use in providing targeted advertisements to entities other than the DMV. *See* FAC ¶¶ 36–37, 41, 66. Therefore, even if LinkedIn had described a legitimate government function, § 2721(b)(1) does not apply because there is no permissible purpose for *LinkedIn's* use of the personal data to generate massive advertising revenue.

Accordingly, Plaintiff has adequately stated her DPPA claim.[5]

## IV. THE COURT SHOULD RETAIN JURISDICTION EVEN IF IT DISMISSES PLAINTIFF'S DPPA CLAIM

LinkedIn contends that if the Court dismisses Plaintiff's DPPA claim, it should also dismiss the entire case for lack of subject matter jurisdiction under CAFA and decline to exercise supplemental jurisdiction over Plaintiff's CIPA claim. Motion at 15–17. However, LinkedIn fails to cite the relevant standard or any cases for its CAFA argument, so it is unclear whether LinkedIn brings its motion under Rule 12(b)(6) or 12(b)(1). Since LinkedIn does not reference Rule 12(b)(1) anywhere in its brief, Plaintiff will assume LinkedIn is challenging the sufficiency of her jurisdictional allegations. Plaintiff maintains that challenging subject matter jurisdiction under Rule 12(b)(6) instead of 12(b)(1) is improper, and LinkedIn's argument should be dismissed on that basis alone.

Nevertheless, Plaintiff alleges that the Court has subject matter jurisdiction over this case under CAFA regardless of whether her DPPA claim stands. *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1036 (9th Cir. 2020) ("[T]o exercise jurisdiction over a state-law claim pursuant to CAFA, a court does not need underlying federal-question jurisdiction. CAFA expressly extends original federal jurisdiction to state-law claims in class actions under relaxed diversity requirements."). Specifically, Plaintiff alleges that, in addition to federal question jurisdiction, "[t]his Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because it is a class action with more than $5,000,000 in controversy where at least one Class Member is a citizen of a state of which LinkedIn is not a citizen." FAC ¶ 12.

LinkedIn does not challenge that allegation, but instead argues that "nowhere does the Complaint allege any plausible facts that members of the CIPA class are not overwhelmingly California citizens," and "[g]iven the definition of Plaintiff's class, it is self-evident that at least two thirds of the CIPA class are California citizens and therefore the [local controversy]

---

[5] LinkedIn improperly reasserts the arguments in its prior motion to dismiss that the Court already rejected in its MTD Order. *See* Motion at 17. To avoid any doubt about Plaintiff's position, Plaintiff reasserts and incorporates by reference herein her responsive arguments in her prior opposition to LinkedIn's motion to dismiss. *See* Dkt. 25.

exception to subject matter jurisdiction applies." *Id*. (quoting 28 U.S.C. §§ 1332(d)(4)(A)(i), (d)(4)(B)). In other words, LinkedIn concedes, as it must, that Plaintiff adequately alleged the minimum jurisdictional requirements under § 1332(d), but argues that her allegations are insufficient to confer jurisdiction under that statute because she failed to allege facts showing that the case does *not fall within an exception* to CAFA. LinkedIn unsurprisingly does not cite any authority holding that Plaintiff must meet this invented pleading standard, because it is settled law that LinkedIn bears the burden to establish that the exception applies. *Adams v. W. Marine Prod., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020). LinkedIn has failed to do so.

Separately, this Court can exercise supplemental jurisdiction over Plaintiff's CIPA claim because judicial economy, convenience, fairness, and comity support doing so. Although a full of recounting of the progress of this case is beyond the scope of Rule 12(b)(6) briefing, as a summary, Plaintiff and LinkedIn have been engaged in discovery since May 2, 2024; they have negotiated, litigated, and filed ESI and Protective Orders; Plaintiff has issued, and LinkedIn has responded to, two sets of Requests for Production, Interrogatories, and Requests for Admission of Documents; counsel for the parties have met and conferred regarding Plaintiff's discovery requests at least six times, and LinkedIn has made two separate document productions. As such, this case has progressed well beyond the cases LinkedIn cites in which the Courts declined supplemental jurisdiction.

Accordingly, LinkedIn's jurisdictional argument fails.

## V. CONCLUSION

Plaintiff respectfully requests that this Court deny LinkedIn's Motion to Dismiss Plaintiff's First Amended Class Complaint. In the alternative, Plaintiff respectfully requests leave to amend, which is to be granted with "extreme liberality." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018).

Date: October 1, 2024

Respectfully submitted,

By: */s/ Roland Tellis*

Roland Tellis (SBN 186269)
rtellis@baronbudd.com

Adam Tamburelli (SBN 301902)
atamburelli@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd., Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Attorneys for Plaintiff and the Putative Class*