COOLEY LLP
MATTHEW D. BROWN (196972)
(brownmd@cooley.com)
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
MORGAN E. LEWIS (322205)
(melewis@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACQUELINE JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:24-cv-00812-PCP<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: October 24, 2024<br>Time: 10:00 a.m.<br>Dept: 8, 4th Floor<br>Judge: P. Casey Pitts<br>Trial Date: TBD<br>Date Action Filed: February 9, 2024 |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

- A. Plaintiff's Failure to Allege that LinkedIn Received Personal Information from a Motor Vehicle Record Dooms Her DPPA Claim. ..... 1
  - 1. Plaintiff Did Not Allege That Any Personal Information Under the DPPA Was Transmitted from Her MyDMV Account. ..... 1
  - 2. The Court Should Not Reconsider Its Holding That LinkedIn's Receipt of the DPP URLs is Insufficient to State a DPPA Claim. ..... 4
  - 3. Plaintiff's Other Attempts to Minimize Gershzon's Flaws Are Unconvincing. ..... 8
- B. The Complaint Does Not Allege LinkedIn's Knowing Obtainment or Use. ..... 9
- C. The Complaint Fails to Allege LinkedIn's Use for an Impermissible Purpose. ..... 11
- D. The Court Should Decline to Exercise Supplemental Jurisdiction in the Absence of a Federal DPPA Claim. ..... 12

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. W. Marine Prods., Inc.*,
958 F.3d 1216 (9th Cir. 2020) ........ 13, 14

*Allen v. Dollar Tree Stores, Inc.*,
475 F. App'x 159 (9th Cir. 2012) ........ 2, 11

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) ........ 11

*Almoian v. Plies*,
914 F.2d 261 (9th Cir. 1990) ........ 14, 15

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ........ 1, 6, 8, 9

*Applied Underwriters, Inc. v. Lichtenegger*,
913 F.3d 884 (9th Cir. 2019) ........ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5

*Davis v. Meta Platforms, Inc.*,
2024 WL 3293644 (D. Nev. July 3, 2024) ........ 5, 8

*Downing v. Globe Direct LLC*,
682 F.3d 18 (1st Cir. 2012) ........ 11, 12

*Dye v. Meta Platforms, Inc.*,
2024 WL 2125602 (E.D.N.C. May 10, 2024) ........ 5, 8

*Enslin v. Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) ........ 11

*Faris v. Petit Pot, Inc.*,
2023 WL 6192703 (C.D. Cal. Aug. 18, 2023) ........ 14

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) ........ 7

*Gaston v. LexisNexis Risk Solutions, Inc.*,
483 F. Supp. 3d 318 (W.D.N.C. 2020) ........ 12

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ........ *passim*

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Henry v. Napa Valley Unified*,
2016 WL 7157670 (N.D. Cal. Dec. 8, 2016) .......... 2

*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. Aug. 13, 2024) .......... *passim*

*Jones v. Regents of Univ. of Cal.*,
2022 WL 1137089 (N.D. Cal. Apr. 18, 2022), *appeal dismissed*, 2023 WL 7480118 (9th Cir. June 6, 2023) .......... 2

*Keogh v. Meta Platforms, Inc.*,
680 F. Supp. 3d 601 (D.S.C. 2023) .......... 5, 8, 10, 12

*Knight v. Meta Platforms, Inc.*,
No. 23-13347 (D.N.J. July 29, 2024), ECF No. 19 .......... 5, 8

*Knowlton v. City of Wauwatosa*,
2023 WL 2951425 (E.D. Wis. Apr. 14, 2023) .......... 12

*Lenk v. Monolithic Power Systems, Inc.*,
2017 WL 4586832 (N.D. Cal. June 1, 2017) .......... 15

*Marziano v. Cnty. of Marin*,
2010 WL 3895528 (N.D. Cal. Oct. 4, 2010) .......... 2

*Mendez v. Glob. Inst. of Stem Cell Therapy & Rsch., USA*,
2022 WL 3019858 (S.D. Cal. July 29, 2022) .......... 13

*Park v. Webloytalty.com, Inc.*,
2013 WL 4711159 (S.D. Cal. Aug. 30, 2013) .......... 13

*Rand v. Travelers Indemnity Co.*,
637 F. Supp. 3d 55 (S.D.N.Y. 2022) .......... 10

*Tison v. Arizona*,
481 U.S. 137 (1987) .......... 10

*TMI Products, Inc. v. Rosen Entertainment Systems L.P.*,
2014 WL 12601062 (C.D. Cal. May 9, 2014) .......... 15

*Valdez v. Asset Acceptance, LLC*,
2012 WL 2905715 (S.D. Cal. July 16, 2012) .......... 13

*Wren v. Sletten Construction Co.*,
654 F.2d 529 (9th Cir. 1981) .......... 15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

