UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACQUELINE JACKSON,<br><br>            Plaintiff,<br><br>    v.<br><br>LINKEDIN CORPORATION,<br><br>            Defendant. | Case No. 24-cv-00812-PCP (VKD)<br><br>**ORDER RE OCTOBER 23, 2024 DISCOVERY DISPUTE LETTER RE PLAINTIFF'S DOCUMENT REQUESTS**<br><br>Re: Dkt. No. 64 |

Plaintiff Jacqueline Jackson and defendant LinkedIn Corporation ("LinkedIn") ask the Court to resolve several disputes regarding Ms. Jackson's requests for production of documents. Dkt. No. 64. The Court finds these matters suitable for resolution without oral argument. Civil L.R. 7-1(b).

The Court addresses each dispute separately below.

**1.    Relevant time period**

In this action, Ms. Jackson alleges, on behalf of a putative class, that LinkedIn deployed its Insight Tag to unlawfully obtain and use personal disability information from LinkedIn users visiting the California Department of Motor Vehicles (DMV) website. *See* Dkt. No. 59 ¶¶ 42-68. She argues that LinkedIn should be required to search for and produce documents dating back to September 2016, when the Insight Tag was first made available, in response to her Requests for Production ("RFPs") Nos. 24-28, 30, 35, 41, 44-46, 48, & 51-52.. Dkt. No. 64 at 2, 3. LinkedIn objects that these requests seek broad discovery regarding every aspect of the design, development, implementation, use, and promotion of the Insight Tag for a time period that extends well before the DMV's first use of it. *Id.* at 6-7.

In connection with a prior dispute regarding the scope of LinkedIn's preservation

obligations, the Court issued an order with the following guidance:

> As Ms. Jackson acknowledges, her proposal would require LinkedIn to preserve ESI dating back to September 1, 2016—more than seven and one-half years of data. This proposal, if it is meant to encompass all proposed custodial and non-custodial sources, is not reasonable. However, information regarding LinkedIn's knowledge and intent in offering and promoting the Insight Tag to entities, such as the DMV, appears to be relevant and some information may indeed be found in documents generated at the time the Insight Tag was first made available. Thus, Ms. Jackson has offered some justification for preserving ESI on this topic.
>
> Having considered the parties' respective arguments, the Court concludes that the parties need not preserve any ESI created or received before February 9, 2019, with the following exception: The parties shall confer regarding the custodial and non-custodial sources most likely to contain relevant, non-duplicative information regarding the purposes for which the Insight Tag was developed, LinkedIn's knowledge of the nature of the information likely to be transmitted via Insight Tag, and its intent in making the Insight Tag available generally. If the Court ultimately requires LinkedIn to preserve ESI earlier than February 9, 2019 (such as for a reasonable time period in or around September 2016), that preservation obligation will be limited to only those specific sources likely to have relevant, non-duplicative information on this specific topic. The Court encourages the parties to reach agreement on this point and advise the Court of their proposal . . . .

Dkt. No. 48 at 2. There is no indication that the parties have even attempted to reach agreement about specific "custodial and non-custodial sources most likely to contain relevant, non-duplicative information regarding the purposes for which the Insight Tag was developed, LinkedIn's knowledge of the nature of the information likely to be transmitted via Insight Tag, and its intent in making the Insight Tag available generally" for any period of time before September 9, 2019, such as "for a reasonable time period in or around September 2016." *Id.* Ms. Jackson's requests are certainly not so limited. On the other hand, LinkedIn should be able to identify potentially responsive documents from specific sources, as described in the Court's prior order, but LinkedIn offers no suggestion for a narrower scope of production.

For the reasons described in the Court's prior order regarding preservation of ESI, Ms. Jackson's present demand that LinkedIn search for and produce all documents responsive to RFPs

24-28, 30, 35, 41, 44-46, 48, & 51-52, from September 2016 through the present, is not reasonable. With respect to documents dating to the time period in or around September 2016, the parties <u>must confer</u> regarding what documents or document sources LinkedIn has regarding the purposes for which the Insight Tag was developed, LinkedIn's knowledge of the nature of the information likely to be transmitted via Insight Tag, and its intent in making the Insight Tag available generally. The parties shall advise the Court of their specific proposals for a limited, tailored production of documents from this time period in a joint submission no later than **December 6, 2024**. Otherwise, the relevant time period for RFPs 24-28, 30, 35, 41, 44-46, 48, & 51-52 begins on September 9, 2019.