### Statutes

18 U.S.C. § 2725(1) .......... 7

28 U.S.C.
§ 1332(d) .......... 13
§ 1332(d)(2) .......... 13

### Other Authorities

Federal Rules of Civil Procedure Rule 12(b)(1) .......... 12, 13

Federal Rules of Civil Procedure Rule 19 .......... 12

## I. INTRODUCTION

The First Amended Complaint (the "FAC") changed very little about Plaintiff's allegations. This Court previously held, pursuant to binding Ninth Circuit law, that Plaintiff's allegations that descriptive URLs are transmitted to LinkedIn during the Disability Parking Placard ("DPP") application and renewal process were insufficient to state a claim under the Drivers Privacy Protection Act ("DPPA"). *Jackson v. LinkedIn Corp.*, 2024 WL 3823806, at *4 (N.D. Cal. Aug. 13, 2024) (citing *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1260 (9th Cir. 2019)). The Court explained that the outcome might be different if Plaintiff had alleged facts showing the "information transmitted from the DMV to [LinkedIn] was ***from*** a motor vehicle record." *Jackson*, 2024 WL 3823806, at *5 (emphasis added). Yet the FAC does not allege this.

While the FAC alleges that Plaintiff has a MyDMV account, the sole piece of even arguably personal information that Plaintiff alleges LinkedIn received ***from*** that account is her first name. But, as LinkedIn explained in its motion to dismiss the FAC (the "Motion"), a first name is not personal information under the DPPA. Plaintiff's utter silence on this issue in her opposition brief (the "Opposition") speaks volumes. Plaintiff did not, and has now waived the right to, argue that her first name is "personal information" recognized by the DPPA. Likewise, despite the Opposition's extensive efforts to confuse the issue, the FAC makes clear that all the ***disability*** information LinkedIn allegedly received came not from Plaintiff's MyDMV data, but from the DMV website's URLs, just as it did in the original complaint that this Court deemed insufficient.

As Plaintiff has given the Court no grounds to reverse its prior holding, the FAC only confirms the futility of further amendment. This Court should dismiss not only the DPPA claim with prejudice but, due to the Court's loss of subject matter jurisdiction, the entire action.

## II. ARGUMENT

### A. Plaintiff's Failure to Allege that LinkedIn Received Personal Information from a Motor Vehicle Record Dooms Her DPPA Claim.

#### 1. Plaintiff Did Not Allege That Any Personal Information Under the DPPA Was Transmitted from Her MyDMV Account.

Plaintiff's renewed argument that LinkedIn received personal information "from a motor vehicle record" rises and falls with her MyDMV-related allegations—the only new facts she

alleges. LinkedIn's Motion made two fundamental points about the new MyDMV allegations: 1) despite peppering references to MyDMV throughout the FAC, the sole piece of information that Plaintiff plausibly alleges LinkedIn received ***from*** her MyDMV account was her first name and 2) a first name is not personal information under the DPPA definition. *See* Mot. at 2-5.

As to whether a first name is DPPA personal information, Plaintiff has conceded that point by literally not responding to it at all. A word search of the Opposition for the term "first name" confirms that LinkedIn's pages-long argument is never even mentioned, much less refuted. Where a plaintiff "fails to substantively address" a defendant's arguments for dismissal the plaintiff ***waives*** those arguments. *Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022), *appeal dismissed*, 2023 WL 7480118 (9th Cir. June 6, 2023); *see, e.g.*, *Marziano v. Cnty. of Marin*, 2010 WL 3895528, at *4 (N.D. Cal. Oct. 4, 2010). Plaintiff effectively concedes that her only new factual allegations are legally irrelevant, mandating dismissal of her DPPA claim. *See Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x 159, 159 (9th Cir. 2012) (district court properly dismissed claims where plaintiff's "opposition to the motion to dismiss failed to respond to [the defendant's] argument"); *Henry v. Napa Valley Unified*, 2016 WL 7157670, at *4-5 (N.D. Cal. Dec. 8, 2016) (dismissing claim with prejudice where plaintiff failed to demonstrate the viability of claim in opposition). Accordingly, the Court should find that a first name is not personal information under the DPPA definition and hold that LinkedIn's alleged receipt of her first name from Plaintiff's MyDMV account cannot be the basis of her DPPA claim.

Rather than engaging as to whether a first name is enough, in the Opposition, Plaintiff attempts obfuscation by vaguely asserting that LinkedIn received "other information" from her MyDMV account. For example, Plaintiff argues that "after logging in to their MyDMV account, the Insight Tag transmits to LinkedIn the account holder's name from their MyDMV account along with any other information it collects, including URLs, each time an account holder takes actions on the DMV website." Opp. at 3; *see id.* at 4 ("LinkedIn's Insight Tag was actively transmitting information from [Plaintiff's] MyDMV account during the DPP renewal application process."). The problem for Plaintiff is that these assertions in her brief (which seem intentionally unclear) cannot be reconciled with the FAC.