### 2. RFP 27

Ms. Jackson's RFP 27 asks for "[d]ocuments, including all drafts and final versions thereof, Concerning LinkedIn's policies, procedures, and practices for the use, disclosure, and sale of data collected through the Insight Tag." Dkt. No. 64-1. LinkedIn has agreed to produce documents responsive to this request, except to the extent the request calls for the production of "drafts," and with the further qualification that it will produce only those policies, procedures, and practices "that would have applied to the DMV." Dkt. No. 64 at 5. Ms. Jackson argues that drafts may reveal "alternative choices" considered by LinkedIn and its knowledge of risks associated with use of the Insight Tag. *Id.* at 3. Ms. Jackson does not address LinkedIn's other limitation ("that would have applied to the DMV") on its proposed production.

There is no dispute that this action concerns the DMV's use of the Insight Tag and LinkedIn's alleged collection of user information via the Insight Tag. Thus, the Court agrees with LinkedIn that policies, procedures, and practices for the use, disclosure, and sale of data collected through the Insight Tag did not apply to the DMV, are not within the scope of relevant discovery. The Court also agrees with LinkedIn that Ms. Jackson's demand for all drafts of any relevant policies, procedures, and practices, as well as documents "concerning" such drafts, expands the scope of discovery materials that a reasonably relevant to a claim or defense, and would result in a scope of production that is not proportional to the needs of the case. The Court does *not* decide here that Ms. Jackson may not obtain any discovery about alternative choices for implementation

3

of the Insight Tag considered by LinkedIn or the reasons it may have rejected those choices; rather, the Court concludes that requiring LinkedIn to produce all drafts and all documents concerning those drafts exceeds the scope of reasonable discovery.

LinkedIn may limit its production of documents responsive to RFP 27 to all documents concerning its policies, procedures, and practices for the use, disclosure, and sale of data collected through the Insight Tag, that would have applied to the DMV. Ms. Jackson has not shown that *all* drafts of such policies, procedures, and practices are relevant to a claim or defense and that production of them is proportional to the needs of this case. Thus, in response to RFP 27, LinkedIn must produce drafts of the relevant policies, procedures, and practices to the extent those drafts reflect its consideration of alternative choices for implementation of the Insight Tag or the reasons it may have rejected those choices.

### 3. RFP 41

Ms. Jackson's RFP 41 asks for "[d]ocuments Concerning the development, marketing, strategies, and goals of the Insight Tag, including: (a) Business plans; (b) Revenue projections; (c) Proposed or enacted changes to the Insight Tag; (d) Market analyses of the Insight Tag; (e) Market analyses of competitors' tools that are similar to the Insight Tag, including but not limited to the Meta Pixel or Google Analytics and DoubleClick tags; (f) Strategies for optimizing the collection and use of data and/or information collected through the Insight Tag; and (g) Strategies for optimizing and increasing LinkedIn's profits through the Insight Tag." Dkt. No. 64-1. LinkedIn objects that RFP 41 is overbroad, as it "effectively seeks all documents related to the Insight Tag." Dkt. No. 64 at 5-6. Ms. Jackson responds to this objection by narrowing RFP 41 to eliminate the request for "[s]trategies for optimizing the collection and use of data and/or information collected through the Insight Tag." *Id.* at 3-4. She argues that each of the subparts of RFP 41 "seeks information relevant to LinkedIn's knowledge and intent in developing and marketing the Insight Tag, use of the personal information collected by the Insight Tag, and value of that data." *Id.* at 4.

To the extent Ms. Jackson seeks information about LinkedIn's knowledge and intent in development, marketing, and deployment of the Insight Tag generally, RFP 41 is unreasonably

4

broad. The Court refers the parties to the discussion above and in its prior order regarding the initial development and deployment of the Insight Tag, and further discussions they must have on this point. To the extent Ms. Jackson seeks information regarding the personal information collected by the Insight Tag and the value of that data generally, her request is not tailored to her claims in the action, which concern personal information collected by the Insight Tag used on the DMV website, and the value of that data. However, it is not clear from the parties' joint discovery dispute letter whether LinkedIn has documents otherwise responsive to RFP 41 specific to the DMV's installation and use of the Insight Tag. If LinkedIn does not maintain financial, planning, and marketing information at that level of granularity, then its objections on that point are not particularly well taken.

The parties must confer further regarding what documents, if any, LinkedIn has regarding the as-narrowed subject matter of RFP 41 specific to use of the Insight Tag on DMV's website, or perhaps specific to the industry segment that includes DMV. The parties shall advise the Court of their specific proposals for production of documents responsive to this request in a joint submission no later than **December 6, 2024**.

**IT IS SO ORDERED.**

Dated: November 25, 2024

Virginia K. DeMarchi
United States Magistrate Judge

5