The FAC contains ***no*** allegation that account holders' "names"[1] are transmitted during the DPP application or renewal process. Instead, Plaintiff alleges that the Insight Tag transmits a first name "each time an account holder, including Plaintiff, ***clicked the MyDMV button.***" FAC ¶ 48 (emphasis added). Likewise, what the Opposition might mean by "any other information" in the quote above is never explained. In any case, apart from the URLs discussed below, the transmission to LinkedIn of "any other information" from Plaintiff's MyDMV account is never alleged in the FAC.[2] Thus, these artfully-worded arguments have no basis in the FAC and cannot be given any weight at all.

As the Opposition asserts, Plaintiff did allege that the Insight Tag transmits ***URL information*** to LinkedIn during the DPP application and renewal processes. FAC ¶ 57. But as the Court already held, this information comes solely ***from the DMV's website***, and, therefore, does not implicate the DPPA. *Jackson*, 2024 WL 3823806, at *4. The Opposition tries to muddle the FAC's facts to create the appearance that the disability information was coming from the MyDMV account. Opp. at 3. But this does not withstand scrutiny.

The Opposition claims "that LinkedIn obtained Plaintiff's name and disability information from her MyDMV account," but goes on to admit that the disability information actually comes from the website URLs, as was alleged in the original Complaint. *Id.* Confusingly, Plaintiff argues that the URLs LinkedIn receives "are tied to the account holder's MyDMV account." *Id.* (citing FAC ¶¶ 56-62). But a review of the cited portions of the FAC shows that this assertion is baseless. Nothing about the URLs, which are the sole source of alleged disability information LinkedIn purportedly received, is "tied to the account holder's MyDMV account."[3] That is just wishful thinking. Thus, despite Plaintiff's efforts to blur the origins of the information LinkedIn allegedly received, Plaintiff has never actually alleged that LinkedIn learned disability information ***from*** her

---

[1] The Opposition's misleading use of the unspecified term "name," rather than the FAC's term "first name," can hardly have been an accident given LinkedIn's extensive discussion of the first-name issue in its Motion.

[2] For example, Plaintiff now concedes that the phone number information in the MyDMV account, *see* FAC ¶ 51, is not alleged to have been transmitted to LinkedIn and is not a basis for her claims. Opp. at 5 n.1.

[3] As previously argued, Plaintiff has also never alleged that her MyDMV account tracks all the URLs she visits on the DMV's webpage.

MyDMV account.

Importantly, ***LinkedIn's*** argument in the Motion and here aligns precisely with the FAC's characterization of Insight Tag functionality as facilitating transmission of three kinds of information—URL text, button text and clicks, and browser cookies. FAC ¶¶ 32-33, 50-66. By contrast, the arguments in Plaintiff's Opposition implausibly contradict these other allegations. Plaintiff's Opposition tries to falsely imply that the Insight Tag transmits DPP webpage URL information ***from her MyDMV account***—an entirely separate part of the website. *E.g.*, Opp. at 3, 4. But since this claim appears nowhere in the FAC and Plaintiff may not raise new factual allegations for the first time in her Opposition, this Court may not consider it. *See, e.g.*, *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) ("Although Plaintiff introduced additional evidence that might change this conclusion in its opposition to Defendants' motion to dismiss, those additional facts cannot be considered because they were not included in the operative pleading.").

In sum, the FAC only plausibly alleges that: 1) LinkedIn received Plaintiff's first name that was stored in her MyDMV account, which LinkedIn's Motion established (and Plaintiff conceded by silence) is not actionable and 2) LinkedIn received URL information from the DMV website, which the Court has already held is not actionable. Dismissal with prejudice is the only reasonable outcome.

**2. The Court Should Not Reconsider Its Holding That LinkedIn's Receipt of the DPP URLs is Insufficient to State a DPPA Claim.**

Plaintiff's remaining arguments concerning the DPP application and renewal process are a mere rehash of her old allegations and are dead on arrival.

First, Plaintiff tries in several places to assert that the FAC is materially improved because she has now alleged that DMV URLs and her DPP application and renewal application are motor vehicle records. *E.g.*, Opp. at 5 ("[S]he alleges that LinkedIn obtained her personal and disability information *from* her MyDMV account, DPP, and DPP renewal application, all of which are motor vehicle records."); *id.* at 6 ("Plaintiff unquestionably alleges that . . . the URLs and personal disability information[] were DMV motor vehicle records that LinkedIn obtained via the Insight

Tag) (emphasis omitted). These are not improvements to the FAC. These allegations were the exact basis on which Plaintiff argued that LinkedIn had violated the DPPA in the original Complaint, which the court already rejected.

Second, Plaintiff points out that she is "not required to allege that LinkedIn obtained DPP numbers or renewal notice numbers; instead, she must allege that LinkedIn obtained her personal and disability information *from* a motor vehicle record," and "[t]hat is precisely what Plaintiff does[.]" Opp. at 5. Plaintiff misstates the pleading standard—its insufficient to merely allege the ***legal conclusion*** in the FAC (*e.g.*, LinkedIn received by disability information from a motor vehicle record); the law requires Plaintiff to allege ***facts*** that make a legal conclusion ***plausible***. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Likewise, Plaintiff's assertion in the Opposition that "logic dictates" that a "DPP renewal application . . . is a motor vehicle record under the DPPA" (Opp. at 5) does not elevate her recitation of the claim's elements into the realm of plausibility.[4] Even if Plaintiff thinks "logic dictates" that these DMV webpages are themselves motor vehicle records, this Court and many others have already said otherwise. *Keogh v. Meta Platforms, Inc.*, 680 F. Supp. 3d 601, 609-11 (D.S.C. 2023) ("To start, the SCDMV website is not a 'record' under the DPPA."); *Davis v. Meta Platforms, Inc.*, 2024 WL 3293644, at *4 (D. Nev. July 3, 2024) (dismissing DPPA claim because plaintiff "does not plausibly allege that the Nevada DMV website is a motor vehicle record as defined by the DPPA."); *Dye v. Meta Platforms, Inc.*, 2024 WL 2125602, at *3 (E.D.N.C. May 10, 2024) (same for North Carolina DMV); Letter Order, *Knight v. Meta Platforms, Inc.*, No. 23-13347 (D.N.J. July 29, 2024), ECF No. 19 at 3 (same for New Jersey DMV).

Further, Plaintiff misunderstands LinkedIn's argument: LinkedIn does not argue that alleging receipt of certain numbers (such as her DPP ID number) is ***necessary*** to allege receipt of motor vehicle record information, as Plaintiff contends. Opp. at 5. Instead, LinkedIn's argument is that such allegations would be ***closer*** to alleging the receipt of actual DPPA personal information

---

[4] Plaintiff also states that "LinkedIn concedes that it is alleged to have obtained Plaintiff's disability information from her DPP renewal application 'completed and submitted' to the DMV." Opp. at 5-6. Plaintiff cites her own FAC for this unsubstantiated assertion, but LinkedIn ***nowhere*** concedes that Plaintiff alleges it obtained information from a completed and submitted renewal application.

than anything Plaintiff in fact alleges LinkedIn received. Mot. at 7-8 (explaining that Plaintiff only alleges that LinkedIn received a URL indicating a DPP application was finished, not a URL disclosing the DPP ID itself to LinkedIn). Whether or not a DPP ID pulled from the DMV's system would be a motor vehicle record is irrelevant.[5] URL information allegedly revealing that a person has interacted with a DPP renewal webform is clearly ***not*** motor vehicle record information, because the source of such information is not a record maintained by the agency. *See* Mot. at 9.

Third, no fewer than four times, Plaintiff insists that URLs are motor vehicle records because they are "presented" by the DMV. *See* Opp. at 3, 4, 6 n.3. To anyone familiar with the internet, this re-framing of browser and webpage mechanics is nonsensical and, in all events, legally meaningless. This Court already dismissed Plaintiff's Complaint in part because she failed to "explain how . . . disability information embedded within URLs qualifies as a motor vehicle record." *Jackson*, 2024 WL 3823806, at *4. Whether the DMV website or a user's browser "presents" URLs is immaterial, because DMV websites are not motor vehicle records.

Fourth, Plaintiff asserts that she "does not allege that LinkedIn obtained her personal and disability information from Plaintiff herself," but "[r]ather, [that] Plaintiff's interactions with the DMV website were transmitted directly from the DMV to LinkedIn via the Insight Tag." Opp. at 6. In so arguing, Plaintiff again misconstrues LinkedIn's argument, which does not hinge on "Plaintiff herself" being the source of the information. Instead, LinkedIn's argument is that the source of the challenged information is not a record maintained by the agency, as required by *Andrews*. Instead, it is ***Plaintiff's interactions*** with the DMV website that are the source.[6] Again, under binding precedent, information from such interactions is not from "motor vehicle records" within the meaning of the DPPA, and it is immaterial whether the same information was also independently maintained in DMV records (as it indisputably was for the driver's license information in *Andrews*). The DPPA provides a cause of action against "a defendant who obtains such information directly '*from* a motor vehicle record' . . . not a defendant who obtains

[5] LinkedIn contends this DPP ID also would not be a motor vehicle record, as disability placards themselves do not pertain to motor vehicle operator's permits, etc., in any case.

[6] Plaintiff does not dispute this. *See* Opp. at 6 (agreeing that the source of the challenged information was "Plaintiff's interactions with the DMV website").

information that, at some point in time, appeared in a motor vehicle record." *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 926 (4th Cir. 2022) (emphasis in original).

Finally, Plaintiff argues that "even if LinkedIn obtained Plaintiff's information from her communications with the DMV website . . . Plaintiff has sufficiently alleged that such communications are 'motor vehicle records,'" Opp. at 7, because the challenged communications satisfy the DPPA's requirement of pertaining to "a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," *id.* (quoting 18 U.S.C. § 2725(1)). The Court has already ruled against Plaintiff on this and it should do so again. *See Jackson*, 2024 WL 3823806, at *4 ("a DMV website alone cannot be a motor vehicle record"). As discussed extensively in the Motion, interactions with the DMV concerning a disability parking placard do not, in any way, pertain to an operator's permit or any of the other three categories the DPPA enumerates for motor vehicle records. Mot. at 8. What's more, even if the "pertain to" requirement were satisfied, the DPPA does not reach all communications on these subjects. It only governs "***records***." 18 U.S.C. § 2725(1) ("'motor vehicle record' means ***any record*** that pertains to [the enumerated categories.]" (emphasis added)). Electronic communications between Plaintiff and the DMV that LinkedIn allegedly intercepted in real time, *see* FAC ¶ 113, are not "records" at all.

Respectfully, *Gershzon* misstated the DPPA standard regarding the "pertaining to" requirement. In that decision, Judge Illston interpreted the DPPA as sweeping in all records "used in connection ***with driving***," and based her holding that "a disabled parking placard 'pertains to a motor vehicle operator's permit'" on her pronouncement that "[d]isability parking placards are only used in connection ***with driving***[.]" *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *8 (N.D. Cal. Aug. 22, 2023) (emphasis added). The DPPA definition of motor vehicle record never states that all records pertaining to driving are motor vehicle records. Indeed, "driving" is not even one of the four enumerated categories in that definition (*i.e.*, operators' permits, titles, registrations, and ID cards). Motor vehicle operators' permits certainly pertain to driving, but motor vehicle titles, another of the enumerated categories of motor vehicle records, do not. They pertain to ownership, which may be entirely divorced from driving (*e.g.*, conferring ownership of a valuable but defunct

vintage automobile). Thus, the *Gershzon* court's ruling that DPPs are motor vehicle record because they are "used in connection with driving" is analytically unsound.

Because *Gershzon*'s articulation of the standard as requiring only that a motor vehicle record pertain to "driving" has no basis in the statutory text or legal authority, this Court should not adopt it.

**3. Plaintiff's Other Attempts to Minimize *Gershzon*'s Flaws Are Unconvincing.**

The Opposition asserts other standalone defenses of the *Gershzon* decision, but none are persuasive and the Court should reject them all. First, Plaintiff protests that "the *Gershzon* court correctly hewed to the standard of review on a motion to dismiss." Opp. at 8. That argument misses LinkedIn's point. LinkedIn argued that the determination that the *Gershzon* plaintiff's complaint implicated "factual questions that are not amenable to resolution at the pleadings stage," 2023 WL 5420234, at *8, was substantively "***incorrect***[]," not that Judge Illston misstated the standard for what can be resolved at the motion to dismiss phase. Mot. at 10-11 (emphasis added).

Second, Plaintiff posits that *Keogh*, *Knight*, *Davis*, and *Dye* do not disagree with *Gershzon*'s holding, but instead distinguish it on the basis of the MyDMV-related allegations in *Gershzon*. Yet Plaintiff makes ***no*** attempt to address LinkedIn's argument that *Gershzon* improperly blurred the facts about what information came from the MyDMV database and, consequently, reached the wrong conclusion. *E.g.*, Mot. at 11. Put differently, while those decisions did distinguish *Gershzon* because of Judge Illston's finding that the information transmitted by the Meta Pixel came from the MyDMV database, that does not mean those courts agreed with that finding.

And the *Gershzon* decision makes clear that Judge Illston erred. In it, she admits that "the DMV maintained [the personal information Meta allegedly intercepted] ***after Gershzon provided it to the DMV*** through his 'MyDMV' online account." *Gershzon*, 2023 WL 5420234, at *8 (emphasis added). Given this, the fundamental holding of *Andrews*—that information obtained from any source other than records already maintained by the DMV does not implicate the DPPA—proves that *Gershzon* was wrongly decided. If Gershzon provided information to the DMV, and it was simultaneously intercepted by Meta, and then saved in the MyDMV database "after" Meta

received the information, *Andrews* precludes DPPA liability. Plaintiff wholly fails to address the glaring tension between binding Ninth Circuit authority and the reasoning underlying *Gershzon*. Mot. at 11.

**B. The Complaint Does Not Allege LinkedIn's Knowing Obtainment or Use.**

Having found that Plaintiff insufficiently alleged LinkedIn's receipt of her protected information from a motor vehicle record, this Court did not previously reach the question whether Plaintiff's allegations of LinkedIn's knowing obtainment were sufficient. They are not.

***First,*** Plaintiff argues that LinkedIn must have knowingly obtained the challenged data by pointing to her conclusory assertion that "personal information was obtained 'knowingly' under the DPPA because LinkedIn knows that information and communication . . . are transmitted to LinkedIn[.]" *See* Opp. at 9 (citing FAC ¶ 67). She further relies on the claims that: (1) LinkedIn designed the Insight Tag to transmit information and (2) allowed the DMV to use its Insight Tag. *See id.* Assuming *arguendo* that claims of mere receipt suffice to allege "obtainment"—they do not—Plaintiff fails to allege the requisite *mens rea* with respect to ***any*** action that violates the DPPA.

Accepting all allegations as true, the DMV: (1) installed the Insight Tag on pages related to disability placards and (2) designed its URLs to contain allegedly personal information. Plaintiff does not and cannot allege that LinkedIn had any role in this, nor does she specifically allege that LinkedIn was aware that the DMV was transmitting the challenged data. But were it not for the DMV's intervening missteps, there would be no colorable DPPA violation. Thus, Plaintiff's mere allegation that LinkedIn created and offers the Insight Tag is not enough.

***Second,*** Plaintiff asserts that she adequately alleged ***knowing use*** of her information. *E.g.*, Opp. at 9. She did not. Her citations to general resources about how the Insight Tag can work do not bear on the DMV's individual implementation or establish that LinkedIn was combing URL text for personal information. The mere fact that an Insight Tag appears on a webpage does not show that LinkedIn used any information from that page for its own purposes, much less any information related to any person's disability status. Absent such allegations, which would be false if made, alleging that an Insight Tag can be used to improve advertisers' marketing is not enough.

Additionally, as *Keogh v. Meta Platforms, Inc.* pointed out, conclusory allegations that data is generally used for advertising purposes lack the factual support necessary to survive a motion to dismiss. 680 F. Supp. 3d at 606. As in *Keogh*, Plaintiff makes no claim that she saw ads related to her disability, or even her driver status, that she can attribute to LinkedIn or interactions with the DMV's website. Plaintiff herself is, of course, best positioned to know whether she saw any such ads. But, since she did not allege this, Plaintiff once again asks this Court to bend over backward to patch the holes in her pleadings. It should decline to do so.

***Third,*** Plaintiff's heavy reliance on *Gershzon v. Meta Platforms, Inc.* is misplaced. *See* Opp. at 10 ("Similar allegations were sufficient to satisfy the 'knowingly' pleading requirement in *Gershzon*.") (citing 2023 WL 5420234, at *10). As explained, the decision in that action rested on different allegations, rejected a legal argument LinkedIn does not make here, and failed to fully analyze the voluntary action requirement for knowingness (discussed below). Mot. at 12-13. The Opposition does not rebut these points. To the extent that *Gershzon* found that offering a commonplace technology "knowingly" violates the DPPA if the DMV uses it in a manner contrary to that party's express contractual terms, this Court should decline to follow suit.

***Fourth,*** the authorities Plaintiff cites do not show that LinkedIn engaged in voluntary action. Citing *Tison v. Arizona*, a 1987 murder case, Plaintiff submits that "a party 'intends certain consequences when [it] knows that those consequences are substantially certain to result from [its] acts.'" Opp. at 10 (citing *Tison*, 481 U.S. 137, 150 (1987)). Even under this proposed standard, LinkedIn in no way knowingly obtained or used Plaintiff's protected information. There is no allegation (and no basis to infer) that LinkedIn knew the DMV would install the Insight Tag on disability pages ***and*** implant personal information in its URLs. Thus, Plaintiff does not adequately allege LinkedIn could have been "substantially certain" it would receive personal information.

Likewise, in sharp contrast to the defendant in *Rand v. Travelers Indemnity Co.*, which specifically designed its site to auto-populate private information for any website visitor to see, the alleged DPPA violation here arose not from LinkedIn's conduct but from the intervening, contractually prohibited actions of the DMV itself. 637 F. Supp. 3d 55, 67-68 (S.D.N.Y. 2022). There is simply no allegation that LinkedIn "knowingly" expected the DMV to set up its website

to ignore the contract between the parties.

In this way, the *Enslin* and *Allen* decisions that Plaintiff brushes aside are highly analogous. These cases illustrate the right result where ***a third party*** acts to violate the DPPA. *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 669-72 (E.D. Pa. 2015); *Allen v. Vertafore, Inc.*, 28 F.4th 613, 617 (5th Cir. 2022). Plaintiff mischaracterizes these cases as instances where there was ***no*** challenged action by the defendant. Opp. at 11 (references "non-action" by the *Enslin* and *Allen* defendants). In fact, in both, the plaintiffs asserted the defendant's actions had caused the DPPA violations. *Enslin*, 136 F. Supp. 3d at 671 (finding defendant took action of "privately holding [information]" on "unsecured laptops"); *Allen*, 28 F.4th at 617 (finding defendant took action of "stor[ing] personal information on 'unsecured external servers'"). Nonetheless, those courts found that the defendants' actions were ***not the kind of knowing action*** that triggers DPPA liability. Action triggering DPPA liability must be, as Plaintiff puts it, "substantially certain to result from" the proscribed transmission of prohibited information. Opp. at 10. As in *Enslin* and *Allen*, LinkedIn took no action that was substantially certain to result in the DMV's sending it prohibited content.

**C. The Complaint Fails to Allege LinkedIn's Use for an Impermissible Purpose.**

As with knowing obtainment, this Court did not reach the question whether Plaintiff's allegations that LinkedIn's acted with an impermissible purpose were adequate. Because they are not, this is another independent basis for dismissal.

To rebut LinkedIn's argument that any information obtained through the Insight Tag was to help the DMV carry out its functions, Plaintiff points back to her boilerplate statements that LinkedIn's purpose was not permissible. Opp. at 12-13. These conclusory claims are of no moment, particularly where they contravene other specific facts alleged. Plaintiff specifically alleges that the purpose of the Insight Tag is to "help [the DMV] optimize [its] campaigns, retarget [its] website visitors, and learn more about [its] audiences." FAC ¶ 29; Opp. at 10. In other words, Plaintiff alleges that the Insight Tag helps the DMV carry out the functions of its website and reach drivers. These very purposes grounded *Downing*'s conclusion that the advertising vendor there did not violate the DPPA. *Downing v. Globe Direct LLC*, 682 F.3d 18, 23-24 (1st Cir. 2012). This Court should reach the same conclusion. And contrary to Plaintiff's characterization of the Court as

having rejected *Downing* as inapposite on this legal point, Opp. at 13, in fact, the Court's only discussion of *Downing* evaluated the analogy in the separate context of LinkedIn's Rule 19 argument, *Jackson*, 2024 WL 3823806, at *4.

Plaintiff cites *Knowlton v. City of Wauwatosa* and *Gershzon* for the proposition that permitted purpose arguments cannot be decided at the motion to dismiss stage. Opp. at 12 (citing 2023 WL 2951425, at *1 (E.D. Wis. Apr. 14, 2023); *Gershzon*, 2023 WL 5420234, at *9). The *Knowlton* order cited is perplexing and likely a repeated error, as it is a ***denial*** of a motion in limine to exclude any testimony on a permissible DPPA purpose. *Knowlton*, 2023 WL 2951425, at *1. *Gershzon*'s brief treatment of the issue is not as persuasive as the First Circuit's careful analysis to the contrary in *Downing*, on which LinkedIn's motion relies. Mot. at 14-15. Put simply, *Downing* persuasively established that, at the pleading stage, an action with a permissible governmental purpose will not be rendered impermissible by a secondary alleged advertising purpose. The Court should follow that rationale and ruling here.

Finally, Plaintiff makes much of *Keogh*'s language suggesting that Meta could not rely on the DMV's permitted purpose to "avoid compliance with the statute with respect to its own conduct." Opp. at 13 (citing *Keogh*, 680 F. Supp. 3d at 612) (emphases omitted). First, as explained throughout this brief, Plaintiff makes no plausible allegation that LinkedIn used this data for its own purposes, separate from those of the DMV. Second, in *Keogh*'s sole authority for this *dicta*, *Gaston v. LexisNexis Risk Solutions, Inc.*, 483 F. Supp. 3d 318 (W.D.N.C. 2020), the defendant failed to identify ***any*** action plausibly supporting a law enforcement purpose. Indeed, in that case, the court held where both the defendant ***and*** the police publicized crash reports containing protected personal information, ***neither*** could be said to be effectuating a law enforcement purpose. *Id.* at 347-48. These facts are worlds away from the present case.

### D. The Court Should Decline to Exercise Supplemental Jurisdiction in the Absence of a Federal DPPA Claim.

Plaintiff offers no reason why the Court should retain jurisdiction if the DPPA claim is dismissed. Plaintiff first argues, without citing a single case, that LinkedIn's argument should be rejected because LinkedIn did not expressly reference Rule 12(b)(1) of the Federal Rules of Civil

Procedure. This argument is as unpersuasive as it is overly technical. LinkedIn repeatedly referred to the Court's lack of subject-matter jurisdiction, including in the statement of issues to be decided. Mot. at 1. Plaintiff's feigned confusion because LinkedIn did not refer to Rule 12(b)(1) by name strains credulity. Moreover, even if these magic words were required, "a district court may raise sua sponte an exception to CAFA jurisdiction." *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223-24 (9th Cir. 2020). Therefore, the Court is perfectly free to consider this question and Plaintiff cites no authority to the contrary.[7]

Plaintiff next argues that she properly pled minimal diversity under 28 U.S.C. § 1332(d)(2) based on the allegation that "at least one Class Member is a citizen of a state of which LinkedIn is not a citizen." Opp. at 14 (quoting FAC ¶ 12). Plaintiff then falsely asserts that LinkedIn "concedes, as it must, that Plaintiff adequately alleged the minimum jurisdictional requirements under § 1332(d)[.]" *Id.* at 15. But LinkedIn concedes no such thing. In fact, LinkedIn argues that the FAC fails to allege "any plausible facts that members of the CIPA class are not overwhelmingly California citizens." Mot. at 15. Plaintiff's bare assertion that "at least one Class Member" exists to meet the minimal diversity requirement under CAFA does not suffice. *See Mendez v. Glob. Inst. of Stem Cell Therapy & Rsch., USA*, 2022 WL 3019858, at *3 (S.D. Cal. July 29, 2022) ("However, a conclusory and prospective allegation that at least one unknown member of a nationwide class will result in minimal diversity is not sufficient to satisfy the pleading requirements for CAFA jurisdiction"); *Valdez v. Asset Acceptance, LLC*, 2012 WL 2905715, at *2 (S.D. Cal. July 16, 2012) (dismissing complaint where allegation that certification of a national class "will result in at least one class member belonging to a different state than that of" the defendant was "not sufficient to satisfy the specific pleading requirements for diversity jurisdiction"); *Park v. Webloytalty.com, Inc.*, 2013 WL 4711159, at *1 (S.D. Cal. Aug. 30, 2013) (dismissing complaint because plaintiff's allegation " that 'numerous class members are citizens of a state different from [defendant]' and

---

[7] Even in a world where technicalities should govern this Court's thinking, the home state and local controversy exceptions under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") are technically doctrines of abstention rather than jurisdiction. *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020) ("The local controversy and home state exceptions are not jurisdictional. Rather . . . we treat the [exceptions] as a form of abstention." (internal citations omitted)).

seeks to certify a nationwide class" was insufficient); *see also Faris v. Petit Pot, Inc.*, 2023 WL 6192703, at *2 (C.D. Cal. Aug. 18, 2023) (ordering plaintiff to show cause as to why the action should not be dismissed for lack of subject matter jurisdiction where plaintiff merely alleged that "there is diversity of citizenship between some members of the proposed Class and Defendant"). Here, the FAC fails to carry its burden to establish minimal diversity with these conclusory allegations.

Plaintiff next argues, citing *Adams*, that LinkedIn bears the burden of proving that a CAFA exception applies. Opp. at 15. But this cite is to no avail because *Adams* stands for the proposition that "the burden falls on the party seeking remand . . . to show that an exception to CAFA jurisdiction applies." 958 F.3d at 1221. LinkedIn is not seeking a remand at this stage. LinkedIn is simply pointing out the obvious: Plaintiff's bare assertions about hypothetical class members are not enough to satisfy the minimal diversity requirement. Accordingly, if the Court dismisses the DPPA claim, it should abstain from exercising jurisdiction over the CIPA claim. Based on Plaintiff's definition of the CIPA class, it is self-evident that at least two thirds of the class members are going to be California citizens. Strikingly, Plaintiff never even tries to deny this obvious fact. That is, claiming that more than one-third of the visitors to the California DMV's website are not Californians did not pass Plaintiff's own "red face test." Plaintiff's attempt to take refuge in burden shifting for LinkedIn's failure to prove a facially undeniable fact gets her nowhere. The Court should abstain from exercising its jurisdiction. *See Adams*, 958 F.3d at 1221 (explaining that CAFA's local controversy exception, which is also referred to as the home state exception, requires a federal court to decline jurisdiction).

Plaintiff last argues, again without citing any law, that judicial economy, convenience, fairness, and comity support this Court's exercise of supplemental jurisdiction. Opp. at 15. Without addressing any of these factors separately, Plaintiff frames the initial discovery that has taken place as justifying this Court's exercise of supplemental jurisdiction and brazenly states that this action has progressed "well beyond the cases" cited by LinkedIn. *Id.*

The cases cited in LinkedIn's Motion show why Plaintiff is wrong on all counts. While this case is still at the motion to dismiss stage, in *Almoian v. Plies*, the Ninth Circuit affirmed a dismissal

and remand to state court "after nearly two years of litigation, extensive discovery and pretrial motions[.]" 914 F.2d 261, at *2 (9th Cir. 1990). In *Lenk v. Monolithic Power Systems, Inc.*, the court considered and then declined to exercise supplemental jurisdiction over defendant's counterclaim ***after*** it dismissed plaintiff's federal claim because, even though the court had "developed familiarity" with the dispute, the state law claims "would not require extensive duplication" in state court. 2017 WL 4586832, at *2-3 (N.D. Cal. June 1, 2017). In *Wren v. Sletten Construction Co.*, the Ninth Circuit ordered a remand to state court even though one of the parties had already moved for summary judgment. 654 F.2d 529, 531, 537 (9th Cir. 1981). In *TMI Products, Inc. v. Rosen Entertainment Systems L.P.*, the court declined to exercise supplemental jurisdiction even after deciding ***two*** motions for summary judgment. 2014 WL 12601062, at *1, *4-5 (C.D. Cal. May 9, 2014).

While supplemental jurisdiction is a doctrine of discretion, "a district court should generally decline the exercise of supplemental jurisdiction and dismiss a case without prejudice when 'the federal-law claims have dropped out of the lawsuit in its early stages and only state law claims remain.'" *Lenk*, 2017 WL 4586832, at *2 (citation omitted). Here, while the parties have reached various agreements about how discovery will move forward and resolved one discovery scuffle before Magistrate Judge DeMarchi, there is no question that this Court has not been called upon to develop the level of case-specific knowledge that would make it more efficient for it to retain jurisdiction.

## III. CONCLUSION

For all these reasons, the Court should dismiss Plaintiff's DPPA claim with prejudice and decline to exercise supplemental jurisdiction over the solitary California claim remaining.

Dated: October 8, 2024

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
LINKEDIN CORPORATION

308739784